No. 22-12796-A

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

IN RE: 3M COMBAT ARMS EARPLUG LIABILITY LITIGATION

———————————

RICHARD VALLE,

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant*,

AEARO TECHNOLOGIES LLC, et al.,

*Defendants*.

———————————

On Appeal from the United States District
Court for the Northern District of Florida,
MDL No. 19-02885

———————————

## SUPPLEMENTAL BRIEF IN SUPPORT OF
## TIME-SENSITIVE MOTION FOR STAY PENDING APPEAL

———————————

PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendant-
Appellant 3M Company*

October 6, 2022

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendant-Appellant 3M Company hereby certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- 3M Company (**MMM**) – Defendant-Appellant

- 3M Occupational Safety LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo Holdings LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo Intermediate LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo Technologies LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo, LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aylstock Witkin Kreis & Overholtz – counsel for MDL Plaintiffs

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Aylstock, Bryan Frederick – counsel for MDL Plaintiffs

- Barr, Brian H. – counsel for MDL Plaintiffs

- Beall, Charles Franklin, Jr. – counsel for Defendant-Appellant 3M Company

- Benton, Diana Clough – counsel for Defendants/Non-appellants

- Bhimani, Jay L. – counsel for Defendants/Non-appellants

- Bouk, Winston Troy – counsel for MDL Plaintiffs

- Bradley Arant Boult Cummings – counsel for Defendant-Appellant 3M Company

- Branscome, Kimberly O. – counsel for Defendants/Non-appellants

- Brock, Robert C. – counsel for Defendants/Non-appellants

- Brown & James – counsel for MDL Plaintiffs

- Brown, Micah David – counsel for Defendants/Non-appellants

- Buchanan, David R. – counsel for MDL Plaintiffs

- Burns, Michael A. – counsel for MDL Plaintiffs

- Buxner, Evan D. – counsel for MDL Plaintiffs

- Cantero, Raoul G. – counsel for Defendant-Appellant 3M Company

- Carter, Cole T. – counsel for Defendants/Non-appellants

- Cartmell, Thomas P. – counsel for MDL Plaintiffs

- Castiglia, Craig – counsel for Defendants/Non-appellants

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Ciresi Conlin LLP – counsel for MDL Plaintiffs

- Clark Love & Hutson – counsel for MDL Plaintiffs

- Clement, Paul D. – counsel for Defendant-Appellant 3M Company

- Clement & Murphy, PLLC – counsel for Defendant-Appellant 3M Company

- Cooper, David M. – counsel for MDL Plaintiffs

- Cornell, Katherine Lindsey – counsel for MDL Plaintiffs

- Czak, Steven C. – counsel for Defendants/Non-appellants

- DeCamp, Kyle Richard – counsel for Defendants/Non-appellants

- Dechert LLP – counsel for Defendants/Non-appellants

- De Paulo, Tabitha J. – counsel for Defendants/Non-appellants

- Elizabeth, Sierra – counsel for Defendants/Non-appellants

- Ellis, Robert P. – counsel for Defendants/Non-appellants

- Esfandiarifard, Saghar – counsel for Defendants/Non-appellants

- Fields, Barry E. – counsel for Defendants/Non-appellants

- Fox, Shawn – counsel for MDL Plaintiffs

- Glass, David M. – counsel for the United States of America

- Gori Julian & Associates – counsel for MDL Plaintiffs

- Gottlieb, Simon – counsel for Defendants/Non-appellants

- Gunderson, Karl B. – counsel for Defendants/Non-appellants

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Heinz, Noah – counsel for Plaintiff Richard Valle and MDL Plaintiffs

- Hill, Thomas Larry – counsel for Defendant-Appellant 3M Company

- Hodge, Leigh Anne – counsel for Defendant-Appellant 3M Company

- Hoekstra, Jennifer M. – counsel for MDL Plaintiffs

- Hutson, Shelley Van Natter – counsel for MDL Plaintiffs

- Jones, Hon. Gary R. – U.S. Magistrate Judge for the Northern District of Florida

- Karis, Hariklia – counsel for Defendants/Non-appellants

- Keller, Ashley – counsel for Plaintiff Richard Valle and MDL Plaintiffs

- Keller Postman LLC – counsel for Plaintiff Richard Valle and MDL Plaintiffs

- Kelly, Maxwell H. – counsel for MDL Plaintiffs

- Kim, Mary H. – counsel for Defendants/Non-appellants

- Kirkland & Ellis LLP – counsel for Defendants/Non-appellants

- Kolsky, Joshua M. – counsel for the United States of America

- Kreis, Douglass A. – counsel for MDL Plaintiffs

- Laminack Pirtle & Martines – counsel for MDL Plaintiffs

- Lauria, Jessica C. – counsel for Defendant-Appellant 3M Company

- Leach, Garret A. – counsel for Defendants/Non-appellants

- Leuthauser, Nolan M. – counsel for Defendants/Non-appellants

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Levin Papantonio Rafferty – counsel for MDL Plaintiffs

