No. 22-12796-A

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

IN RE: 3M COMBAT ARMS EARPLUG LIABILITY LITIGATION

———————————

RICHARD VALLE,

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant*,

AEARO TECHNOLOGIES LLC, et al.,

*Defendants.*

———————————

On Appeal from the United States District
Court for the Northern District of Florida,
MDL No. 19-02885

———————————

# CORRECTED OPENING BRIEF OF
# DEFENDANT-APPELLANT 3M COMPANY

———————————

PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendant-
Appellant 3M Company*

October 11, 2022

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendant-Appellant 3M Company hereby certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- 3M Company (**MMM**) – Defendant-Appellant

- 3M Occupational Safety LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo Holdings LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo Intermediate LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo Technologies LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aearo, LLC – Defendant/Non-appellant wholly owned subsidiary of Defendant-Appellant 3M Company

- Aylstock Witkin Kreis & Overholtz – counsel for MDL Plaintiffs

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Aylstock, Bryan Frederick – counsel for MDL Plaintiffs

- Barr, Brian H. – counsel for MDL Plaintiffs

- Beall, Charles Franklin, Jr. – counsel for Defendant-Appellant 3M Company

- Benton, Diana Clough – counsel for Defendants/Non-appellants

- Bhimani, Jay L. – counsel for Defendants/Non-appellants

- Bouk, Winston Troy – counsel for MDL Plaintiffs

- Bradley Arant Boult Cummings – counsel for Defendant-Appellant 3M Company

- Branscome, Kimberly O. – counsel for Defendants/Non-appellants

- Brock, Robert C. – counsel for Defendants/Non-appellants

- Brown & James – counsel for MDL Plaintiffs

- Brown, Micah David – counsel for Defendants/Non-appellants

- Buchanan, David R. – counsel for MDL Plaintiffs

- Burns, Michael A. – counsel for MDL Plaintiffs

- Buxner, Evan D. – counsel for MDL Plaintiffs

- Cantero, Raoul G. – counsel for Defendant-Appellant 3M Company

- Carter, Cole T. – counsel for Defendants/Non-appellants

- Cartmell, Thomas P. – counsel for MDL Plaintiffs

- Castiglia, Craig – counsel for Defendants/Non-appellants

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Ciresi Conlin LLP – counsel for MDL Plaintiffs

- Clark Love & Hutson – counsel for MDL Plaintiffs

- Clement, Paul D. – counsel for Defendant-Appellant 3M Company

- Clement & Murphy, PLLC – counsel for Defendant-Appellant 3M Company

- Cooper, David M. – counsel for MDL Plaintiffs

- Cornell, Katherine Lindsey – counsel for MDL Plaintiffs

- Czak, Steven C. – counsel for Defendants/Non-appellants

- DeCamp, Kyle Richard – counsel for Defendants/Non-appellants

- Dechert LLP – counsel for Defendants/Non-appellants

- De Paulo, Tabitha J. – counsel for Defendants/Non-appellants

- Elizabeth, Sierra – counsel for Defendants/Non-appellants

- Ellis, Robert P. – counsel for Defendants/Non-appellants

- Esfandiarifard, Saghar – counsel for Defendants/Non-appellants

- Fields, Barry E. – counsel for Defendants/Non-appellants

- Fox, Shawn – counsel for MDL Plaintiffs

- Glass, David M. – counsel for the United States of America

- Gori Julian & Associates – counsel for MDL Plaintiffs

- Gottlieb, Simon – counsel for Defendants/Non-appellants

- Gunderson, Karl B. – counsel for Defendants/Non-appellants

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Hill, Thomas Larry – counsel for Defendant-Appellant 3M Company

- Hodge, Leigh Anne – counsel for Defendant-Appellant 3M Company

- Hoekstra, Jennifer M. – counsel for MDL Plaintiffs

- Hutson, Shelley Van Natter – counsel for MDL Plaintiffs

- Jones, Hon. Gary R. – U.S. Magistrate Judge for the Northern District of Florida

- Karis, Hariklia – counsel for Defendants/Non-appellants

- Keller, Ashley – counsel for Plaintiff Richard Valle and MDL Plaintiffs

- Keller Postman LLC – counsel for Plaintiff Richard Valle and MDL Plaintiffs

- Kelly, Maxwell H. – counsel for MDL Plaintiffs

- Kim, Mary H. – counsel for Defendants/Non-appellants

- Kirkland & Ellis LLP – counsel for Defendants/Non-appellants

- Kolsky, Joshua M. – counsel for the United States of America

- Kreis, Douglass A. – counsel for MDL Plaintiffs

- Laminack Pirtle & Martines – counsel for MDL Plaintiffs

- Lauria, Jessica C. – counsel for Defendant-Appellant 3M Company

- Leach, Garret A. – counsel for Defendants/Non-appellants

- Leuthauser, Nolan M. – counsel for Defendants/Non-appellants

- Levin Papantonio Rafferty – counsel for MDL Plaintiffs

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Marlowe, Emily B. – counsel for MDL Plaintiffs

- Mitchell, Kasdin – counsel for Defendants/Non-appellants

- Morriss, F. Chadwick – counsel for Defendants/Non-appellants

- Mostyn Law – counsel for MDL Plaintiffs

- Moore Hill & Westmoreland – counsel for Defendant-Appellant 3M Company

- Murphy, Erin E. – counsel for Defendant-Appellant 3M Company

- Neglia, Ashley E. – counsel for Defendants/Non-appellants

- Nomellini, Mark J. – counsel for Defendants/Non-appellants

- Odom, Megan L. – counsel for MDL Plaintiffs

- Onder Law LLC – counsel for MDL Plaintiffs

- Ozurovich, Allison K. – counsel for Defendants/Non-appellants

- Pirtle, Thomas W. – counsel for MDL Plaintiffs

- Pulaski Law Firm – counsel for MDL Plaintiffs

- Quinn Emanuel Urquhart & Sullivan LLP – counsel for MDL Plaintiffs

- Rafferty, Troy Alan – counsel for MDL Plaintiffs

- Rivera, Maria P. – counsel for Defendants/Non-appellants

- Rodgers, Hon. M. Casey – U.S. District Judge for the Northern District of Florida

- Sacchet, Michael A. – counsel for MDL Plaintiffs

No. 22-12796-A, *In re: 3M Combat Arms Earplug Liability Litigation*

- Seeger, Christopher A. – counsel for MDL Plaintiffs

- Seeger Weiss LLP – counsel for MDL Plaintiffs

- Seeley, Caleb A. – counsel for MDL Plaintiffs

- Tam, Jonathan S.  – counsel for Defendants/Non-appellants

- Tracey Fox King & Walters – counsel for MDL Plaintiffs

- Tracey, Sean Patrick – counsel for MDL Plaintiffs

- Van Fleteren, Haley J. – counsel for Defendant-Appellant 3M Company

- Wagstaff & Cartmell – counsel for MDL Plaintiffs

- Wasdin, Nicholas F. – counsel for Defendants/Non-appellants

- White & Case LLP –counsel for Defendant-Appellant 3M Company

- Wilson, Quinn Robert – counsel for MDL Plaintiffs

Defendant-Appellant 3M Company states that it is a corporation whose shares are publicly traded (NYSE: **MMM**).   3M Company does not have a parent corporation and no publicly held corporation owns 10% or more of 3M's stock.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
*Counsel for Defendant-Appellant*
*3M Company*

October 11, 2022

## STATEMENT REGARDING ORAL ARGUMENT

Appellant 3M respectfully requests oral argument. This case presents important questions regarding the limits on courts' injunctive powers under the All Writs Act, 28 U.S.C. §1651, and involves the largest multi-district litigation in history. 3M believes that oral argument will materially assist the Court in resolving the important issues presented here.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT...............................................................CIP-1

TABLE OF AUTHORITIES................................................................... iv

INTRODUCTION ........................................................................... 1

STATEMENT OF JURISDICTION ....................................................... 4

STATEMENT OF THE ISSUE............................................................ 4

STATEMENT OF THE CASE............................................................. 4

    A.    The MDL Proceedings and Debtors' Chapter 11 Filings .................... 4

    B.    The MDL Court Responds to the Bankruptcy Filings ........................ 7

    C.    The MDL Court's Unprecedented Injunction .....................................11

    D.    Subsequent Proceedings in the Bankruptcy Court............................ 14

SUMMARY OF THE ARGUMENT ..................................................... 16

STANDARD OF REVIEW ............................................................... 18

ARGUMENT ................................................................................. 18

I.    The Bankruptcy Court Provides an Adequate Remedy at Law.................... 18

II.    The Injunction Invades the Bankruptcy Court's Exclusive Jurisdiction................................................................................ 24

III.    The Injunction Violates 3M's Constitutional Rights .................................... 29

IV.    The Injunction Violates the Automatic Stay.................................................. 32

V.    The Injunction Violates Federal Rules of Civil Procedure 52 and 65........................................................................................ 36