- Marlowe, Emily B. – counsel for MDL Plaintiffs

- Mitchell, Kasdin – counsel for Defendants/Non-appellants

- Morriss, F. Chadwick – counsel for Defendants/Non-appellants

- Mostyn Law – counsel for MDL Plaintiffs

- Moore Hill & Westmoreland – counsel for Defendant-Appellant 3M Company

- Murphy, Erin E. – counsel for Defendant-Appellant 3M Company

- Neglia, Ashley E. – counsel for Defendants/Non-appellants

- Nomellini, Mark J. – counsel for Defendants/Non-appellants

- Odom, Megan L. – counsel for MDL Plaintiffs

- Onder Law LLC – counsel for MDL Plaintiffs

- Ozurovich, Allison K. – counsel for Defendants/Non-appellants

- Pirtle, Thomas W. – counsel for MDL Plaintiffs

- Pulaski Law Firm – counsel for MDL Plaintiffs

- Quinn Emanuel Urquhart & Sullivan LLP – counsel for MDL Plaintiffs

- Rafferty, Troy Alan – counsel for MDL Plaintiffs

- Rivera, Maria P. – counsel for Defendants/Non-appellants

- Rodgers, Hon. M. Casey – U.S. District Judge for the Northern District of Florida

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Sacchet, Michael A. – counsel for MDL Plaintiffs

- Seeger, Christopher A. – counsel for MDL Plaintiffs

- Seeger Weiss LLP – counsel for MDL Plaintiffs

- Seeley, Caleb A. – counsel for MDL Plaintiffs

- Tam, Jonathan S. – counsel for Defendants/Non-appellants

- Tracey Fox King & Walters – counsel for MDL Plaintiffs

- Tracey, Sean Patrick – counsel for MDL Plaintiffs

- Van Fleteren, Haley J. – counsel for Defendant-Appellant 3M Company

- Wagstaff & Cartmell – counsel for MDL Plaintiffs

- Wasdin, Nicholas F. – counsel for Defendants/Non-appellants

- White & Case LLP –counsel for Defendant-Appellant 3M Company

- Wilson, Quinn Robert – counsel for MDL Plaintiffs

Defendant-Appellant 3M Company states that it is a corporation whose shares are publicly traded (NYSE: **MMM**). 3M Company does not have a parent corporation and no publicly held corporation owns 10% or more of 3M's stock.

> Respectfully submitted,
>
> s/Paul D. Clement
> PAUL D. CLEMENT
> *Counsel for Defendant-Appellant*
> *3M Company*

October 6, 2022

## SUPPLEMENTAL BRIEF IN SUPPORT OF
## TIME-SENSITIVE MOTION FOR STAY PENDING APPEAL

Developments since 3M filed its reply brief in support of a stay pending appeal have only reinforced that the unstayed portion of the MDL court's injunction, which prohibits 3M from "attempting to relitigate the same issues or related issues" decided by the MDL court, poses an ongoing and imminent threat of irreparable harm to 3M. These events vividly demonstrate the need for a stay of the entire injunction pending this Court's plenary review, which will not be complete for several more months while litigation proceeds in multiple fora.

On September 23, 2022, a plaintiff pursuing a CAEv2-related personal-injury claim in Minnesota state court (which, as a non-diverse state-law action, was not consolidated with the MDL) filed a motion *in limine* arguing that 3M should be "collaterally estopped from denying complete and independent liability for CAEv2-related injuries as against Aearo." Ex. A at 17. The plaintiff argued that, because the MDL court had purportedly ruled in two bellwether trials that 3M and the Aearo defendants had to be treated as a single entity for the purpose of "reducing the punitive damages award," *id.* at 15, 3M is estopped under Minnesota law from arguing, in any case, that Aearo (and not 3M) has sole liability for the plaintiff's alleged injuries. *Id.* at 17.

Critically, the plaintiff was not content to rest his argument on ordinary principles of collateral estoppel but bolstered his argument by invoking the MDL

court's injunction precluding 3M from relitigating issues decided by the MDL court or making or supporting "any collateral attack" on the MDL court's orders. *Id*. at 18 (quoting MDL.Dkt.3389 at 8). According to the plaintiff, "[a]ny effort to dispute" that 3M has "sole liability" for injuries caused by the CAEv2 would be "barred by the MDL injunction." *Id*. The plaintiff noted that "the MDL court has retained jurisdiction to 'convene contempt proceedings to enforce compliance.'" *Id*. (quoting MDL.Dkt.3389 at 8).

This motion *in limine* perfectly illustrates the ongoing irreparable injury the MDL court's injunction inflicts upon 3M. In 3M's view, the MDL court's two prior bellwether rulings cited by the Minnesota plaintiff do not remotely dictate the conclusion that 3M is wholly liable for injuries allegedly caused by CAEv2 made and sold by Aearo, let alone estop 3M from arguing otherwise. Indeed, those two bellwether trials did not involve successor liability; moreover, they were governed by Colorado state law, which indisputably does not govern in the Minnesota plaintiff's case.[1] 3M has the constitutional right to make this argument against preclusion to the Minnesota court without fear of reprisal before the MDL court, and the Minnesota court should be permitted to consider it. That is how it works in the

---

[1] Plaintiff did not even accurately describe the bellwether rulings, which addressed a statutory cap on compensatory damages, not "punitive damages." Ex. A at 15, 17.

typical case, and that is how it should work here. *See Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011) ("[D]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court.").