VI.    Equitable Considerations Do Not Support The Injunction ......................... 39

CONCLUSION ............................................................................... 42

ii

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

**Cases**

*A.H. Robins Co., Inc. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986).............................................................................7

*Alexander v. United States*,
  509 U.S. 544 (1993)..........................................................................................31

*Am. Red Cross v. Palm Beach Blood Bank, Inc.*,
  143 F.3d 1407 (11th Cir. 1998)........................................................................38

*Archdiocese of Washington v. Washington Metro. Area Transit Auth.*,
  897 F.3d 314 (D.C. Cir. 2018) .........................................................................40

*Brow v. Farrelly*,
  994 F.2d 1027 (3d Cir. 1993)............................................................................37

*Brown v. Ala. DOT*,
  597 F.3d 1160 (11th Cir. 2010)........................................................................38

*Clinton v. Goldsmith*,
  526 U.S. 529 (1999)................................................................................. 37, 39

*Const. Bank v. Tubbs*,
  68 F.3d 685 (3d Cir. 1995)................................................................................35

*Corp. Synergies Grp., LLC v. Andrews*,
  775 F.App'x 54 (3d Cir. 2019)..........................................................................39

*Cromer v. Kraft Foods N. Am., Inc.*,
  390 F.3d 812 (4th Cir. 2004).............................................................................30

*Dunn v. McNabb*,
  138 S.Ct. 369 (2017).........................................................................................36

*Fla. Med. Ass'n, Inc. v. U. S. Dep't of Health, Ed. & Welfare*,
  601 F.2d 199 (5th Cir. 1979).............................................................................17

---

[*] Citations upon which Appellant primarily relies are marked with asterisks.

iv

*Gilchrist v. Gen. Elec. Cap. Corp.*,
  262 F.3d 295 (4th Cir. 2001) .......................................................... 25, 27, 35*

*Granny Goose Foods, Inc.*
  *v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*
  *of Alameda Cnty.*,
  415 U.S. 423 (1974) ........................................................................39

*Harrelson v. United States*,
  613 F.2d 114 (5th Cir. 1980) ................................................... 23, 24

*In re Aldrich Pump LLC*,
  2021 WL 3729335 (Bankr. W.D.N.C. Aug. 23, 2021) ...................................7

*In re Baldwin-United Corp. Litig.*,
  765 F.2d 343 (2d Cir. 1985) ..................................................... 25, 26

*In re Ford Motor Co.*,
  591 F.3d 406 (5th Cir. 2009) .........................................................21

*In re James Wilson Assocs.*,
   965 F.2d 160 (7th Cir. 1992) .........................................................27

*In re LTL Mgmt. LLC*,
  638 B.R. 291 (Bankr. D.N.J. 2022) ................................................7

*In re McLean*,
  794 F.3d 1313 (11th Cir. 2015) .....................................................25

*In re Windstream Holdings, Inc.*,
  627 B.R. 32 (Bankr. S.D.N.Y. 2021) ...........................................33

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
  299 F.3d 1242 (11th Cir. 2002) ....................................................18

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) .................................. 18, 29, 41*

*LeCroy v. United States*,
  975 F.3d 1192 (11th Cir. 2020) ..................................... 1, 16, 36*

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) .........................................................................21

v

*Louisiana v. Biden*,
      45 F.4th 841 (5th Cir. 2022)...........................................................................38

*Madsen v. Women's Health Ctr., Inc.*,
      512 U.S. 753 (1994)........................................................................................31

*Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*,
      140 B.R. 969 (N.D. Ill. 1992)........................................................................26

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
      139 S.Ct. 1652 (2019).....................................................................................33

*Negrete v. Allianz Life Ins. Co. of N.A.*,
      523 F.3d 1091 (9th Cir. 2008).........................................................................26

*NetChoice, LLC v. Att'y Gen., Fla.*,
      34 F.4th 1196 (11th Cir. 2022).......................................................................40

*Org. for a Better Austin v. Keefe*,
      402 U.S. 415 (1971).........................................................................................31

*PMC, Inc. v. Sherwin-Williams Co.*,
      151 F.3d 610 (7th Cir. 1998)...........................................................................38

*Procup v. Strickland*,
      792 F.2d 1069 (11th Cir. 1986).......................................................................23

*Riccard v. Prudential Insurance Co.*,
      307 F.3d 1277 (11th Cir. 2002)................................................................. 22, 23

*Roberts v. Comm'r*,
      175 F.3d 889 (11th Cir. 1999).........................................................................35

*Rohe v. Wells Fargo Bank, N.A.*,
      988 F.3d 1256 (11th Cir. 2021).............................................................. *passim**

*Schiavo ex rel. Schindler v. Schiavo*,
      403 F.3d 1223 (11th Cir. 2005)................................................................ 17, 36

*Schmidt v. Lessard*,
      414 U.S. 473 (1974)................................................................................. 38, 39

vi

*SEC v. Brennan*,
   230 F.3d 65 (2d Cir. 2000) ....................................................... 34, 35

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) ......................................................... 3, 18, 24*

*Tolbert v. Monsanto Co.*,
   625 F.App'x 982 (11th Cir. 2015) ................................................. 19

*United States*
   *v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*
   *of Am., AFL-CIO*,
   266 F.3d 45 (2d Cir. 2001) ......................................................... 31

*W. Water Mgmt., Inc. v. Brown*,
   40 F.3d 105 (5th Cir. 1994) ........................................................ 39

*Weaver v. Fla. Power & Light Co.*,
   172 F.3d 771 (11th Cir. 1999) ..................................................... 19

*Wicker v. Beria*,
   859 F.App'x 354 (11th Cir. 2021) ................................................ 37

*Wis. Right to Life, Inc. v. Fed. Election Comm'n*,
   542 U.S. 1305 (2004) ................................................................. 16

**Statutes**

11 U.S.C. §362 ............................................................................ 33

11 U.S.C. §1109 ...................................................................... 27, 29

11 U.S.C. §1112 ........................................................................... 25

28 U.S.C. §157 ............................................................................. 24

28 U.S.C. §158 ............................................................................. 15

28 U.S.C. §1292 ............................................................................. 4

28 U.S.C. §1332 ............................................................................. 4

28 U.S.C. §1334 ...................................................................... 24, 33

28 U.S.C. §1407 ........................................................................21

28 U.S.C. §1442 ..........................................................................4

28 U.S.C. §1651 ............................................................. 8, 16, 37

**Rule**

Fed. R. Civ. P. 65 ......................................................................38

**Other Authorities**

15 Fed. Prac. & Proc. §3867 (4th ed.) ....................................21

3 *Collier on Bankruptcy* ¶362.03 ...........................................33

7 *Collier on Bankruptcy* §1109.04 (16th ed. 2022) ...............27

Charles A. Wright & Arthur R. Miller,
    18 Fed. Prac. & Proc. Juris. §4405 (3d ed. 2022) ........................................19

Pl.'s Mem. in Supp. of Mot. in Limine,
    *In re: 3M Combat Arms Earplug Litig. (Watts)*,
    No. 27-CV-19-19916 (Hennepin Cty. Dist. Ct. Sept. 23, 2022)....................22

## INTRODUCTION

This Court has "carefully confined" use of the All Writs Act to "extraordinary circumstances." *LeCroy v. United States*, 975 F.3d 1192, 1197 (11th Cir. 2020). The All Writs Act injunction issued here is indeed extraordinary, but for all the wrong reasons. Indeed, the MDL court all but conceded that the injunction was overbroad and infirm by staying the injunction in part. MDL.Dkt. 3407 at 2-3. But fatal errors permeate the injunction as a whole and require reversal in full.

For several years, Appellant 3M Company has been defending itself in multi-district litigation that is now the largest MDL in history. After *other* parties to that litigation—Aearo Technologies LLC and its affiliates (hereinafter, "Debtors")—filed for Chapter 11 protection, the MDL court invoked the All Writs Act to broadly enjoin *3M* from "attempting to relitigate the same issues or related issues" in the bankruptcy court that the MDL court had previously decided, or from "supporting, directly or indirectly, financially or otherwise, any collateral attack on" the MDL court's orders "by any other parties in any other forum." The MDL court explicitly threatened to "convene contempt proceedings" if 3M dared to "attempt[] to relitigate"—or "support[] relitigation of"—any issue before the bankruptcy court.

The MDL court's sweeping injunction comprises an unprecedented interference with ongoing bankruptcy proceedings and 3M's statutory and constitutional rights to petition the bankruptcy court for relief. The breadth of the

injunction is hard to overstate.  It purports to prohibit any attempt to relitigate not just the same issues, but "related issues."  It precludes 3M from supporting "other parties," including Debtors, "directly or indirectly, financially or otherwise," in making any "collateral attack" in "any other forum."