If 3M makes this forthright argument, however, it is exposing itself to potential sanctions pursuant to the MDL court's injunction—which the Minnesota plaintiff has explicitly invoked. After all, even if the MDL court has not considered the exact issue the Minnesota plaintiff has raised, the injunction purports to reach "related" issues. Thus, any effort by 3M to counter the Minnesota plaintiff's argument would likely be construed by the Minnesota plaintiff as an "attempt to relitigate" that "related" issue. 3M must therefore make its arguments in the Minnesota court subject to the explicit threat that it could be haled before a different court and threatened with contempt. Meanwhile, the Minnesota plaintiff is free to argue that issues have been foreclosed by MDL court rulings without fear of reprisal or the expense of being haled before a different court to explain himself. That dynamic should not be tolerated during the pendency of this appeal. The unstayed portion of the MDL court's unprecedented injunction not only irreparably chills 3M's constitutional rights of speech and petition but irreparably undermines its position in the Minnesota litigation. Indeed, given the Minnesota plaintiff's wholly meritless collateral estoppel argument, the MDL injunction gives the plaintiff not just a thumb on the scale, but another arrow in his quiver entirely.

Aside from confirming the irreparable injury to 3M, the Minnesota example underscores two other problematic aspects of the injunction. First, it demonstrates the broad range of situations where the injunction could be (and has been) invoked to chill 3M's full participation in litigation. Although 3M's concerns about the injunction have principally related to the ongoing Chapter 11 proceedings, nothing in the injunction prevents it from being invoked in *any* forum in which 3M could be accused of "attempting to relitigate" issues decided by the MDL court—including, as here, the ongoing Minnesota state-court CAEv2 litigation. Second, the very fact that the Minnesota plaintiff first argued that collateral estoppel principles preclude 3M's argument, and only then invoked the MDL court's injunction, reinforces that the injunction is both unnecessary and improper because there is an "adequate remed[y] at law"—application of collateral estoppel principles by the Minnesota court (or any other second court). *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1264 (11th Cir. 2021); *see also Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773-74 (11th Cir. 1999) (holding that district court "abused its discretion" in granting All Writs Act injunction "to protect the integrity of its judgment," because movant "has an adequate remedy at law—it can raise the issues[] of res judicata").

The Minnesota example throws into bold relief the predicament that 3M faces due to the MDL court's ill-advised injunction. This Court should intervene now and stay the remainder of that injunction during the pendency of the appeal, so that

CAEv2-related litigation in Minnesota state court, the bankruptcy court, and any other forum can proceed free from the interference of the MDL court and the distorting effect of its looming threat of contempt.

## CONCLUSION

This Court should stay the entire injunction pending appeal.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendant-Appellant*
*3M Company*

October 6, 2022

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 1,027 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

October 6, 2022

<u>s/Paul D. Clement</u>
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement

# EXHIBIT A

STATE OF MINNESOTA                          DISTRICT COURT
COUNTY OF HENNEPIN                    FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG LITIGATION | Case Type: Personal Injury<br>Hon. Laurie J. Miller |
| | FILE NO. 27-CV-19-19916 |
| This Document Relates To:<br>*Watts*, 27-cv-20-10633 | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTIONS IN LIMINE** |

## INTRODUCTION

Plaintiff moves *in limine* for an Order:

(1) precluding evidence of collateral sources;

(2) precluding evidence of third-party testing;

(3) precluding evidence of U.S. Military testing;

(4) precluding mention of attorney advertising, office locations, or practice areas;

(5) precluding evidence of 3M's good character;

(6) precluding Defendants' counsel from vouching for clients;

(7) precluding the preemptive bolstering of 3M's witnesses;

(8) precluding evidence that a verdict may impact prices on 3M's products;

(9) precluding evidence that this litigation may impact 3M's employment levels;

(10) precluding evidence that Aearo has independent liability in this matter;

(11) precluding evidence of the number and type of firearms Plaintiff owns; and

(12) precluding evidence of the number and reasons for Plaintiff's divorces.

**LEGAL STANDARD**

"A motion in limine is used to preclude irrelevant, prejudicial, or inadmissible evidence before it is presented to the jury." *Heng v. Heng*, No. A12-1322, 2013 WL 1395589 at *3 (Minn. Ct. App. Apr. 8, 2013). Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," but may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. R. Evid. 401, 403. If the evidence is of a nature that will arouse the jury's emotions of unfair prejudice, hostility, or sympathy, it is inadmissible. *See State v. Carlson*, 268 N.W.2d 553, 559 (Minn. 1978). "[U]nfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). Evidence should also be excluded if its introduction would confuse and mislead the jury "without any significant corresponding benefit to the truth-seeking process." *State v. Patterson*, 329 N.W.2d 840, 841 (Minn. 1983).

Plaintiff only asserts failure to warn claims against 3M. Plaintiff is not asserting a design defect – Plaintiff simply argues that 3M failed to fulfill its duty to instruct how to use the earplugs so they properly seal (e.g. with the flanges folded back) and warn what happens when the earplugs are not properly used (hearing loss and tinnitus).