It is clear that the order is designedly broad, but its exact contours are anyone's guess, especially given that the bankruptcy process often involves ascertaining the true value of claims against the estate that were litigated in part elsewhere.  Would the order preclude 3M or Debtors from arguing that the government-contractor defense limits the value of claims, despite the MDL court's rejection of the defense?  Would the order preclude a 3M executive from telling investors that the MDL court's erroneous rulings have vastly overstated 3M's true liability?  The answer to these questions is unclear.  And who will be the judge of whether a filing or statement crosses the hazy line between fair criticism and "collateral attack" or impermissible "attempt to relitigate" a "related issue"?  It will not be the court to which the filing is directed, which is steeped in bankruptcy law and has the full context of the proceedings before it.  It will not matter a whit whether the bankruptcy court finds arguments made before it by 3M to be entirely fair, appropriate, insightful, helpful, or meritorious.  Instead, it will be the MDL court, in its sole discretion and with the looming threat of contempt—and this is a court that has demonstrated, through this

order and otherwise, a sensitivity to fair criticism of its orders that have led to these MDL proceedings spiraling into the largest MDL ever.

The MDL court's crossing of jurisdictional lines and invasion of the bankruptcy court's exclusive jurisdiction is not just unprecedented and impermissible, but wholly unnecessary. Determining the preclusive effect of earlier litigation is "usually the bailiwick of the *second* court," and the bankruptcy court is fully empowered to police filings made directly to it and apply *res judicata* and collateral estoppel principles to the parties' arguments. *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011). Appellee's ability to object and direct its arguments and concerns to the bankruptcy court provides a more-than-adequate remedy for any perceived attempt to "relitigate" an issue in that court, especially given the bankruptcy court's greater familiarity with the line between impermissible collateral attacks and fair argument concerning the value of claims against the Debtors. All the injunction accomplishes is to unnecessarily insert the MDL court into the bankruptcy proceedings—over which the bankruptcy court has exclusive jurisdiction—and create the potential for conflicting rulings, in which the MDL court could hold 3M in contempt for an argument made to the bankruptcy court that the latter deems perfectly appropriate. The effect is to give the MDL court's decisions *more* preclusive weight than they deserve, and to chill 3M's exercise of its statutory and constitutional rights to participate in the bankruptcy proceeding, by threatening

the company with contempt for making good-faith arguments that the MDL court deems out of bounds. This Court should reverse the MDL court's extraordinary, unsupported injunction and eliminate its threat to the authority of the bankruptcy court and 3M's right to assert its interests in the bankruptcy proceedings.

## STATEMENT OF JURISDICTION

This is an appeal from an order of the United States District Court for the Northern District of Florida granting in part and denying in part a motion for a preliminary injunction under the All Writs Act. The district court had jurisdiction under 28 U.S.C. §1442(a)(1) and 28 U.S.C. §1332. After the district court entered its order on August 16, 2022, 3M timely noticed its appeal on August 19, 2022. This Court has appellate jurisdiction under 28 U.S.C. §1292(a)(1).

## STATEMENT OF THE ISSUE

Whether the MDL court erred in granting an All Writs Act injunction forbidding 3M from (1) "attempting to relitigate the same issues or related issues" in the bankruptcy court that the MDL court had already decided, or (2) "supporting, directly or indirectly, financially or otherwise, any collateral attack" on the MDL court's rulings "by any other parties in any other forum."

## STATEMENT OF THE CASE

### A.    The MDL Proceedings and Debtors' Chapter 11 Filings

This appeal arises from the largest multi-district litigation in history. Centralized in the Northern District of Florida, the MDL involves claims by more

than 220,000 individuals who allege they suffered hearing-related injuries caused by their use of hearing protection devices known as the Combat Arms Earplugs version 2 ("CAEv2" devices).  Adv.Pro.Dkt.122 at ¶131.[1]  Aearo Technologies LLC, a manufacturer that has been based in Indianapolis for more than 40 years, developed the earplugs in the late 1990s and began selling them to the United States military and civilian consumers in 2000.  Bankr.Dkt.11 at ¶7.[2]  3M acquired Aearo in 2008 and agreed to provide it with legal, human resources, and accounting services under a "Support Services Agreement."  *Id*. at ¶33.  Aearo transferred the CAEv2 product line to 3M in 2010, and 3M continued selling the CAEv2 until it discontinued the product in 2015.  *Id*. at ¶¶23, 28.

Soon after the MDL was established in April 2019, the parties agreed to conduct bellwether trials in the MDL court to help value the plaintiffs' claims and facilitate a global settlement.  *See* MDL.Dkt.922.[3]  But the 27 bellwether cases produced highly divergent results.  Eight cases were dismissed before trial, and six of the trials ended in complete defense verdicts.  Bankr.Dkt.12 at 9.  Thirteen cases ended with plaintiff's verdicts, with awards ranging from $1.4 million (and four

---

[1] "Adv.Pro.Dkt." refers to the adversary proceeding docket, No. 22-50059 (Bankr. S.D. Ind.).

[2] "Bankr.Dkt." refers to the docket in *In re Aearo Technologies LLC, et al.*, No. 22-02890-JJG-11 (Bankr. S.D. Ind.).

[3] "MDL.Dkt." refers to the docket in *In re Combat Arms Earplugs Products Liability Litigation*, No. 3:19-md-02885 (N.D. Fla.).

5

others below $3 million) to as high as $77.5 million to a single plaintiff.  *Id*. at 10.

After the last bellwether trial concluded in May 2022, the parties were still far from

reaching a global settlement, and the MDL court was set to remand thousands of

cases for trial in federal courts around the country in the coming months.  *Id*. at 35.

Given the lack of clarity provided by the bellwether process, as well as the

significant burden, uncertainty, and anticipated duration of the hundreds of

thousands of remaining cases, Aearo—which designed the devices, made key early

decisions challenged by plaintiffs, and sold about 80% of the devices before 3M

purchased it—filed for Chapter 11 protection in the Southern District of Indiana on

July 26, 2022, along with certain of its affiliates.  *See* Bankr.Dkt.1; Bankr.Dkt.11 at

¶22.  Shortly beforehand, to obtain the financing necessary to fund successful

Chapter 11 cases, including professional fees and the ultimate funding of a claims

trust, Debtors entered into an agreement with 3M (the "Funding Agreement").

Bankr.Dkt.11 at ¶12.  Under the Funding Agreement, 3M agreed, upon Debtors'

exhaustion of their own assets, to fund Debtors' operating and legal administrative

costs during the Chapter 11 cases and, upon confirmation of a reorganization plan,

to contribute to a trust to fund payments to claimants entitled to compensation.  In

exchange, Debtors agreed to indemnify 3M for liabilities related to the CAEv2

devices.  *Id*.

On the same day Debtors sought Chapter 11 protection, they filed a complaint in the bankruptcy court seeking (1) a determination that the automatic stay of 11 U.S.C. §362(a) applies to CAEv2 claims against 3M; and (2) a preliminary injunction under 11 U.S.C. §105(a) enjoining continued prosecution of CAEv2 claims against 3M.  Adv.Pro.Dkt.1-2.  Debtors argued, *inter alia*, that §362(a)(1) applies to the CAEv2 claims against 3M given the identity of interests between Debtors and 3M; §362(a)(3) applies to the CAEv2 claims against 3M given Debtors' and 3M's shared insurance policies and Debtors' indemnification obligations to 3M; and §105(a) relief is warranted to protect Debtors' estates, allow for the orderly estimation and resolution of CAEv2 claims, and facilitate Debtors' reorganization. *Id.*  Debtors cited a number of cases applying §362(a) or §105(a) to bar claims against non-debtors under similar circumstances.  *See, e.g.*, *In re LTL Mgmt. LLC*, 638 B.R. 291, 303-07 (Bankr. D.N.J. 2022); *In re Aldrich Pump LLC*, 2021 WL 3729335, at *31 (Bankr. W.D.N.C. Aug. 23, 2021); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).  The bankruptcy court scheduled an evidentiary hearing for August 15-17, 2022.

### B.    The MDL Court Responds to the Bankruptcy Filings

The MDL Court reacted to the Chapter 11 filing immediately.  Hours after the filing, the court *sua sponte* scheduled a hearing for the very next morning at 7:30 a.m.—before the first-day hearing in the bankruptcy court commenced.

MDL.Dkt.3330.  At the hearing, the MDL court demanded that 3M's and Debtors' counsel agree that "[t]his Court … is authorized by Article III of the Constitution and Congress to handle the disputes in this MDL."  7/27/22 Tr. at 5:8-11.  It asked counsel whether "[e]very single action taken by this Court while presiding over this MDL has been within this Court's Constitutional and statutory authority."  *Id*. at 17:2-4.  And it mused that Debtors' Chapter 11 filing was "designed to fraudulently deprive these nearly 240,000 plaintiffs out of their right to pursue their lawfully filed claims."  *Id*. at 11:23-12:1.  The MDL court closed by ordering 3M to "pay the expenses associated with any deposition that was unilaterally cancelled before any injunction or stay issues in this litigation," although no plaintiff had requested that relief and the court acknowledged the possibility that "there aren't any expenses." *Id*. at 20:6-11.  The court added that it would imminently schedule a hearing "to determine whether 3M proceeded in good faith in connection with" a recent court-ordered mediation in the MDL.  *Id*. at 20:12-17.