2

## ARGUMENT

### 1) Collateral Sources and Other Claims

Plaintiff requests that any evidence of payments to Plaintiff by a collateral source be excluded. Minnesota's collateral source statute expressly provides that no evidence shall be presented to the jury regarding payments from collateral sources. Minn. Stat. § 548.251, subd. 5. *See Rush v. Jostock*, 710 N.W.2d 570, 579 (Minn. Ct. App. 2006).

The collateral source statute defines collateral source as, among others, "health, accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage[.]" Minn. Stat. § 548.251, subd. 1(2). In this case, Plaintiff receives worker's compensation and disability based on a back injury. Any mention of either this compensation – or his request for this compensation – should be excluded as irrelevant and prejudicial.

### 2) Third-Party Testing

Federal regulations require manufacturers of hearing protection devices to conduct testing to determine a Noise Reductions Rating (NRR) that is required to be on the label for the devices. 40 C.F.R. §211.210-1(b). The specific test required by the EPA regulations for the label of the hearing protection device is called a "real ear attenuation at threshold" (REAT) test. The REAT test must be performed according to designated American National Standards Institute (ANSI) standards. 40 C.F.R. §211.206-1. The result of this REAT test is the NRR which must be disclosed on the label for the device.

3

40 C.F.R. §211.204-1.  In this case, the 3 tests conducted by 3M preceding 3M's EPA label were conducted in 2000 and numbered 213015-213017.  Tests 213016 and 213017 were the ultimate basis for the required NRR for the labels. Test 213015 was the aborted test on the green end documented in the Flange report. Test 213017 was the second test of the green end with the undisclosed rollback of the non-inserted flange (or flanges).

3M later performed three additional REAT tests on the closed, or green, end of the CAEv2, two tests in 2005 and one test in 2007, and each time the testing was stopped before ten subjects were tested. (Exh. 1, Kieper Dep. at 490-91). The resulting NRRs were 14.8, 15.9, and 14. *Id.* 3M never completed a test that re-produced an NRR of 22 for the CAEv2 but retained the 22 NRR on the label throughout their sales of the product. 3M's REAT testing constitutes the universe of admissible, relevant testing. 3M's attempts to introduce additional 3rd party testing are irrelevant and/or inadmissible.

As the Court knows, this is a failure to warn claim.  Plaintiff is not challenging the earplugs efficacy – he is challenging whether 3M appropriately instructed Plaintiff on how to use the earplugs to achieve their advertised efficacy and warned him of the dangers of not using them appropriately.  Any non-NRR tests indicating that these earplugs could perform satisfactorily are irrelevant to that claim because the non-NRR testing did not influence the label in any manner and thus do not have any impact on "any fact that is of consequence to the determination of the action." Thus, this testing is simply irrelevant and should be excluded.

Plaintiff anticipates that 3M will seek to present multiple, inapplicable testing results as evidence that this earplug "works." Plaintiff anticipates that 3M will seek to offer hearsay test results from various third parties that did not test in the same manner as that required for an EPA label test, and that did not test for the slippage issue that resulted in high variability for the CAEv2 earplug. For reasons of reliability, relevance, and confusion, these tests should be excluded.

*The Inadmissible Michaels & Associates NRR Test*

In the MDL proceedings, Judge Rodgers has held that the Michael & Associates test report must be *fully* excluded as hearsay. In the early trials, this report was admitted for a limited purpose, but 3M continued to argue this report to the jury for a broader purpose. As a result, Judge Rodgers excluded it entirely in all subsequent trials due to 3M's persistent defiance of the Court's orders limiting the use of the inadmissible report solely to impeachment: "This is not the first time, or even the second, that Defendants have disregarded the Court's rulings regarding the Michael's report. But it will be the last. In light of Defendants' brazen and repeated attempts to misuse the Michael's report in bellwether trials for the truth of the NRR, the Court now *sua sponte* reconsiders its ruling on the issue. The report is inadmissible and may not be used for any purpose with any witness in any future bellwether trials in this MDL. . . ." (Exh. 3, Doc. 2244 at 2). The Court should rule, as Judge Rodgers has, that the Michaels & Associates test is inadmissible for any purpose at trial and prohibit 3M from making

5

any arguments or suggesting that anyone was ever able to reproduce an NRR of 22 or greater for the green end of the CAEv2.

### 3) Non-Label (U.S. Military)

Plaintiff requests that this Court issue an Order precluding 3M from introducing evidence related to the usage and testing of these devices by the United States Military. 3M will likely attempt to introduce tests on these devices by the military to suggest that these products are safe and perform appropriately.

But this case is not about whether the devices are defective and Mr. Watts' use does not implicate military usage. Plaintiff's case here is simply about 3M's failure to warn and only about his civilian use. As a result, this evidence must be excluded because these tests are irrelevant and more prejudicial than probative. Any testing or usage evidenced by the military is irrelevant in this matter because Plaintiff is a civilian who used the earplugs in a non-military manner.

None of the military testing 3M will seek to offer was NRR testing under the EPA-mandated ANSI S3.19-1974 standard. For example, this testing involved mannequins and microphones – measuring the earplugs ability to block impulse noises. These tests did not (and could not) aid in the derivation of the labeled NRR. Nor were these tests addressing the widely variable "fit" issue. Thus, whatever this testing may show, it doesn't show anything with respect to the issue in this case: the NRR and the variable fit issues.