That same day, one of the 200,000-some plaintiffs in the MDL, Appellee Richard Valle, filed in the MDL court a motion for a temporary restraining order to "enjoin 3M from taking any action outside of this MDL to enjoin other parties from pursuing their CAEv2 claims against 3M."  MDL.Dkt.3332 at 1.  Valle asserted that the MDL court could enjoin 3M under the All Writs Act, 28 U.S.C. §1651(a).  Two hours later, the MDL court ordered 3M to respond within four hours.

MDL.Dkt.3333.  The next day, the MDL court denied the motion because Valle had "failed to show irreparable harm absent a seven-day TRO," given that the bankruptcy court's evidentiary hearing on the application of the automatic stay would not even begin until August 15.  MDL.Dkt. 3343 at 2.

Undeterred, on August 3, Valle filed an "Emergency Motion for Preliminary Injunction Against Defendant 3M Company."  MDL.Dkt.3358.  Valle did not identify any changed circumstances since the denial of his earlier motion, and he acknowledged that he was merely filing a "more complete" motion following his earlier, "hurried" motion.  *Id.* at 4.  Again invoking only the All Writs Act, Valle asked the MDL court "for a preliminary injunction preventing 3M from (i) relitigating matters in Bankruptcy Court that this Court has already adjudicated and (ii) supporting an injunction against any Plaintiffs from litigating CAEv2 matters against 3M."  *Id*. at 6.

Valle did not identify any instances where 3M had "relitigat[ed]," or even attempted to "relitigat[e]," "matters in Bankruptcy Court" that the MDL court had "already adjudicated."  *Id.*  He nevertheless repeatedly accused 3M of "attempting to halt this MDL in its tracks," and "want[ing] to wipe out the scientific and evidentiary rulings that the Court and the parties have tirelessly litigated."  *Id*. at 2, 15, 17, 18, 20.  To support those assertions, however, Valle only cited pleadings that Debtors (not 3M) had filed in the bankruptcy court—principally, an informational

brief that Debtors had submitted on the first day of those proceedings. *See id*. at 7, 9, 10, 12, 21 n.8; Bankr.Dkt.12. Valle disclaimed the need for an evidentiary hearing and demanded expedited consideration. MDL.Dkt.3358 at 22-23. The MDL court ordered 3M to respond within six days, on August 9—even earlier than Valle had requested. MDL.Dkt.3359.

At the hearing, Valle's counsel repeatedly argued that 3M planned "to collaterally attack Your Honor's orders," 8/11/22 Tr. at 6:5-16, but again relied on statements made *by the Debtors* in the bankruptcy court, *see id*. at 8:1-3 (offering "direct quotations … from the bankruptcy court first day hearing or the informational brief"). For its part, the MDL court indicated that it "still ha[d]n't figured out" certain factual questions like "if you all have a separate indemnity agreement or if just a clause in the funding agreement." *Id*. at 22:17-19. Despite holding no evidentiary hearing, the court asked 3M's counsel about numerous factual issues. *See, e.g.*, *id*. at 24:18-19 (asking counsel "why did you need the indemnity agreement" and "[w]ere there liabilities ever carried on Aearo's balance sheets or just on 3M's"); *id*. at 75:7-12 (asking whether "there is an [indemnification] agreement that exists prior to the July indemnification agreement").

Relatedly, on August 4, another MDL plaintiff, Guy Cupit, moved the MDL court to issue a declaratory judgment that 3M had waived or was estopped from raising any "successor-liability defense" to plaintiffs' argument that 3M is wholly

liable for any claims regarding earplugs made and sold by Aearo.  MDL.Dkt.3361.
The MDL court denied Cupit's motion on August 14 on the ground that the motion
was not ripe, as 3M had not yet raised the successor-liability issue that Cupit argued
was waived.  MDL.Dkt.3386.  The MDL court's order nonetheless included eight
pages of dicta noting its agreement with Cupit's argument and its disapproval of the
bankruptcy filing, accusing 3M of "naked duplicity" and stating that it was "deeply
concerned" over 3M's "sudden" actions.  *Id.* at 6-8.

### C.    The MDL Court's Unprecedented Injunction

On August 16—while the bankruptcy court's evidentiary hearing on Debtors'
motion was taking place—the MDL court granted Valle's motion in part and denied
it in part.  MDL.Dkt.3389.  The court denied Valle's principal request "that 3M be
enjoined from supporting a bankruptcy injunction that would preclude individual
plaintiffs from continuing to litigate CAEv2 matters against 3M."  *Id.* at 3.  While
the court viewed itself as capable of determining "whether Aearo's automatic stay
applies to the claims against 3M in this MDL," it recognized that the bankruptcy
court "has even broader equitable powers to further extend the stay" and was
"presiding over an evidentiary hearing on that matter at this very moment."  *Id.* at 5-
6.  The MDL court thus "yield[ed]" to the bankruptcy court's "specialized expertise"
and the "full evidentiary record" it had assembled, concluding that the bankruptcy
court "is well-qualified and aptly suited to determine whether 3M is lawfully using

the Bankruptcy Code for a proper restructuring purpose or, instead, using its subsidiaries' bankruptcy petition as bad faith subterfuge to defeat this Court's jurisdiction and relitigate this Court's rulings." *Id.* at 6.

Nevertheless, the court granted Valle's alternative request for "an All Writs Act injunction prohibiting 3M from attacking this Court's prior orders." *Id.* at 7. Citing only *Debtors'* informational brief in the Chapter 11 cases, and nothing said or filed by 3M itself, the court stated that "Aearo and 3M … prefer to resolve CAEv2 claims on the basis of the 'fair and complete evidentiary record' they plan to create in bankruptcy court." *Id.* "From this," the court asserted, "the threat to this Court's previously exercised jurisdiction is undeniable." *Id.* The court thus enjoined "3M from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court." *Id.* The court then imposed additional injunctive relief that Valle's moving papers never requested: "3M also is enjoined from supporting, directly or indirectly, financially or otherwise, any collateral attack on this Court's orders by any other parties in any other forum, including Aearo." *Id.* at 8. The court warned: "If 3M defies this injunction by attempting to relitigate (or supporting relitigation of) these matters in the bankruptcy court, this Court retains jurisdiction to convene contempt proceedings to enforce compliance." *Id.*

3M timely appealed and filed an emergency motion seeking a stay of the MDL court's injunction. MDL.Dkt.3395. On August 25, the MDL court granted that motion in part. MDL.Dkt.3407. It stayed the portion of the injunction enjoining 3M from "supporting, directly or indirectly, financially or otherwise, any collateral attack on this Court's orders by any other parties in any other forum, including Aearo," in recognition that the prohibition "may … interfere with Aearo's ability to act in the bankruptcy court in light of the funding agreement between 3M and Aearo." *Id.* at 2-3. But it declined to stay the portion of the injunction enjoining 3M from "attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in bankruptcy court." *Id.* at 3-5. In so holding, the court stated that "[t]he sole purpose" of the injunction was to prohibit 3M "from collaterally attacking the Court's orders in another jurisdiction." *Id.* at 2. The court maintained its threat to "convene contempt proceedings" if 3M "defies this injunction by attempting to relitigate" issues or orders in the bankruptcy court. MDL.Dkt.3889 at 8.[4]

---

[4] 3M has sought from this Court a stay of the rest of the injunction pending appeal. *See* Case No. 22-12796, 8/29/22 Motion for Stay. Briefing on that request was completed on September 15, and at the time of this brief's filing, that motion remained pending.

### D.     Subsequent Proceedings in the Bankruptcy Court

On August 26, the bankruptcy court ruled on Debtors' motion to stay or enjoin CAEv2-related claims against 3M. At the outset, the bankruptcy court noted that Debtors "are appropriate debtors with cognizable liabilities under the Bankruptcy Code." Adv.Pro.Dkt.143 at 17. The court also addressed the MDL court's belief that "Aearo is a defendant in the [MDL] 'in name only.'" *Id.* at 16. The bankruptcy court "d[id] not question Judge Rodgers' prerogative to reach that conclusion *within the context of the MDL*," but explained that bankruptcy proceedings necessarily provide "a different vantage point." *Id.* The bankruptcy court also noted that no one should—as the MDL court had—assume that "the bankruptcy process necessarily deprives the [plaintiffs] of their Constitutional right to a jury trial." *Id.* at 15. "Even in bankruptcy that right is preserved," the court explained, and, regardless, it "is unlikely that all of the [plaintiffs] will have a jury trial in the MDL." *Id.* at 16.