Much of the military testing relied on by 3M is also irrelevant because the testing did not even test the fully incorporated CAEv2 product, and the testing did not test the fit of the earplugs. This is the case for the Johnson "Blast Overpressure Studies," repeatedly relied on by 3M's expert John Casali. The Johnson study tested only the ISL filter, not the CAEv2 earplugs. The Johnson study also did not test for fit, which is the basis of Plaintiffs' failure to warn claim.

Additionally, because neither the Flange Report nor its contents were ever disclosed to the military, none of the military testing tested variability in fit arising from failure to fold back the non-inserted end. This makes such testing inapplicable to Plaintiff's claim, which arises solely from the undisclosed variability when the non-inserted end is not folded back. The military testing simply did not test for this variability.

Even if the military testing of these earplugs were relevant, "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Minn. R. Evid 403. Under Rule 403, "probative value is balanced against the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *Doe 136 v. Liebsch*, 872 N.W.2d 875, 880 (Minn. 2015) (internal quotation omitted). "'[U]nfair prejudice' means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Roers*, 520 N.W.2d 752, 758 (Minn. Ct. App. 1994) (quoting Fed. R. Evid. 403

cmt.). Here, the usage, and testing of these earplugs by the U.S. Military is inherently

prejudicial as it nudges the jurors' biases over the line to assuming this device is safe

and effective simply because the military used them and tested them. Courts have held

that the usage of products by the military can be prejudicial and should be excluded.

*See, e.g., West v. Bell Helicopter Textron, Inc.*, 967 F. Supp. 2d 479, 497 (D.N.H. 2013).

Because the efficacy of the earplugs is not the focus of this case – rather the labeling –

the bolstering of the products' prestige through the perceived authority of the military

should not be allowed.

Apart from the prejudice, allowing this testing evidence will force Plaintiff to put

in evidence that demonstrates that this testing is irrelevant. Adding this rebuttal

evidence (that the testing was not to derive an NRR, that the military didn't know about

the Flange Report and that the testing didn't involve correct fitting procedure, etc.) will

unduly extend the trial and cause an unnecessary diversion of the jury away from the

true focus of the case: whether 3M issue a proper warning with the sale of its civilian

earplugs.

Any evidence of non-label testing is another attempt by 3M to infuse this case

with defective device claims that the Plaintiff never asserted.  These attempts are not

only irrelevant and confusing – but ultimately serve to prejudice the Plaintiff.  Again,

Plaintiff is only asserting failure to warn claims, and does not intend to introduce any

expert testimony or other evidence that the earplugs were defectively designed or

8

manufactured.  If 3M is allowed to include non-label testing to show that the earplugs are not defective, and Plaintiff does not combat this evidence, this will prejudice the Plaintiff in front of the jury and create appealable issues.  Because these tests, their resulting data, and any interpretation of that data is irrelevant, confusing, and prejudicial, Plaintiff requests that the Court exclude all references to the tests throughout the trial.

**4) Plaintiff Attorney's advertising, office location, and practice areas**

Plaintiff requests an Order excluding any argument or evidence of any attorney advertising or soliciting during any aspect of the trial. These arguments carry the probability of creating juror bias as some of the members or potential members may not approve of attorney advertising. Whether attorney advertising took place is not relevant to the matter at hand. The use of such arguments during the case may influence decisions based on potential biases those individuals hold rather than the facts and evidence. Attorney advertising is a constitutional, legal, ethical, and proper way for attorneys to provide information about their services. Whether an individual likes or dislikes that decision to advertise has absolutely no relevance to any aspect of this case and should be excluded pursuant to Rules 401, 402, and 403.

Plaintiff anticipates that 3M may ask him about the method and manner by which he began to pursue his claim. Specifically, 3M should be barred from offering any evidence or argument regarding the way Plaintiff hired his lawyers on the grounds that

9

any such evidence or argument is irrelevant and therefore inadmissible, *see* Rule 402, and the probative value of any such argument or evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Rule 403; *see also In re Norplant Contraceptive Prod. Liab. Litig.*, 1997 U.S. Dist. LEXIS 10471 (E.D. Tex. 1997) (granting motion in limine on attorney advertising on Rule 403 grounds). Plaintiff also anticipates that 3M may seek to foment anti-plaintiff or anti-trial lawyer sentiments with references to trial lawyers, attorneys' fees, supposed "runaway" jury verdicts, or gridlocked courthouses. Of course, numerous courts have held such comments have no place in any trial. *See, e.g., In re Univ. Serv. Fund Tel. Billing Practices*, No. 02-md-1468-JWL, Dkt. No. 1097 at 77 (D. Kan. Mar. 18, 2009) ("[Issuing an order] precluding any reference to the case being lawyer driven, or similar . . . [because that would] simply appeal[] to the jury's prejudices in some respect . . . [and] is pejorative."; *see also, e.g., Bryant v. Trexler Trucking, Inc.*, No. 4:11-cv-02254, 2013 WL 643768 at *2 (D. S.C. Feb. 21, 2013) (barring "[a]ttacks on the American civil justice system, plaintiffs' lawyers, or defense lawyers"); *Carolina Cas. Ins. Co. v. R.L. Brown & Assocs.*, No. 1:04-cv-3537, 2008 WL 187516  at *4 (N.D. Ga. Jan. 18, 2008) (barring "all witnesses and defendants and their counsel 'from the introduction of evidence, comment before the jury, or argument' on the matter of attorney fees"); *Crawford v. MuscleTech Research & Dev. Inc.*, No. CIV-01-1298-C, 2002 WL 31852848, at *1 (W.D. Okla. Oct. 10, 2002) (granting motion in limine precluding defendants "from suggesting in any way that