The bankruptcy court nonetheless denied Debtors' motion. It determined, *inter alia*, that the automatic stay of §362(a)(1) categorically does not apply to claims against non-debtors, *see id.* at 21-22, and that it did not have jurisdiction to enter a §105(a) injunction against those claims because they were not sufficiently "related to" the bankruptcy, *see id.* at 29-35. The bankruptcy court recognized, however, that

14

different courts had reached the opposite conclusion on the same legal issues, and certified its decision for direct review in the Seventh Circuit. Adv.Pro.Dkt.181.[5]

Debtors' Chapter 11 case has continued to progress in the bankruptcy court. On September 6, 2022, Debtors filed a motion to appoint co-mediators to mediate issues related to a Chapter 11 plan and confirmation. Bankr.Dkt.466. Debtors asked that 3M be permitted to participate in the mediation, along with the creditors' committee for all CAEv2 tort claimants. *Id.* at ¶7. The goal of the mediation, Debtors explained, would be "the comprehensive resolution through a chapter 11 plan of [the] more than 230,000 hearing injury claims against the Debtors and/or 3M." *Id.* at ¶6. Additionally, Debtors have indicated an intent to file a motion to initiate estimation proceedings under Section 502(c) of the Bankruptcy Code, through which the bankruptcy court will be able to reach an objective, evidence-based assessment of the total value of the claims asserted against Debtors and 3M. Any such estimation would inform the parties' negotiations over the size of the claims trust that 3M intends to fund as part of Debtors' restructuring plan. Bankr.Dkt.11 ¶52.

---

[5] On September 23, Debtors filed a petition in the Seventh Circuit for authorization to proceed with direct review under 28 U.S.C. §158(d)(2). That petition remains pending as of the filing of this brief.

15

## SUMMARY OF THE ARGUMENT

The MDL court's unprecedented effort to interfere with ongoing bankruptcy proceedings and to suppress criticism of its orders should be reversed. While the All Writs Act authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. §1651(a), this Court has "carefully confined the Act's office to 'extraordinary circumstances,'" *LeCroy*, 975 F.3d at 1197; *see also Wis. Right to Life, Inc. v. Fed. Election Comm'n,* 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers) (All Writs Act "is to be used sparingly and only in the most critical and exigent circumstances"). There are no such "extraordinary circumstances" here. An adequate alternative remedy is readily available because the bankruptcy court is fully equipped to supervise filings directed to it and to apply the rules of preclusion to ensure the MDL court's rulings are not improperly relitigated. The MDL court's attempt to police the preclusive effect of its own rulings and filings directed to a different court would thus be inappropriate in almost any context, but especially so here, where federal law empowers the bankruptcy court to value claims and gives the bankruptcy court exclusive jurisdiction to facilitate a comprehensive reorganization, without interference from other courts.

The injunction also violates 3M's constitutional rights by chilling 3M from arguing in good faith that certain MDL orders do not bind the bankruptcy court, out

16

of fear that the MDL court will disagree and hold 3M in contempt.  And as the MDL court itself has now recognized, the injunction runs afoul of the Bankruptcy Code's automatic stay because it interferes with Debtors' ability to act in the bankruptcy court and discourages 3M from performing its obligations to Debtors under the Funding and Support Services Agreements.  If all of these fatal defects were not enough, the injunction also falls well short of complying with the procedural requirements of the Federal Rules of Civil Procedure.  The court's order includes no factual findings establishing why it was necessary for the court to grant such extraordinary relief, nor does its vague prohibition on "attempting to relitigate the same issues or related issues" or "supporting" such actions provide adequate notice to differentiate what conduct is permissible and what is not.  Rules 52 and 65 require more, and the All Writs Act offers no excuse for doing less.  *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) ("[T]he All Writs Act cannot be used to evade the requirements for preliminary injunctions."); *Fla. Med. Ass'n, Inc. v. U. S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979) (explaining that "the All Writs Act does not free a district court from the restraints of Rule 65").  In short, the injunction is as erroneous as it is unprecedented.  It cannot stand.

## STANDARD OF REVIEW

This Court reviews "the district court's decision to grant an injunction, including an injunction under the All Writs Act," for an abuse of discretion. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004). In so doing, the Court conducts de novo review of the district court's application of law and reviews findings of fact (if any) for clear error. *Id.*; *see also Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002). A district court may thus abuse its discretion by, among other things, "applying the law in an unreasonable or incorrect manner" or "impos[ing] some harm, disadvantage, or restriction upon someone that is unnecessarily broad." *Klay*, 376 F.3d at 1096.

## ARGUMENT

### I.    The Bankruptcy Court Provides an Adequate Remedy at Law.

Because relief under the All Writs Act is "essentially equitable," it is "not generally available to provide alternatives to other, adequate remedies at law." *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1264 (11th Cir. 2021). Here, there is an obvious alternative, adequate remedy to the MDL court's injunction against attempts to improperly "relitigate" its rulings: the application of *res judicata* and collateral estoppel principles by the bankruptcy court, which is fully empowered to police filings directed to it.

"[D]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court." *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011).

"Ordinarily both issue preclusion and claim preclusion are enforced by awaiting a second action in which they are pleaded and proved by the party asserting them." Charles A. Wright & Arthur R. Miller, 18 Fed. Prac. & Proc. Juris. §4405 (3d ed. 2022). Accordingly, "[t]he first court does not get to dictate to other courts the preclusion consequences of its own judgment." *Id.* There is clearly a "second court" here that is more than capable of deciding the preclusive effect of the MDL court's prior rulings and policing any improper bankruptcy court filings—the bankruptcy court. There is simply no warrant for the strong medicine of an All Writs Act injunction precluding *ex ante* any "attempt to relitigate" an issue (or "related issue") from the MDL. *See Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773-74 (11th Cir. 1999) (holding that district court "abused its discretion" in granting All Writs Act injunction "to protect the integrity of its judgment," because movant "has an adequate remedy at law—it can raise the issues[] of res judicata"); *Tolbert v. Monsanto Co.,* 625 F.App'x 982, 985 n.5 (11th Cir. 2015) (noting that "if a party will have opportunity to raise its claims in the concurrent federal proceeding sought to be enjoined, that concurrent proceeding is deemed to provide an adequate remedy at law" precluding All Writs Act relief).[6]

---

[6] Valle's counsel, Keller Postman LLC, is a member of the "Ad Hoc Committee of CAEv2 Earplug Claimants" in the Chapter 11 cases, filed an objection to Debtors' motion to stay the MDL proceedings in the bankruptcy court, and participated extensively in the evidentiary hearing before the bankruptcy court. Accordingly,

That is especially so given that no actual preclusion issue has even been identified. The MDL court simply prohibited 3M from relitigating, or attempting to relitigate, "issues precluded by the principles of res judicata and collateral estoppel." MDL.Dkt.3389 at 7. That bare statement of what generally applicable law dictates— with or without the injunction, all agree that issues cannot be relitigated in a manner "precluded by principles of res judicata and collateral estoppel"—identifies no justification for departing from the baseline rule that preclusion issues are questions for the second court. While reasonable litigants can differ as to the application of preclusion principles, especially in the distinct and specialized context of bankruptcy proceedings, the MDL court identified no special reason why the bankruptcy court could not adequately apply preclusion principles in the normal course, without the MDL court's supervision. As a practical matter, all the injunction does is allow the MDL court to police the arguments made in the bankruptcy court and make its own judgments (which may be contrary to the bankruptcy court's) about the preclusive effect of its own rulings. Indeed, the only circumstances in which the order would have a real-world impact is if the MDL court is offended by a filing that the bankruptcy court deems fair game. In all other circumstances, the ability of the

---

Valle and his counsel have ample opportunity to seek enforcement of the MDL court's rulings in the bankruptcy court through preclusion principles.

bankruptcy court to enforce preclusion principles supplies not only an adequate remedy at law, but a perfect substitute for the MDL's court extraordinary injunction.

The MDL court's effort to preclude anything it deems improper relitigation of or a collateral attack on its orders is particularly problematic given the proper—and properly limited—role of MDL proceedings. The MDL court is not designed to be the final word on all issues in a case, especially as to questions that arise after the pre-trial phase. The statute that authorizes MDL proceedings allows "coordinated or consolidated pretrial proceedings" but also imposes "a duty on the Panel to remand any such action to the original district 'at or before the conclusion of such pretrial proceedings.'" *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (quoting 28 U.S.C. §1407(a)). And when those actions return on remand, the decisions of the MDL court even on pre-trial matters receive respect— but hardly abject deference—under the law-of-the-case doctrine. *See* 15 Fed. Prac. & Proc. §3867 (4th ed.). That approach maintains the efficiencies of the MDL mechanism but has "the virtue of allowing transferor courts to correct serious errors of the transferee court." *In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009) (holding transferor court erred by not vacating transferee court's order on forum non conveniens issue). But under the injunction here, 3M risks contempt from the MDL court if it dares to suggest that a serious error was committed.