10

America is a litigious society or that numerous frivolous lawsuits are filed," or

"compar[ing] Plaintiffs' claims to the 'notorious McDonald's coffee cup incident'"); *Lee*

*v. Robins Preston Beckett Taylor & Gugle Co., L.P.A.*, No. C2-97-1204, 1999 U.S. Dist. LEXIS

12969, at *11-16 (S.D. Ohio July 9, 1999) (entering "Order instructing the defendants to

make no personal attacks on plaintiff's counsel or 'consumer advocates in general' and

to make no mention of attorney fees . . ."). Relatedly, Plaintiff requests that the Court

preclude 3M from entering evidence, testimony, or simply relating to the location of the

out-of-town residence or general practice areas of the Plaintiff's attorneys.

### 5) Evidence/statements bolstering 3M's "good character"

Plaintiffs anticipate that at trial, 3M will tell the jury that 3M makes good

products that improve people's lives, or that it gives generously to charities and to its

community, or that it employs thousands of individuals across the State and nation.

These statements are self-serving and irrelevant and should be excluded under Minn. R.

Evid. 404. This case is about 3M's failure to warn and instruct on its earplugs, it has

nothing to do with its overall corporate character.

3M's "good" or "bad" character is not an essential element in this case and is

inadmissible under Rules 404 and 405. In *Gareis v. 3M Co.,* the United States District

Court for the District of Minnesota excluded 3M corporate character evidence under

Fed. R. Evid. 404(a)(1) "because evidence about Defendants' corporate life story is not

germane to strict liability." *Gareis v. 3M Co.*, No. 16-CV-4187 (JNE/FLN), 2018 WL

11

2193107, at *4 (D. Minn. May 14, 2018). The same is true here.  Because 3M's "good"

character and the benefits of other goods and services it provides are irrelevant, the

only remaining purpose for which 3M offers this evidence is to use emotion and politics

to manipulate the jury into believing not only that it would never make products that

hurt people, but also that society would be harmed if 3M does not prevail. The

probative value of these arguments is outweighed by the unfair prejudice they would

create in the minds of jurors. Such evidence does not belong in this trial and should be

excluded.

In the alternative, if 3M is permitted to offer evidence of its "good" conduct,

Plaintiff should be permitted to introduce evidence rebutting that proposition through

evidence of 3M's "bad" character, including its other defective products, as well as its

environmental practices—for example, illegally dumping toxins into groundwater,

poisoning wildlife habitat, and threatening the health and safety of entire communities,

subjecting 3M to liability and the imposition of severe penalties.

**6)  Defendant's Counsel vouching for Client**

Plaintiff moves the Court for an Order precluding 3M and its counsel from

referring to themselves as "we," "us," "our," or any related first-person term or phrase.

Plaintiff respectfully suggests that this language is improper as it may improperly

vouch for the credibility of their witnesses or alternatively insert personal opinions into

the argument and prejudice the Plaintiff. The Court in the MDL proceedings has

granted a similar motion.  (Exh. 4, Doc. 78 at p. 20).

**7) Preemptive bolstering of credibility of 3M's witnesses**

       Plaintiff requests an Order preventing 3M from inappropriately attempting to

bolster the credibility of its witnesses, as any such evidence would be prejudicial to

Plaintiff under Minn. R. Evid. 403.  For example, any sort of military service or

commendations should be excluded.  Courts typically consider evidence of military or

police commendations as impermissible character evidence, beyond ordinary

background evidence. *See Leahy v. Salem*, 2011 WL 13263541, at *4 (E.D. Pa. Feb. 4, 2011)

(finding plaintiffs could not introduce evidence of plaintiff's military commendations or

possible acts of heroics because such evidence did not speak to his truthfulness); *Selliken*

*v. Country Mut. Ins. Co.*, 2014 WL 12634309, at *2 (E.D. Wash. Jan. 21, 2014) (finding

evidence of plaintiff's honorable military service was not probative, and was

prejudicial, in a lawsuit unrelated to plaintiff's military service); *see also United States v.*

*Brown*, 503 F. Supp. 2d 239, 242 (D. D.C. 2007) (finding evidence of prior police

commendations and awards went beyond background evidence).  Moreover, the MDL

Court in considering a similar motion from plaintiffs held that any bolstering of a

witness is generally improper under Fed. R. Evid. 404. (Exh. 4 at 20).