Such concerns are not hypothetical. A plaintiff in a Minnesota state court case (which, as a non-diverse state-law action, was not consolidated with the MDL) has invoked the MDL court's rulings and argued that 3M is enjoined from disputing their correctness in the Minnesota litigation. *See* Pl.'s Mem. in Supp. of Mot. in Limine, *In re: 3M Combat Arms Earplug Litig. (Watts)*, No. 27-CV-19-19916, at 17-18 (Hennepin Cty. Dist. Ct. Sept. 23, 2022) (invoking injunction and contending that "[a]ny effort to dispute" MDL court's purported ruling "that 3M is the solely liable defendant … would be a 'collateral attack' on the MDL's orders in another forum and is therefore barred by the MDL injunction").

To be sure, the All Writs Act has occasionally been invoked to enjoin relitigation *ex ante*, notwithstanding the availability of issue or claim preclusion in the second court. But that strong medicine is reserved for truly exceptional circumstances where there is no basis for *any* litigation in the second court. Here, however, the MDL court begrudgingly recognized that proceedings before the bankruptcy court would proceed, leaving it without justification for duplicatively policing filings directed to the bankruptcy court.

The very few extraordinary circumstances where this Court has upheld an All Writs Act injunction underscore why such an order is improper here. For example, in *Riccard v. Prudential Insurance Co.*, 307 F.3d 1277 (11th Cir. 2002), the enjoined party had a "near-obsession regarding his former employer" and engaged in "abusive

22

and vexatious litigation" including "four lawsuits" plus multiple complaints in "non-judicial forums." *Id.* at 1282, 1295 & n.15, 1298. In *Harrelson v. United States*, 613 F.2d 114 (5th Cir. 1980), the Court expressly recognized that All Writs Act injunctions "are generally unnecessary, as res judicata and collateral estoppel are usually more than adequate to protect defendants against repetitious litigation." *Id.* at 116. The Court nevertheless affirmed an All Writs Act injunction against a litigant who had "forced various defendants in and out of court for almost five years" and thus "abus[ed] the court system by harassing [his] opponents." *Id.* And in *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986), the Court cited the All Writs Act in recognizing a federal court's ability to enjoin a party who had "engaged in ridiculously extensive litigation," including "176 cases" in a single court replete with "long and rambling" pleadings and "frivolous" claims. *Id.* at 1070, 1073-74 & n.10.

Needless to say, none of these circumstances, or anything close to them, are present here. The MDL court did not find that 3M has a pattern of litigating in bad faith, nor did the court identify any obviously precluded issues that 3M should be preemptively barred from revisiting. In fact, it did not identify *any* issue that 3M had even "attempt[ed] to relitigate." The MDL court recognized that bankruptcy proceedings would ensue in bankruptcy court but never explained why Valle does not have an adequate alternative remedy in that forum. No such explanation exists. Here, ordinary preclusion principles are "more than adequate to protect" the MDL

23

court's rulings in the bankruptcy court or in any other forum. *Harrelson*, 613 F.2d at 116. For this reason alone, the injunction should be vacated.

## II.    The Injunction Invades the Bankruptcy Court's Exclusive Jurisdiction.

The MDL court's injunction against relitigation of precluded issues is especially inappropriate because it is directed against a bankruptcy proceeding specifically governed by the Bankruptcy Code. A federal court's ability to grant relief under the All Writs Act is "limited by the Act's supplemental character." *Rohe*, 988 F.3d at 1264-65. The Act is merely a "residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id*.

Here, "the particular issue at hand" is the extent to which the MDL court's prior rulings in the MDL will control in the bankruptcy court's administration of Debtors' Chapter 11 cases. Federal law gives a clear answer to that question: the bankruptcy court, and only the bankruptcy court, must decide. Under 28 U.S.C. §157(a) and §1334(e), a bankruptcy court in which a Chapter 11 case is pending has "exclusive jurisdiction" over "all the property, wherever located, of the debtor." The principle that deciding the preclusive effect of prior litigation is "usually the bailiwick of the *second* court," *Smith*, 564 U.S. at 307, is thus especially apposite in a Chapter 11 proceeding, given the bankruptcy court's exclusive jurisdiction to

24

preserve the property of a debtor's estate and facilitate reorganizations. *See In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985) ("[T]o whatever extent a conflict may arise between the authority of the Bankruptcy Court to administer this complex reorganization and the authority of the District Court to administer consolidated pretrial proceedings, the equities favor maintenance of the unfettered authority of the Bankruptcy Court."). Moreover, to the extent there is a concern that the bankruptcy process is being manipulated to improperly attack other proceedings or otherwise, the bankruptcy court is statutorily authorized to police bad-faith filings or other efforts to misuse the Bankruptcy Code, *see, e.g.*, 11 U.S.C. §1112(b), and is armed with its own contempt power, *see In re McLean*, 794 F.3d 1313, 1319 (11th Cir. 2015); *see also Rohe*, 988 F.3d at 1267-68 (vacating All Writs Act injunction because "the bankruptcy court … is well-equipped to protect the proceeding's integrity").

For these reasons, district court efforts to enjoin ongoing proceedings before the specialized bankruptcy courts—with their exclusive jurisdiction, intimate familiarity with the Code, and extensive experience with the full range of bankruptcies—are virtually unheard of. In the rare instances when courts have invoked the All Writs Act's general and residual provisions to constrain actions before the specialized bankruptcy courts, those injunctions have not survived appeal. *See, e.g.*, *Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295, 305 (4th Cir. 2001)

25

(rejecting effort to enjoin bankruptcy filing as prohibited by automatic stay); *In re Baldwin-United Corp.*, 765 F.2d at 348 (rejecting effort to prohibit asking bankruptcy court whether automatic stay applies).[7]  While an All Writs Act injunction directed at "another federal district court" is itself a "rara[] aves," *Negrete v. Allianz Life Ins. Co. of N.A.*, 523 F.3d 1091, 1099 (9th Cir. 2008), valid All Writs Act relief directed toward Chapter 11 proceedings is essentially the null set.

By issuing its injunction, the MDL court injected itself into the bankruptcy proceedings and arrogated to itself the power to determine whether any statement made in the bankruptcy court constitutes an improper "attempt[] to relitigate" or a "collateral attack" on the MDL court's prior rulings.  But that power lies exclusively with the bankruptcy court in connection with its exclusive jurisdiction over Debtors' estate and their efforts to reorganize.  The bankruptcy court is perfectly capable of differentiating an improper collateral attack from a valid effort to dispute a claim. Neither 3M nor Debtors (whose own filings the MDL court used against 3M) should have to litigate in the bankruptcy court under the threat of contempt from the MDL

---

[7] In multiple rounds of briefing in this case, Valle has managed to identify only one (unappealed) All Writs Act injunction directed toward Chapter 11 proceedings. *See Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 140 B.R. 969 (N.D. Ill. 1992).  But there, the bankruptcy court first tried to enjoin a plaintiff from arguing in district court about the reach of the automatic stay, and the district court used the All Writs Act to block that order to preserve its ability to decide the scope of its own jurisdiction.

court if that court takes issue with the characterization of one of its rulings.  Allowing the injunction to stand would "set[] courts in different districts against one another" and "completely frustrate the scheme of courts created by Congress."  *Gilchrist*, 262 F.3d at 305.

The injunction's intrusion on the jurisdiction of the bankruptcy court cannot be explained away on the ground that it extends only to 3M, a non-debtor.  First, 3M has its own statutory right to participate in the bankruptcy proceedings.  The Bankruptcy Code unqualifiedly promises that *any* party "may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. §1109(b); *see also In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) ("[A]nyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains"); 7 *Collier on Bankruptcy* §1109.04 (16th ed. 2022) ("Section 1109(b) unambiguously provides that any party in interest may raise and may appear and be heard on *any* issue in a chapter 11 case.").  By enjoining 3M, under threat of contempt, from taking any action that the MDL court may perceive as "attempting to relitigate" decided issues or "supporting" Debtors in making "any collateral attack on [the MDL] Court's orders," MDL.Dkt.3389 at 7-8, the injunction improperly chills 3M from asserting positions in the bankruptcy court on issues on which it may disagree with

the MDL court's rulings, thus effectively prohibiting 3M from participating in large swaths of the restructuring proceedings.

Second, and more fundamentally, the injunction's effect is not limited to 3M: It broadly prohibits 3M from "supporting, directly or indirectly, financially or otherwise, any collateral attack on this Court's orders by any other parties in any other forum, including Aearo." *Id*. at 8. But it should be clear beyond cavil that Debtors' representations to the bankruptcy court are within that court's exclusive jurisdiction, and that the automatic stay prohibits any judicial effort to constrain them. It is undisputed that 3M has a contractual obligation under the Funding Agreement to financially support Debtors during the bankruptcy proceedings. *See* Bankr.Dkt.11 at ¶12. Anything Debtors (including Aearo) do or say in the bankruptcy court, therefore, is at least arguably "support[ed] … financially" by 3M and covered by the MDL court's order. Accordingly, 3M would be in violation of the injunction if Debtors did anything that could be construed as "collaterally attacking" the MDL court's prior rulings. The injunction thus chills 3M from continuing to fund Debtors' bankruptcy proceedings, undermining Debtors' ability to reorganize—the very purpose of Chapter 11 in the first place. Indeed, both Valle and the MDL court have already faulted 3M for statements made by Debtors, and not 3M. *See* pp.9-12, *supra*.