13

**8)  Evidence that verdict may impact the cost of 3M products**

Similar to Plaintiff's motion in limine # 5 related to 3M's good corporate character and community involvement, Plaintiff seeks an Order precluding 3M from suggesting that any verdict against it in this case may impact the cost of other 3M products that individuals use every day.  Many of 3M's products are well-known and widely-used, (e.g. scotch tape, post-it notes, etc.).  Any suggestion that a jury verdict against 3M in this case may negatively impact the availability or pricing of these much-used and recognized products is irrelevant and inappropriately prejudicial to the Plaintiff.  Further, there is no basis for any sort of testimony or evidence in this matter that is exclusively focused on a product that is no longer on the market.

**9)  Evidence that litigation may affect employment levels at 3M**

Plaintiff seeks an Order preventing 3M from arguing or suggesting that a negative jury verdict in this case could impact employment numbers and/or stability of 3M.  In Minnesota, 3M is a major employer and any suggestion that a verdict against it may impact a friend or family member's employment is extremely prejudicial to Plaintiff.  In addition, it is simply irrelevant and inaccurate.

Further, 3M has recently attempted to take advantage of a bankruptcy maneuver by declaring chapter 11 bankruptcy of Aearo.  This tactic has been highly publicized as a mechanism to "resolve litigation" related to the CAEv2.  *See, e.g.,*

https://investors.3m.com/news/news-details/2022/3M-Subsidiary-Aearo-Technologies-

14

Takes-Action-to-Efficiently-and-Equitably-Resolve-Litigation-Related-to-Combat-Arms-Earplugs/default.aspx.  Meanwhile, there have been reports that 3M is considering lay-offs, and while these lay-offs have not been tied to the litigation, the connection is frequently noted in the press.  Any affirmative link or insinuation that employment uncertainty could exist because of Plaintiff's lawsuit would unfairly and inappropriately prejudice Plaintiff.  Relatedly, 3M should not be allowed to mention the bankruptcy of Aearo for the connection that this could draw between employment levels and this lawsuit.

**10)  Evidence that Aearo has independent liability in this matter**

Plaintiff seeks an Order preventing 3M from arguing or suggesting that Aearo bears independent responsibility for the CAEv2 liability such that 3M may apportion any of its own liability to Aearo. Plaintiff also seeks a corresponding jury instruction that the jury may not consider evidence that 3M bears anything less than complete and independently liability for Plaintiff's CAEv2-related injuries.

In two of the MDL bellwether cases, Defendant argued that it was the sole defendant responsible for the CAEv2 liability and thus the punitive damages award should be capped at the amount for one defendant. *See* Ex. 2, *Vaughn v. 3M*, 7:20cv134, ECF No. 179 at 10; *Wayman v. 3M*, 7:20cv149. ECF No. 194 at 4. The MDL court agreed, and reduced the punitive damages award accordingly. As such, 3M should be judicially estopped from apportioning liability to Aearo in this action. "Judicial estoppel prevents

15

a party that has taken one position in litigating a particular set of facts from later

reversing its position when it is to its advantage to do so. It is intended to protect courts

from being manipulated by chameleonic litigants who seek to prevail, twice on

opposing theories." *Bauer v. Blackduck Ambulance Ass'n Inc.*, 614 N.W.2d 747, 749-50

(Minn. Ct. App. 2000). Allowing 3M to abandon this position now would provide 3M

an unfair advantage and imposes an unfair detriment on Mr. Watts, as he has prepared

for trial based on 3M's previous position. This is a textbook example of the

"chameleonic conduct" and "prevailing twice on opposing theories" that judicial

estoppel is designed to prevent.

Alternatively, 3M should be equitably estopped from arguing that it is not

responsible for Aearo's conduct related to Plaintiff's CAEv2-related injuries. "Equitable

estoppel is a doctrine designed to prevent a party from taking unconscionable

advantage of [its] own actions." *Bethesda Lutheran Church v. Twin City Const. Co.*, 356

N.W.2d 344, 349 (Minn. Ct. App. 1984). Allowing 3M to denying liability as against

Aearo takes unconscionable advantage of Plaintiff's well-founded reliance on 3M's past

actions in owning Aearo's conduct. 3M has made multiple representations that it was

the only real party defendant, which Mr. Watts reasonably relied on in preparing for

trial. Prior to the recent bankruptcy proceeding, there was no suggestion that 3M would

depart in Plaintiff's case from its past conduct by arguing it is not responsible for

Aearo's conduct. Mr. Watts has compiled hundreds exhibits, trimmed weeks' worth of

16

deposition testimony, selected witnesses, and corresponded with experts all while working under the assumption that he did not have to litigate the allocation of fault between 3M and Aearo. Equity demands that 3M be judicially estopped from denying liability for Aearo's conduct.