The MDL court itself correctly recognized that it could not grant Valle the principal relief he requested—enjoining 3M from attempting to seek the protection of the automatic stay—because that would improperly interfere with the bankruptcy court's jurisdiction. But the relief the court granted is in many respects worse. It poses the same intrusion into the bankruptcy court's specialized expertise, while promising greater entanglement as the MDL court asserts the ongoing power, backed by contempt, to scrutinize 3M's (and Debtors') statements in the bankruptcy court to decide whether they run afoul of the MDL court's own conception of impermissible collateral attacks, even if the bankruptcy court deems the filings appropriate and helpful. That dynamic is completely untenable and far more problematic than a typical All Writs Act injunction that categorically forbids litigation in another forum. The MDL court's order simultaneously interferes with the bankruptcy court's jurisdiction and attempts to improperly insulate the MDL court from what it views as unfair criticism. That sweeping injunction is thus "unnecessarily broad," *Klay*, 376 F.3d at 1096, and an abuse of discretion.

## III.    The Injunction Violates 3M's Constitutional Rights.

By broadly prohibiting 3M from taking any action in the bankruptcy court that could be construed as "attempting to relitigate" any of the thousands of issues decided in the MDL or "supporting" any "collateral attack" on the MDL court's hundreds of orders, the injunction not only intrudes on the bankruptcy court's

exclusive jurisdiction and infringes on 3M's statutory right to "appear and be heard on any issue," 11 U.S.C. §1109(b), but plainly violates 3M's constitutional rights to participate in the Chapter 11 proceedings. 3M intends to participate in any upcoming mediation and estimation proceedings in the bankruptcy court (among other things); in so doing, 3M may very well wish to argue, for example, that certain erroneous rulings by the MDL court have led plaintiffs to overestimate 3M's total liability, and that those rulings will be reversed on appeal and do not bind other courts in the meantime. The MDL court's injunction would penalize 3M for taking that position, even if 3M makes the argument in good faith, and even if the bankruptcy court agrees with 3M. The looming presence of the MDL court threatening contempt if 3M dares to contest or criticize any of the court's decisions over the past three-and-a-half years of litigation is simply antithetical to constitutional principles.[8]

First, the MDL court's order violates 3M's due process rights. An All Writs Act injunction may be issued only in a manner "consistent with constitutional guarantees of due process of law and access to the courts." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Just as a bankruptcy court would

---

[8] Indeed, it would seem that so long as the injunction is in place, the prospect of contempt proceedings may arise not only when the MDL court deems an argument made by 3M (or the Debtors) to be improper, but also whenever any one of the hundreds of thousands of plaintiffs in the MDL decides such an argument has been made. That possibility amplifies the chilling effects of the injunction.

violate due process by refusing to allow an interested party to participate and make arguments necessary to protect its rights, the injunction violates 3M's due process rights by prohibiting it from participating in or "supporting" Debtors' bankruptcy in ways 3M may deem necessary to protect its rights.

Second, by limiting the arguments that 3M can make in the bankruptcy court, the injunction violates 3M's First Amendment rights to free speech and to petition. Injunctions involving speech are subject to "rigorous" constitutional scrutiny. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). They must satisfy "general principles" of the First Amendment—including strict limits on content-based prior restraints—as well as "the general rule, quite apart from First Amendment considerations," that an injunction should be "no broader than necessary to achieve its desired goals." *Id.*; *see also United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 266 F.3d 45, 51 (2d Cir. 2001) (vacating portion of injunction that "risk[ed] interference with appellants' First Amendment right of petition").

The injunction here cannot survive such "rigorous" scrutiny. It operates as a textbook prior restraint—a "judicial order[] forbidding certain communications … in advance of the time that such communications are to occur," *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis omitted)—that prospectively constrains 3M's ability to argue in the bankruptcy court and to advance legal contentions that

31

it may deem necessary to protect its rights. Prior restraints are presumptively unconstitutional, *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971), and the injunction here cannot overcome that presumption. The injunction is also as content-based, and indeed viewpoint-based, as it gets. If 3M wants to meekly accept the MDL court's rulings, it has nothing to fear. But if 3M (or Debtors supported by 3M) wants to contend, for example, that those rulings are flawed or that they overstate the co-defendants' liability, it faces the specter of contempt.

Simply put, it is hard to imagine an injunction more antithetical to free speech and the right to petition than one in which the issuing judge prospectively prohibits a citizen from speaking negatively about that judge's orders. The bankruptcy court has its own power to police the pleadings before it, to scrutinize the financial arrangements between debtors and non-debtors, to enforce principles of collateral estoppel, and to punish contemptuous conduct. It should be able to judge for itself the validity of any arguments raised by 3M or Debtors without the chilling effect of the MDL court's order. By placing not just a thumb, but the heavy hand of contempt, on the scales to deter criticism of the MDL court's orders, the injunction is incompatible with the Constitution.

## IV. The Injunction Violates the Automatic Stay.

The injunction also violates the automatic stay already in place vis-à-vis Debtors because it encourages 3M to breach its contractual duties to Debtors under

the Funding and Support Services Agreements, which are critical pieces of bankruptcy estate property.  The filing of a Chapter 11 petition automatically stays, *inter alia*, any subsequent judicial "action or proceeding against the debtor," as well as "any act to obtain possession of property of the estate … or to exercise control over property of the estate."  11 U.S.C. §362(a)(1), (3).  This aspect of the automatic stay reinforces the bankruptcy court's exclusive jurisdiction over "all the property, wherever located, of the debtor," 28 U.S.C. §1334(e), and it "clearly encompasses and protects a debtor's executory contracts, which are property of the debtor's estate under 11 U.S.C. §541," *In re Windstream Holdings, Inc.*, 627 B.R. 32, 43 (Bankr. S.D.N.Y. 2021).  "As property of the estate, the debtor's interests in such contracts … are protected against interference that would have the effect of removing or hindering the debtor's rights in violation of section 362(a)(3)."  3 *Collier on Bankruptcy* ¶362.03[5][a].

The Funding and Support Services Agreements between Debtors and 3M are plainly executory contracts that are property of Debtors' estates, *see Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S.Ct. 1652, 1657 (2019) (defining "executory contract" as "a contract that neither party has finished performing"), and the injunction just as plainly interferes with that property.  As noted, the injunction chills 3M from complying with the Funding and Support Services Agreements because any position Debtors take in the bankruptcy proceedings that could be

33

construed as a "collateral attack" on the MDL court's orders would necessarily constitute 3M's "supporting … financially" Debtors' actions, thus exposing 3M to contempt.  By creating every incentive for 3M not to fund or support Debtors' Chapter 11 proceedings, the injunction diminishes the value of the Funding and Support Services Agreements to Debtors, which unquestionably violates the automatic stay's preservation of the *full* value of *all* of Debtors' property as of the Chapter 11 petition dates, including the Agreements.

The MDL court belatedly acknowledged that the injunction violated the automatic stay insofar as it "interfere[d] with Aearo's ability to act in the bankruptcy court in light of the funding agreement between 3M and Aearo," and accordingly it stayed the portion of the injunction forbidding 3M from "supporting, directly or indirectly, financially or otherwise, any collateral attack on this Court's orders" by Debtors.  MDL.Dkt.3407 at 2-3.  But the injunction also violates the automatic stay insofar as it prevents 3M from fully participating in the bankruptcy.  The automatic stay "is intended to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  *SEC v. Brennan*, 230 F.3d 65, 75 (2d Cir. 2000).  It thus applies, *a fortiori*, to the injunction's direct interference with the ongoing bankruptcy proceedings.  While the MDL court thought it could avoid the automatic stay by limiting its order to 3M, a non-debtor,

34

that effort is belied by the MDL court's and Valle's repeated use of Debtors' statements in the bankruptcy court against 3M in the MDL court, *see* pp.9-12, *supra*, and the impact upon the Chapter 11 proceedings that would result if 3M is chilled from fully participating under threat of contempt.

Because the injunction violates the automatic stay, it is "void and without effect." *Roberts v. Comm'r*, 175 F.3d 889, 892 n.3 (11th Cir. 1999). Court decisions that violate an automatic stay are void *ab initio*. *Id.*; *see also Const. Bank v. Tubbs*, 68 F.3d 685, 692-93 (3d Cir. 1995). Although bankruptcy courts often determine whether an automatic stay violation has occurred, a court of appeals also has the authority (and obligation) to set aside a lower court's decision that violates an automatic stay. In *Gilchrist v. General Electric Capital Corporation*, for example, a group of creditors appealed a district court's All Writs Act injunction prohibiting them from filing an involuntary bankruptcy petition against the debtor, which was in a receivership proceeding before the district court. After the creditors filed a bankruptcy petition anyway, the Fourth Circuit reversed the district court and held it could not enforce the injunction because the automatic stay applied to the receivership action. It was immaterial that the petition's filing violated the district court's order; the petition triggered the automatic stay and granted the bankruptcy court exclusive jurisdiction over the debtor's estate. *See* 262 F.3d at 303; *see also Brennan*, 230 F.3d at 75-76 (vacating district court order entered "in violation of the

35

automatic stay"). Here, too, the MDL court's injunction interfering with Debtors' property and reorganization efforts violates the automatic stay, is void *ab initio*, and must be set aside.