Defendant should alternatively be collaterally estopped from denying complete and independent liability for CAEv2-related injuries as against Aearo. Generally, collateral estoppel applies where: (1) the issue was identical to the one in a prior adjudication; (2) there was a final judgement on the merits; (3) the estopped party was a party to the prior adjudication; and (4) the estopped party was given full and fair opportunity to be heard on the adjudicated issue. *Ellis v. Minneapolis Com'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982). All the elements of collateral estoppel are present here. First, this issue of whether 3M is completely and independently liable for CAEv2 liabilities is identical to the issue of whether 3M was the solely responsible defendant that was already decided when the MDL ruled on the punitive damages cap. *See* Ex. 2, *Vaughn v. 3M*, 7:20cv134, ECF No. 179 at 10; *Wayman v. 3M*, 7:20cv149. ECF No. 194 at 4. Second, there was a final judgment on the merits when the MDL court entered an order finding that the six MDL defendants were "one and the same" and were for all, intents and purposes, 3M. *See* Ex. 2, *Vaughn* at 8. Third, 3M was a party to the prior adjudication as one of the defendants in the MDL. Fourth, 3M was given the opportunity to be heard because the MDL court allowed the parties to brief the impact

of the statutory cap on punitive damages. Therefore, because all the elements are met, 3M is collaterally estopped from arguing that it does not bear full and complete responsibility as opposed to Aearo for Mr. Watts' CAEv2 related injuries.

Further, on August 16, 2022, the MDL Court entered an injunction that precludes 3M from "supporting directly or indirectly, financially or otherwise, any collateral attack" on the MDL's orders "by any other parties in any other forum, including Aearo." *See* Ex. 3, *In re: 3M Combat Arms Earplug Products Liability Litigation*, 3:19md2885, ECF 3389 at 8. If 3M defies the MDL injunction, the MDL Court has retained jurisdiction to "convene contempt proceedings to enforce compliance." *Id.* The MDL court has already ruled that 3M is the solely liable defendant in ruling on the punitive damage cap in the *Vaugh* and *Wayman* cases. *See* Exh. 2, *Vaughn v. 3M Co.*, 7:20-cv-134, ECF No. 179 at 10; *Wayman v. 3M Co.*, 7:20-cv-149. ECF No. 194 at 4. Any effort to dispute this sole liability would be a "collateral attack" on the MDL's orders in another forum and is therefore barred by the MDL injunction.

Lastly, 3M has waived any defense to its complete and independent liability by failing to assert the affirmative defense in its answer, during summary judgement briefing, or at any time in the years leading up to Mr. Watts' trial. It would be unfair and surprising to allow 3M to try to shift or apportion liability to Aearo for the first time at trial, as 3M did not raise the issue of shifting liability to Aearo during the sixteen MDL bellwether trials or any time throughout the past three years of litigation in this

18

Court and the MDL. If Mr. Watts had known from the outset that 3M would try to shift liability to Aearo it would have impacted the evidence he collected, the parties he deposed, and the trial strategy he adopted.

In summary, it would be wholly unfair for 3M to argue or suggest that it bears anything less than complete and independently liability for Mr. Watt's CAEv2-related injuries as compared to Aearo.

**11) Number and type of guns Plaintiff owns**

Plaintiff requests that the Court preclude any evidence specifically involving the number and type of firearms that Plaintiff owns. While Plaintiff has accumulated a large number of firearms over the years, the vast majority of these guns are antique collector items that he has never (nor would he ever) actually fired. Thus, the sheer number of firearms in his possession would be misleading. Moreover, given the strong opinions individuals have of gun ownership in the current political climate, the type and number of guns that Plaintiff owns is likely to be more prejudicial than probative. In other words, the number or type of firearms owned but never fired by Plaintiff is irrelevant beyond his degree of usage – and Plaintiff does not dispute that his prior firearm usage (actual firing) is relevant and admissible.

**12) Number of or reasons for Plaintiff's divorces**

Plaintiff requests that the Court preclude 3M from presenting any evidence about the number of divorces he has had or the reasons for them. Mr. Watts's divorces

19

predate his injuries and the reasons behind them are irrelevant.  Plaintiff's current

partner is not pursuing a consortium claim against 3M.  This evidence is irrelevant

under Minn. R. Evid. 401 and should be excluded.  Indeed, Judge Rodgers similarly

found in the MDL trial cases that any evidence relating to the reasons behind a

plaintiff's divorces was irrelevant.  (Exh. 5 at 25).

Dated: September 23, 2022                    Respectfully Submitted,

                                             */s/ Daniel E. Gustafson*

**SCHWEBEL GOETZ & SIEBEN, P.A.**            **GUSTAFSON GLUEK PLLC**
William R. Sieben (#100808)                  Daniel Gustafson (#202241)
Alicia N. Sieben (#389640)                   Amanda M. Williams (#341691)
Matthew J. Barber (#397240)                  Canadian Pacific Plaza
5120 IDS Center                              120 South Sixth Street, Suite 2600
80 South Eighth Street                       Minneapolis, Minnesota 55402
Minneapolis, Minnesota 55402-2246            Telephone: 612-333-8844
Telephone: 612-377-7777                      Fax:    612-339-6622
Fax: 612-333-6311                            Email: dgustafson@gustafsongluek.com
Email: bsieben@schwebel.com                          awilliams@gustafsongluek.com
        asieben@schwebel.com
        mbarber@schwebel.com

**PAUL LLP**
Richard M. Paul III
(appearing pro hac vice)
Ashlea G. Schwarz
(appearing pro hac vice)
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: 816-984-8100
Fax: 816-984-8101
Email: Rick@PaulLLP.com
        Ashlea@PaulLLP.com

**ATTORNEYS FOR PLAINTIFF**

20