## V.    The Injunction Violates Federal Rules of Civil Procedure 52 and 65.

The injunction is also procedurally invalid in ways that magnify its deeper substantive defects. The Federal Rules impose two distinct requirements on injunctive relief. First, Rule 52(a)(2) requires a court to "state the findings and conclusions that support its action." Second, Rule 65(d)(1) requires "[e]very order granting an injunction" to "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail … the act or acts restrained or required." These requirements apply fully to All Writs Act injunctions. "[T]he All Writs Act cannot be used to evade the requirements for preliminary injunctions," *Schiavo*, 403 F.3d at 1229, and it "'does not excuse a court from making' injunction- or stay-related … findings." *LeCroy*, 975 F.3d at 1197 (quoting *Dunn v. McNabb*, 138 S.Ct. 369, 369 (2017)).

The injunction fails to comply with either rule. As for Rule 52, the order does not contain *any* factual findings or conclusions of law supporting the relief granted— which is no surprise given that the MDL court did not even hold an evidentiary hearing. The court certainly did not find that 3M has tried to "relitigate" previously decided issues. And it made no findings about how any such efforts would threaten

36

its jurisdiction over the MDL or establish that an All Writs Act injunction is "necessary or appropriate."  28 U.S.C. §1651(a); *see Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999) (holding that All Writs Act injunction was "unjustifiable either as 'necessary' or as 'appropriate'"); *Brow v. Farrelly*, 994 F.2d 1027, 1038-39 (3d Cir. 1993) (vacating All Writs Act injunction where there was "no evidence supporting any determination that [enjoined party] continually has attempted to relitigate adjudicated claims").

This lack of specific findings allowed the MDL court to gloss over distinctions between 3M and Debtors—for example, by pointing to a brief filed by *Debtors* (not 3M) in the bankruptcy court as evidence of the "undeniable" threat to "this Court's previously exercised jurisdiction."  MDL.Dkt.3389 at 7.  Not only is that precisely the type of generic assertion this Court has deemed insufficient under Rule 52, *see, e.g.*, *Wicker v. Beria*, 859 F.App'x 354, 356 (11th Cir. 2021) (vacating injunction where court stated that agreement was "'legally enforceable'" but "identified no facts to support that finding"), but the court's conflation of 3M and Debtors—who are indisputably protected by the automatic stay—underscores the impropriety of the injunction.

The MDL court's grant of a partial stay pending appeal puts this fatal error into sharper relief.  The court stayed the portion of its injunction prohibiting 3M from "supporting … any collateral attack" on the MDL court's orders out of an

apparent belated recognition that this aspect of the injunction could improperly interfere with Debtors' filings in bankruptcy court. *See* MDL.Dkt.3407 at 2 (explaining that "the Court's intent was not to impact Aearo or interfere with its ability to act in bankruptcy court"). But the only findings that even arguably support the injunction in its entirety are statements made by Debtors, and not 3M. The unstayed provision of the injunction against 3M specifically is thus wholly unsupported and entirely inconsistent with Rule 52.

The injunction likewise violates Rule 65, as its vagueness makes it impossible for either 3M or this Court to ascertain "precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *see also Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998). An injunction fails this test if it leaves its key terms undefined. *See, e.g.*, *Brown v. Ala. DOT*, 597 F.3d 1160, 1185 (11th Cir. 2010); *Louisiana v. Biden*, 45 F.4th 841, 845-46 (5th Cir. 2022); *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998). Here, the injunction neither "state[s] its terms specifically" nor describes the conduct restrained in the "reasonable detail" necessary to satisfy Rule 65. Fed. R. Civ. P. 65(d)(1). For example, the injunction prohibits 3M from "attempting to relitigate the same issues or related issues" previously decided by the MDL court or "supporting … any collateral attack on this Court's orders." MDL.Dkt.3389 at 8. But the MDL court did not elaborate on what it would consider "attempting to

38

relitigate" or what would constitute "the same or related issues." Nor did the court explain what it would deem a "collateral attack" or what actions by 3M would qualify as "support[ing]" such an attack. As a result, 3M is left to guess what conduct (whether its own or Debtors') might cross the line. The injunction's lack of specificity and failure to define its key terms creates the very "uncertainty and confusion" that Rule 65 was designed to prevent. *Schmidt*, 414 U.S. at 476; *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 444 (1974) (explaining that "one basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits"). Moreover, given that the injunction addresses presumptively protected First Amendment activity, this vagueness not only is a Rule 65 violation but magnifies the constitutional problems with the order.[9]

## VI. Equitable Considerations Do Not Support The Injunction.

Finally, the equities weigh strongly against the "essentially equitable" relief of an All Writs Act injunction. *Rohe*, 988 F.3d at 1264; *see also Clinton*, 526 U.S.

---

[9] 3M did not even have any notice that the MDL court would prohibit 3M from "supporting" any other party's "collateral attack[s]"—relief that Valle never requested. Due process prohibits courts from issuing a substantially different injunction than the one about which notice was provided. *See, e.g.*, *Corp. Synergies Grp., LLC v. Andrews*, 775 F.App'x 54, 60 (3d Cir. 2019); *W. Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 109 (5th Cir. 1994).

39

at 538. The injury to 3M from the MDL court's broad injunction is substantial. By threatening the company with contempt for making good-faith arguments which the MDL court deems an "attempt to relitigate" a previously decided issue (or "related issue"), the injunction chills 3M's exercise of its statutory and constitutional rights to participate in the bankruptcy proceeding. Those harms are not only significant, but irreparable. The deprivation of constitutional rights, especially First Amendment rights, "constitutes an irreparable injury." *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1231 (11th Cir. 2022); *see also Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) ("[T]he loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

The injunction also puts 3M between a rock and a hard place, magnifying the gravity of harm. 3M is contractually obligated under the Funding Agreement to finance Debtors' Chapter 11 proceedings, and contractually obligated under the Support Services Agreement to provide certain services, including legal and accounting, to Debtors. Thus, any position Debtors take in the bankruptcy is at least arguably "support[ed]" by 3M, including "financially." Given the injunction's expansive (if vague) view of what constitutes impermissible "relitigation" or an improper "collateral attack" on the MDL court's rulings, there is a significant likelihood that the Debtors will take some action in the bankruptcy court that the

MDL court views as falling within the injunction's scope. Indeed, the MDL court has already made clear that it views the entire bankruptcy as an attempt to "upend th[e] statutorily authorized MDL," MDL.Dkt.3389, at 1, and it has already used Debtors' filings against 3M. Thus, every document Debtors file in bankruptcy court risks a contempt finding against 3M.

In stark contrast, Valle has never articulated any injury, much less irreparable injury, that he would suffer without an injunction. The only potential injury Valle has ever described is a risk that, absent the injunction, issues from the MDL could be improperly relitigated in the bankruptcy. But neither Valle nor the MDL court ever actually identified any instance where 3M (or any other party) has sought to improperly "relitigate" or "collaterally attack" an MDL ruling. And if 3M (or any other party) sought to launch an improper collateral attack on the MDL court's prior rulings—as opposed to merely criticizing them or arguing that they provide an inaccurate basis for valuing claims—the bankruptcy court is well-positioned to police matters before it.[10]

---

[10] The four-factor test for a "traditional injunction" does not typically apply to injunctions under the All Writs Act. *Klay*, 376 F.3d at 1100-01. But because an All Writs Act injunction is nonetheless "essentially equitable," *Rohe*, 988 F.3d at 1264, Valle's inability to demonstrate any injury (much less irreparable injury), combined with the injury to 3M, underscores that the injunction here was wholly unwarranted.

\*      \*      \*

In sum, the MDL court's sweeping injunction ignores an adequate remedy at law, invades the bankruptcy court's exclusive jurisdiction, chills 3M's exercise of its statutory and First Amendment rights, violates the automatic stay, falls far short of what the Federal Rules require, and is contrary to equitable principles.  The MDL court, recognizing part of the problem, partially stayed its own injunction pending appeal; because the whole is worse than the sum of its parts, this Court should now vacate the injunction in its entirety.

## CONCLUSION

For the foregoing reasons, this Court should reverse the order of the district court and vacate the injunction.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendant-Appellant
3M Company*

October 11, 2022

**CERTIFICATE OF COMPLIANCE**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 10,115 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

October 11, 2022

s/Paul D. Clement
Paul D. Clement

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement