Record No. 22-12796-A

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### 3M COMPANY,

*Defendant-Appellant*

v.

### RICHARD VALLE,

*Plaintiff-Appellee*

On Appeal from the United States District Court
for the Northern District of Florida

MDL No. 19-02885

## PLAINTIFF-APPELLEE'S RESPONSE BRIEF

Noah Heinz
KELLER POSTMAN LLC
1100 Vermont Ave.
NW Fl. 12
Washington, DC 20005

Ashley Keller
  *Counsel of Record*
KELLER POSTMAN LLC
2800 Ponce De Leon Blvd., Suite 1100
Coral Gables, FL 33134
ack@kellerpostman.com
(312) 741-5222

November 2, 2022          *Counsel for Plaintiff-Appellee Valle*

## CERTIFICATE OF INTERESTED PERSONS

Under Eleventh Circuit Rule 26.1-1, counsel for Plaintiff-Appellee Valle hereby certifies that the Certificate filed by Defendant-Appellant is complete and correct, with the addition of the following:

- Ashley Barriere – counsel for Plaintiff-Appellee Valle and MDL Plaintiffs
- Nicole Berg – counsel for Plaintiff-Appellee Valle and MDL Plaintiffs
- Frank Dylewski –  counsel for Plaintiff-Appellee Valle and MDL Plaintiffs
- Noah Heinz – counsel for Plaintiff-Appellee Valle

Dated:  November 2, 2022            Respectfully submitted,

                            /s/ *Ashley Keller*
                               Ashley Keller
                            *Counsel for Plaintiff-Appellee Valle*

C-1

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Valle respectfully requests oral argument. This appeal involves weighty questions on what tools courts have against dissatisfied litigants who game jurisdictional rules to relitigate settled orders. Oral argument will assist the Court in parsing intersecting laws affecting multidistrict litigation, bankruptcy, and antisuit injunctions.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS........................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION ..................................................................................1

STATEMENT OF THE CASE...................................................................4

    A.    3M Masterminds a Tactical Bankruptcy Filing. ...................................5

    B.    Valle Moves for an Injunction to Stop 3M's Relitigation Tactics......10

    C.    The Bankruptcy Court Rejects 3M's Arguments................................11

SUMMARY OF THE ARGUMENT ........................................................12

ARGUMENT ......................................................................................14

I.    Judge Rodgers Properly Issued the Antisuit Injunction. ...............................15

    A.    Antisuit Injunctions Are Well-Established Remedies. .......................15

        1.    The legal standard for antisuit injunctions against federal courts is broad and highly discretionary. ..................................17

        2.    The legal standard for antisuit injunctions against state courts is stricter, but still commonly met. ...........................................18

    B.    The Injunction Here Was in Aid of the MDL Court's Jurisdiction. ...22

II.    3M's General Arguments Against Antisuit Injunctions Do not Demonstrate an Abuse of Discretion.............................................................24

    A.    Antisuit Injunction Cases Uniformly Do Not Require a Movant to Demonstrate an Inability to Raise Res Judicata in the Second Court.24

    B.    Antisuit Injunctions Commonly Apply Only to Certain Facts or Issues. ...................................................................................30

    C.    No Right to Relitigate Lurks in the Constitution's Penumbras. .........32

III.    That the Enjoined Party Is Proceeding as a Non-Debtor in Bankruptcy Court Makes No Difference. ..........................................................34

    A.    Bankruptcy Courts Are not Uniquely Immune from Antisuit Injunctions. ....................................................................34

    B.    The Bankruptcy Court Lacks Exclusive Jurisdiction over 3M. ..........36

    C.    The Injunction Is Consistent with the Automatic Stay. ......................39

IV.    The Injunction Is Otherwise Proper. ...............................................40

CONCLUSION ...................................................................44

CERTIFICATE OF COMPLIANCE ........................................45

CERTIFICATE OF SERVICE ................................................46

# TABLE OF AUTHORITIES*

**Cases**                                                                      **Page(s)**

*Access Now, Inc. v. Sw. Airlines Co.*,
   385 F.3d 1324 (11th Cir. 2004) ........................................................32

*Adams v. United States*,
   317 U.S. 269 (1942)........................................................................16

*Alabama v. U.S. Army Corps of Engineers*,
   424 F.3d 1117 (11th Cir. 2005) ........................................................27

*Alley v. U.S. Dep't of Health & Hum. Servs.*,
   590 F.3d 1195 (11th Cir. 2009) ........................................................38

*Atlantic Coastline R.R. v. B'hood of Locomotive Eng'rs*,
   398 U.S. 281 (1970)........................................................................20

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.),*
   770 F.2d 328 (2d Cir. 1985)....................................... 21, 23, 25, 37, 41

*In re Baldwin-United Corp. Litig.*,
   765 F.2d 343 (2d Cir. 1985)..............................................................36

*Battle v. Liberty Nat'l Life Ins. Co.*,
   877 F.2d 877 (11th Cir. 1989) ............................................ 20, 21, 33, 37

*In re Bayshore Ford Trucks Sales, Inc.*,
   471 F.3d 1233 (11th Cir. 2006) ........................................................22

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) ........................................................17

*Burr & Forman v. Blair*,
   470 F.3d 1019 (11th Cir. 2006) ............................................. 16, 18, 19

*Chick Kam Choo v. Exxon Corp.*,
   486 U.S. 140 (1988)........................................................................31

---

\* Authorities upon which Mr. Valle principally relies are marked with asterisks.

iv

*In re Corrugated Container Antitrust Litig.,
    659 F.2d 1332 (5th Cir. 1981) ....................................................................... 19, 20

*In re Diet Drugs,
    282 F.3d 220 (3d Cir. 2002).................................................................... 19, 21, 31

Feltner v. Title Search Co.,
    283 F.3d 838 (7th Cir. 2002) ................................................................................31

In re Ford Motor Co.,
    591 F.3d 406 (5th Cir. 2009) ................................................................................28

ITT Comm. Devel. Corp. v. Barton,
    569 F.2d 1351 (5th Cir. 1978) ..............................................................................31

Helene Curtis Industries, Inc. v. Sales Affiliates, Inc.,
    247 F.2d 940 (2d Cir. 1957)..................................................................................18

Henry Schein, Inc. v. Archer & White Sales, Inc.,
    139 S. Ct. 524 (2019)............................................................................................27

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,
    552 F.2d 601 (5th Cir. 1977) ............................................... 13, 17, 18, 25, 27, 38

Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,
    342 U.S. 180 (1952)..............................................................................................17

Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,
    441 F.2d 631 (5th Cir. 1971) ...............................................................................31

*Klay v. United Healthgroup, Inc.,
    376 F.3d 1092 (11th Cir. 2004) ................................................. 13, 16, 27, 31, 41

Lorillard Tobacco Co. v. Chester, Willcox & Saxbe,
    589 F.3d 835 (6th Cir. 2009) ...............................................................................22

Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.,
    140 B.R. 969 (N.D. Ill. 1992) ..............................................................................35

*In re March,
    988 F.2d 498 (4th Cir. 1993) ...............................................................................35

*Midrash Sephardi, Inc. v. Town of Surfside*,
    366 F.3d 1214 (11th Cir. 2004) ............................................................32

*New York Life Ins. Co. v. Deshotel*,
    142 F.3d 873 (5th Cir. 1998) ....................................................... 23, 39

*Newby v. Enron Corp.*,
    338 F.3d 467 (5th Cir. 2003) ..............................................................31

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)............................................................................29

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
    314 F.3d 99 (3d Cir. 2002)..................................................................22

*Redac Project 6426, Inc. v. Allstate Ins. Co.*,
    412 F.2d 1043 (2d Cir. 1969)...............................................................25

*Riccard v. Prudential Ins. Co.*,
    307 F.3d 1277 (11th Cir. 2002) ..........................................................33

*Rohe v. Wells Fargo Bank, N.A.*,
    988 F.3d 1256 (11th Cir. 2021) ..........................................................26

*Scardelletti v. Debarr*,
    265 F.3d 195 (4th Cir. 2001) ..............................................................32

*Scardelletti v. Rinckwitz*,
    68 F. App'x 472 (4th Cir. 2003) ................................................. 33, 42

*Schiavo ex rel. Schindler v. Schiavo*,
    403 F.3d 1223 (11th Cir. 2005) ..........................................................40

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
    764 F.3d 1327 (11th Cir. 2014) ..........................................................31

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011)............................................................................26

*Smith v. S.E.C.*,
    129 F.3d 356 (6th Cir. 1997) ..............................................................19

vi

*Tolbert v. Monsanto Co.*,
  625 F. App'x 982 (11th Cir. 2015) ....................................................27

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*,
  907 F.2d 277 (2d Cir. 1990) ...............................................................37

*\*United States v. New York Tel. Co.*,
  434 U.S. 159 (1977) ..................................................................... 12, 16

*Weaver v. Fla. Power & Light Co.*,
  172 F.3d 771 (11th Cir. 1999) ...........................................................26

*Wesch v. Folsom*,
  6 F.3d 1465 (11th Cir. 1993) ....................................................... 21, 37

*Winkler v. Eli Lilly & Co.*,
  101 F.3d 1196 (7th Cir. 1996) ...........................................................28

*\*Wood v. Santa Barbara Chamber of Com., Inc.*,
  705 F.2d 1515 (9th Cir. 1983) ................................................ 25, 40, 41

**Statutes**

11 U.S.C. § 105(a) ..............................................................................7

11 U.S.C. § 362 .............................................................................7, 40

28 U.S.C. § 41 ..................................................................................34

28 U.S.C. § 1295 ..............................................................................34

28 U.S.C. § 1407 ..............................................................................34

*28 U.S.C. § 1651(a) .........................................................................16

28 U.S.C. § 2283 ..............................................................................17

**Rules**

Fed. R. Civ. P. 11 .............................................................................34

**Other Authorities**

3 Newberg and Rubenstein on Class Actions § 10:42 (6th ed.) ....................... 15, 17

18 Fed. Prac. & Proc. Juris. § 4405.1 (3d ed.) ................................................ 21, 38

*The Anti-Injunction Act and the Problem of Federal-State Jurisdictional Overlap*,
   92 Tex. L. Rev. 1 (2013) ..................................................................................16

# INTRODUCTION

The injunction at issue in this appeal is a narrow remedy to 3M's attempt to hijack the largest multidistrict litigation in American history. The MDL court below has issued "hundreds of orders" deciding "thousands of issues." 3M Br. at 29. Those orders affect more than 100,000 veterans with hearing loss and other injuries from 3M's earplugs, as well as the Defendants—3M and its wholly owned subsidiaries. The litigation has not gone well for 3M, as it has lost trial after trial, with hundreds more looming. 3M has complained about many of those orders both publicly and on appeal in this Court. But those fronts were not enough. And so, its litigation counsel concocted a plan to have small, wholly owned subsidiaries[1] indemnify 3M (a Fortune 500 company) for *all* of the billions of dollars of liability remaining. The subsidiaries of course immediately became insolvent. Next, having thrown its corporate victims into the deep end, 3M proceeded to throw them a lifeline, guaranteeing through a funding agreement that it would cover the entire cost of the indemnity. Then, 3M directed the subsidiaries to file for bankruptcy, automatically halting all litigation involving them, and the now-*debtors* moved for the bankruptcy court to issue a third-party injunction to prevent litigation against 3M itself.

---

[1] The subsidiaries are Aearo Technologies LLC; 3M Occupational Safety LLC; Aearo Holding LLC; Aearo Intermediate LLC; Aearo LLC; and Aearo Technologies LLC (the "Aearo Debtors").

1

This shell game has just one purpose: to forum-shop away from the MDL, where 3M was losing, toward another venue, where it hoped to win, as 3M's counsel confirmed to the court at the hearing: "the only value 3M receives for that is that it gets to have the MDL claims resolved against it in bankruptcy ….?  MS. LAURIA: That is correct."  8/11/22 Tr. at 26:25–27:5.  The core of the plan was staying the litigation.  Next, 3M would minimize claim values by, for example, "arguing that the government-contractor defense limits the value of claims, despite the MDL court's rejection of the defense."  3M Br. at 2.  Reducing claim values would not require questioning *every* MDL order, just a few important ones.

Plaintiff Richard Valle moved for a surgical remedy to this abusive plan: an antisuit injunction preventing 3M from relitigating the MDL court's orders in the bankruptcy court.  The All Writs Act has long empowered courts to protect their jurisdiction and orders, subject to concerns of comity and equity.  Such injunctions are especially common in mature class-action or MDL litigation, in which equity strongly favors preserving the rulings that are the culmination of full-time work by hundreds of attorneys over multiple years.  The MDL court granted the motion, defending both its own orders, and this Court's jurisdiction in reviewing multiple cases on appeal.  Recently, the bankruptcy court declined to enjoin litigation against 3M, meaning litigation in the MDL has resumed.

The injunction was a sound exercise of the MDL court's discretion and fits neatly within the long tradition of antisuit injunctions. Against that tradition, 3M offers categorical arguments. It suggests that antisuit injunctions are impermissible whenever a party has the legal remedy of litigating res judicata in the second court. This is true for all antisuit injunctions and binding authority rejects it. By statute, injunctions affecting state courts must meet a higher standard, but 3M makes an upside-down argument for federal bankruptcy exceptionalism, proposing that bankruptcy courts have never been subject to antisuit injunctions. 3M's abuse of the bankruptcy venue is unprecedented, so this would hardly be surprising. But it is not true—jurists such as Justice Powell and Judges Easterbrook and Luttig have enjoined or affirmed the injunction of bankruptcy courts.

Last, 3M argues the Constitution guarantees a right to relitigate issues in its venue of choice, and that the injunction imposes inequitable burdens. There is no such constitutional right, as courts have repeatedly told crank litigants. The only inequity involved is 3M's abuse of bankruptcy procedures to evade the civil justice system. If 3M prevails, it can freely second-guess—in its handpicked venue— rulings that the MDL court applied to thousands of cases and that this Court even now is hearing on appeal. The injunction prevents that. The Court should affirm.

3

## STATEMENT OF THE CASE

This appeal arises from the largest MDL in the federal courts, in which more than one-hundred-thousand veterans have brought suit against 3M for hearing loss and tinnitus caused by 3M's earplug, the Combat Arms Earplug, Version 2 (CAEv2). In the MDL, 3M agreed to a Bellwether Selection Process from the 139,693 claimants registered as of December 16, 2019, in MDL Centrality, a mass tort litigation management platform managed by a third-party vendor (BrownGreer). *See* MDL.Dkt.922. The MDL court oversaw the selection of a 1% sample—1,397 claimants. It then oversaw the conduct by BrownGreer of prevalence analyses of all claimants with completed census forms, which resulted in the selection of representative plaintiffs for bellwether trials.

Nineteen bellwether cases have gone to trial, of which veterans have prevailed in thirteen, and 3M in six. The veterans who have prevailed have been remarkably successful, winning verdicts in the millions—or tens of millions.[2] Each of those

---

[2] *Estes*, 7:20-cv-137, Dkt. 184, ($2,450,500 verdict); *Keefer*, 7:20-cv-104, Dkt. 186 ($2,420,000 verdict); *Hacker*, 7:20-cv-131, Dkt. 202 ($2,260,000 verdict); *Baker*, 7:20-cv-39, Dkt. 183 ($1,054,000 verdict); *Adkins*, 7:20-cv-12, Dkt. 118 ($8,200,000 verdict); *Wayman*, 7:20-cv-149, Dkt. 198 ($21,697,264.38 verdict) *Sloan*, 7:20-cv-1, Dkt. 184 ($55,000,000 verdict); *Camarillorazo*, 7:20-cv-98, Dkt. 170 ($13,062,320 verdict); *Finley*, 7:20-cv-170, Dkt. 174 ($22,500,000 verdict); *Vilsemeyer*, 7:20-cv-113, Dkt. 139 ($50,000,000 verdict); *Wilkerson*, 7:20-cv-35, Dkt. 201 ($8,000,000 verdict); *Vaughn*, 7:20-cv-134, Dkt. 163 ($1,426,793.93); *Beal*, 7:20-cv-6, Dkt. 176 ($77,500,000 verdict). Defendants prevailed in the following cases: *McCombs*, 7:20-cv-94; *Blum*, 7:20-cv-122; *Stelling*, 7:20-cv-143; *Palanki*, 3:19-cv-2324; *Montero,* 7:20-cv-67; and *Kelley*, 7:20-cv-153.

4

verdicts have found 3M jointly and severally liable with its Aearo subsidiaries, which originally designed the CAEv2 and were acquired by 3M in 2008. Plaintiff Richard Valle hopes to taste that success at his upcoming trial. 3M is not so eager.

### A. 3M Masterminds a Tactical Bankruptcy Filing.

Dissatisfied with its string of defeats and unwilling to wait for this Court's review of already-appealed final judgments, 3M engaged in what might euphemistically be called a liability management strategy. The strategy involved 3M causing its wholly owned Aearo subsidiaries to file for bankruptcy, then getting the bankruptcy court to extend bankruptcy protections to 3M. The result would be bankruptcy protections without bankruptcy burdens—a windfall for 3M.

To build the case for protections to extend to non-debtor 3M, the strategy required some argument for why a suit against 3M was *really* just a suit against the Aearo Debtors. On July 25, 3M and the Aearo Debtors executed a newfangled Funding and Indemnification Agreement. Bankr.Dkt.11-2 (Funding Agreement). Essentially, the Aearo Debtors indemnified 3M for all CAEv2 liabilities, including 3M's own fraud and willful misconduct. The Aearo entities plainly lacked funds to cover this gigantic indemnity, so 3M, for its part, agreed to fund Aearo's payments for all CAEv2 liabilities, *including Aearo's indemnity obligations to 3M*. The MDL court asked 3M about this funding agreement and indemnity: "It exists only because

it was created for the purposes of the bankruptcy filing?  Ms. Lauria: That's my understanding, your Honor." 8/11/22 Tr. at 23:10–12.

The purpose of this agreement is easier to understand when one knows it was initially drafted by Kirkland & Ellis, proposed bankruptcy counsel for the Aearo Debtors *and* principal counsel for 3M (and Aearo) in the MDL.[3]  Adv.Pro.Dkt.143 at 7.  This initial draft then "became the framework for negotiations between 3M" and the supposedly independent directors of the Aearo Debtors.  *Id.*  During oral argument on Valle's motion, 3M's counsel agreed that the funding agreement "exists only because it was created for purposes of the bankruptcy filing[.]"  8/11/22 Tr. at 22:10–12.

The next day (July 26), 3M caused the Aearo Debtor entities to file for bankruptcy, and 3M commenced a media blitz, explaining its strategy.  It announced to shareholders that "*it* is taking action to resolve litigation related to Combat Arms Earplugs Version 2 ('Combat Arms Earplugs')."  MDL.Dkt.3378-4 at 1 (emphasis added).  How?  Read on: "Aearo Technologies and related entities ('Aearo Technologies'), all of which are wholly-owned 3M subsidiaries, have voluntarily initiated chapter 11 proceedings seeking court supervision to help establish a trust—

---

[3] The United States Trustee recently filed a motion to disqualify Kirkland as counsel in the bankruptcy, arguing that "these bankruptcy cases were admittedly filed for the express purpose of freeing 3M from its tort liability," which creates a conflict of interest between 3M (which wants to bankruptcy to address *its* liability) and the debtors (who do not).  Bankr.Dkt.695 at 12.

funded by 3M—to efficiently and equitably resolve all claims determined to be entitled to compensation." *Id.* 3M stated further, "*We* determined that taking this decisive action now *will allow 3M* and [the Aearo Debtors] to address these claims …." *Id.* (emphasis added). 3M CEO Mike Roman reaffirmed that 3M was in control, stating during an earnings call that "[t]he decision to really take the steps related to [CAEv2] litigation came out of really, first and foremost, the result of the bellwether trial. [sic] They were highly variable. We believe it would take years to litigate those claims. And so given a choice between a costly litigation process, and a better, fair, more efficient resolution, that's what drove the decision to step into the new actions we're taking." MDL.Dkt.3378-5 at 16.

Immediately upon filing for bankruptcy, the Aearo Debtors filed a complaint and companion motion to enjoin CAEv2 litigation against non-debtor 3M, either under the automatic stay, 11 U.S.C. § 362, or the broad grant of equitable authority in 11 U.S.C. § 105(a). This was exactly in line with the liability management strategy 3M had designed.

The Aearo Debtors filed an extensive "informational brief" riddled with biting attacks on the MDL court in lockstep with 3M's media message. The brief dedicated almost twenty pages to explaining why "**STRUCTURAL PROBLEMS DOOMED THE MDL FROM THE OUTSET**." Bankr.Dkt.12 (Informational Brief) at 20 (heading III). Another ten pages explained why "**THE COMBAT**

7

**ARMS MDL IS BROKEN BEYOND REPAIR**.”  *Id.* at 42 (heading IV).  The brief repeatedly harped on MDL summary judgment, *Daubert*, and evidentiary rulings, and attacked general case management, brazenly tempting the Bankruptcy Court to claim for itself the power to chart a different course:

- “Where the MDL and tort system broke down, this Court can oversee an efficient global solution.” *Id.* at 3.

- “The compressed trials quickly devolved into a fictional performance— infected with plaintiffs’ lawyers’ misleading, and at times outright false, representations.” *Id.* at 9.

- “In short, the tort system is no longer a viable forum to resolve this litigation, which is instead now a cautionary tale of an MDL that is broken beyond repair.” *Id.* at 11.

The ask came toward the end of the brief: “Aearo will be seeking a full and conclusive valuation of its liabilities for the benefit of all valid claims.” *Id.* at 56. But this ultimate “estimation ***cannot*** be premised on … judgments that might have arisen out of tainted litigation records in the tort system.” *Id.* (emphasis in original). Instead, to ensure a proper estimation, the bankruptcy “Court is thus empowered to resolve summary judgment and *Daubert* motions.”  *Id.*

The logic is clear: the MDL court is “broken beyond repair;” it allowed a “fictional performance” and produced only “tainted” verdicts; and so, resolution of

the victims' claims "*cannot* be premised" on the rulings and verdicts from the MDL—the Bankruptcy Court must do things differently.  At the bankruptcy hearing, counsel spoke in even plainer language: "the heart of our problem comes out of her [Judge Rodger's] court"; "You say, well, I'm blaming the district judge.  Well, I *am* blaming the district judge;" "we need protection now because it's an unsustainable broken process that's producing terrible verdicts and costing tens and hundreds of millions of dollars."  7/27/22 Adv.Pro. Tr. at 42:20; 39:20–21; 39:3–5 (emphasis added).  The "terrible verdicts" are, of course, verdicts against 3M, not the few defense verdicts.

The bankruptcy strategy was as transparent as it was astonishing.  3M's press release and Aearo's bankruptcy briefing make clear that the chief purpose of the bankruptcy is to *circumvent* existing MDL rulings that 3M dislikes.

These attacks are completely baseless, as the briefing in the *Baker* and *Estes* appeals demonstrate.[4]  Judge Rodgers is a distinguished judge whose rulings exude fairness, efficiency, and sound judgment.  But that is neither here nor there.  Even if Judge Rodgers erred, dissatisfied litigants have a simple avenue to reverse those mistakes: appellate review.  A collateral attack in an Article I tribunal is grossly

---

[4] *3M Co. v. Estes*, Nos. 21-13131, 21-13133, 21-13135; *3M Co. v. Baker*, No. 21-12517.

improper and undermines the dignity and effectiveness of federal courts. 3M has a right to appeal its losses, but no right to relitigate any issue anywhere else.

Soon after the bankruptcy filing, the Bankruptcy Court scheduled briefing and argument on whether to enjoin litigation against 3M, and, in parallel, Mr. Valle moved for an injunction to stop 3M from relitigating MDL rulings.

### B. Valle Moves for an Injunction to Stop 3M's Relitigation Tactics.

Plaintiff Richard Valle is a "Wave 1" Plaintiff, meaning his trial is scheduled after the bellwethers. He has been deposed, undergone a Defense Medical Examination, retained an expert who submitted a Rule 26 report and sat for a deposition, and briefed dispositive and *Daubert* motions. 3M's tactics could rob him of a meaningful trial against 3M, and so on August 3, 2022, Valle filed a motion in the MDL to enjoin 3M both from relitigating issues before the Bankruptcy Court that the MDL had resolved, and from supporting an injunction from the Bankruptcy Court against his suit. MDL.Dkt.3358. Valle's motion requested oral argument, but noted that an evidentiary hearing was not necessary because "there are no relevant issues of material fact in dispute." *Id.* at 22. 3M apparently agreed, since it sought no discovery, introduced no evidence, and 3M's counsel did not raise any need for either during oral argument. *See generally*, 8/11/22 Tr. The MDL court granted Valle's motion in part on August 16, 2022, prohibiting 3M—and *3M only*—from

10

attacking the MDL court's prior orders, but denying the request to prevent 3M from supporting an injunction against his suit.[5]  MDL.Dkt.3389.

### C. The Bankruptcy Court Rejects 3M's Arguments.

Meanwhile, the Bankruptcy Court held a three-day evidentiary hearing (on August 15, 16 and 17) on the Aearo Debtors' motion for a preliminary injunction. On August 26, it denied the motion.  The Bankruptcy Court observed that the Funding Agreement accomplished a "circular arrangement" wherein "Aearo seemingly is obligated to repay any indemnity obligations to 3M" but "Aearo is authorized to make a funding request for such indemnification from 3M." Adv.Pro.Dkt.143 at 31.  In substance, "Aearo is able to ask 3M for the funds required to pay Aearo's indemnity obligation to…3M. This does indeed seem to be a circular arrangement." *Id.* (ellipsis in original).

The Bankruptcy Court ruled that the automatic stay does not apply, since the stay protects only debtors, and the indemnity does not change that conclusion "because, ultimately, 3M will fully fund any liability." *Id.* at 25.  The Bankruptcy Court next ruled that it lacked "relating to" jurisdiction because the suits against 3M lacked "any financial impact to creditors, let alone a significant and adverse one,"

---

[5] This partial denial is moot, since the Bankruptcy Court declined to issue an injunction.

*id.* at 32, and in the alternative would not issue an injunction even if jurisdiction existed, *id.* at 35.

Beyond the doctrinal points, the Bankruptcy Court acknowledged what 3M was attempting, gently contradicting its talking points by noting, "The fact that the bellwether trials conducted in the MDL have not yet yielded a global settlement does not mean that the MDL itself is broken." *Id.* at 15. It acknowledged that "a stay" could well "provide Aearo and/or 3M with additional leverage to negotiate a global settlement," but that unalloyed windfall to 3M was not "to be considered when reviewing the language" of the bankruptcy code. *Id.* at 36.

3M has identified no upcoming bankruptcy proceeding that the MDL court's All Writs Act injunction would affect.

## SUMMARY OF THE ARGUMENT

The MDL court's injunction is consistent with a long history of antisuit injunctions. The All Writs Act is a broad, "legislatively approved source of procedural instruments designed to achieve the rational ends of law." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) (internal quotation marks and citations omitted). One such use is the antisuit injunction, in which a court enjoins a litigant from bringing a judgment into question, undermining an ongoing proceeding, or both. Courts of appeals have repeatedly held that courts overseeing complex litigation can protect the years of litigation expended by the parties and the

judicial system by enjoining parallel litigation, imposing conditions on seeking certain forms of relief, or allowing parallel litigation so long as the no party relitigates a settled issue. *E.g.*, *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 552 F.2d 601, 603 (5th Cir. 1977) (reversing the denial of an antisuit injunction). The focus in these cases is on efficiency and equity, and district courts are allowed wide discretion in fashioning relief. The MDL court acted within its discretion in enjoining 3M from relitigating hard-fought losses from the MDL which are even now on appeal to this Court.

3M's arguments do not address this case law, and fail on their own terms. There is no requirement that movants demonstrate that a second court would not adequately apply res judicata before an antisuit injunction issues. Familiar standards for injunctions (irreparable harm, success on the merits, inadequate alternatives at law) do not apply to antisuit injunctions. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). How could they? It makes little sense to ask whether Mr. Valle will "succeed on the merits" of his All Writs Act motion. Instead, a court must have jurisdiction over a proceeding already, and be acting in aid of its jurisdiction. 3M also argues that antisuit injunctions must halt all litigation in a venue (not only prevent relitigation), but precedent says otherwise. Though 3M has a right to press its arguments, it can do so in the MDL—it has no constitutional right to *relitigate* in a venue of its own choosing.

13

It makes no difference that the second court is a bankruptcy court. Heightened statutory protections apply to *state* courts, not bankruptcy courts. The bankruptcy court does not have exclusive jurisdiction over relitigating MDL orders, and here, the injunction does not extend to the Aearo Debtors at all. The automatic stay does not apply to 3M, as the bankruptcy court itself recently confirmed in denying the preliminary injunction the Aearo Debtors sought.

The antisuit injunction is easily clear enough for 3M to comply with it and matches several other injunctions that have been affirmed. Rules 65 and 52 do not apply to antisuit injunctions and would be no reason to vacate if they did. 3M complains of the burden of the injunction, but its protests throw its previous promises to follow the MDL court's rulings into sharp relief. The equities are entirely one-sided: protecting the orders of the court authorized by Congress to hear these cases.

## ARGUMENT

The injunction at issue in this appeal sails past the standards courts have long applied to antisuit injunctions. The MDL court presided for multiple years over the CAEv2 litigation. 3M fled from the Northern District of Florida for the principal purpose of minimizing the claim value it would pay plaintiffs—including Mr. Valle—in an ultimate settlement, counting on the reevaluation of long-settled court orders as an integral part. The plan put the MDL's viability into question, and the

14

antisuit injunction was a proper remedy to foil the plan. 3M does not contend otherwise—indeed, it says precious little about antisuit injunction doctrine.

Instead, it erects a half-dozen hurdles, but the injunction can surmount all six. A party can *always* relitigate rather than seeking an antisuit injunction, and so, unsurprisingly, the availability of the "remedy" of relitigation cannot defeat the injunction. The injunction steers safely clear of the bankruptcy court's exclusive jurisdiction. 3M has no constitutional right to relitigate anything, and no case has ever held otherwise. The injunction is fully consistent with the automatic stay. The injunction need not meet Rules 52 or 65, but in any event exceeds the clarity required by this and other courts. Last, equity is on Mr. Valle's side. The injunction should be affirmed.

## I.    Judge Rodgers Properly Issued the Antisuit Injunction.

The injunction below is an antisuit injunction. *See generally* 3 Newberg and Rubenstein on Class Actions § 10:42 (6th ed.) ("an antisuit injunction enjoins a litigating party presently before the enjoining court from litigating elsewhere"). Such injunctions have a long history of preventing analogous types of litigation abuse that 3M is now attempting.

### A. Antisuit Injunctions Are Well-Established Remedies.

The power of courts of equity to enjoin litigation in another venue traces to before "equity's triumph, during Francis Bacon's hitch as Chancellor." James E.

Pfander & Nassim Nazemi, *The Anti-Injunction Act and the Problem of Federal-State Jurisdictional Overlap*, 92 Tex. L. Rev. 1, 13 (2013).  Congress conferred equivalent power in the Judiciary Act of 1789, which included the All Writs Act, now codified (largely unchanged) in 28 U.S.C. § 1651(a): "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  The All Writs Act is nothing less than a "legislatively approved source of procedural instruments designed to achieve the rational ends of law." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) (internal quotation marks and citations omitted).

Unsurprisingly, given its text and purpose, "[c]ourts have read the language of this statute broadly."  *Burr & Forman v. Blair*, 470 F.3d 1019, 1026 (11th Cir. 2006).  It provides authority for "writs to protect 'not only ongoing proceedings, but *potential future proceedings*, as well as already-issued orders and judgments.'" *Id.* (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004)) (emphasis added).  And "unless specifically constrained by an act of Congress, the Act authorizes a court to issue writs any time 'the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.'" *Id.* (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942)).

16

### 1. The legal standard for antisuit injunctions against federal courts is broad and highly discretionary.

The Supreme Court has left lower courts extraordinary discretion to issue antisuit injunction within the federal court system based on the equities: "Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952). After "*Kerotest*, the lower federal courts" have broadly looked to the "first-to-file rule" and general equitable considerations such as "efficiency," "compelling circumstances," and "concerns about piecemeal resolution." 3 Newberg and Rubenstein on Class Actions § 10:43 (6th ed.).

Courts have applied these broad equitable principles to enjoin relitigation in federal court. The old Fifth Circuit reversed the *denial* of an antisuit injunction based on these principles in *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 552 F.2d 601, 603 (5th Cir. 1977).[6] There, KFC sought an antisuit injunction in

---

[6] This decision is treated as in-circuit authority. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1210 (11th Cir. 1981) (en banc) (adopting pre-1981 Fifth Circuit case law).

federal court in Florida to prevent a defendant "from relitigating claims" in a federal court in Kentucky, but the Florida court suggested that the Kentucky court could equally well decide the res judicata issues, and denied the motion. *Id.* The Fifth Circuit reversed, explaining that many of the same "issues" were "being raised again in the second action," and "the Florida district court is the judge most familiar with" the "complicated" issues. *Id.* The Florida court was consequently "best able … to determine what claims would be precluded" and there was "no good reason to [make] KFC … prove its res judicata or estoppel claims in another court," especially since so much "time and money was spent in the initial litigation." *Id.* The Florida court erred in its "fear[] of depriving the defendants of their day in court," when it should have granted the injunction under "the relevant factors we have noted." *Id.* ("'neither common sense nor precedent relegates the plaintiffs to [the] small comfort'" of litigating the "estoppel claim [in] … the second court") (quoting *Helene Curtis Industries, Inc. v. Sales Affiliates, Inc.*, 247 F.2d 940, 945 (2d Cir. 1957)).

### 2. The legal standard for antisuit injunctions against state courts is stricter, but still commonly met.

The All Writs Act empowers federal courts to enjoin ongoing *state* court actions as well, but there the "Anti–Injunction Act serves as a check on the broad authority recognized by the All Writs Act." *Burr*, 470 F.3d at 1027. The Anti–Injunction Act provides that federal courts "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or

where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. All agree that the "comity" a federal court owes another federal tribunal "is not as demanding as the deference … [under] the Anti–Injunction Act." *Smith v. S.E.C.*, 129 F.3d 356, 361–62 (6th Cir. 1997). That is because unlike the broad All Writs Act, courts "construe both … [Anti–Injunction Act] exceptions narrowly" due to "the federalism concerns underlying" that Act. *Burr*, 470 F.3d at 1028. Still, examining cases applying the stricter Anti–Injunction Act standard is illuminating despite its inapplicability here because "where an injunction is justified under one of the exceptions to [the Anti–Injunction Act] a court is generally empowered to grant the injunction under the [All Writs Act]. *Id.* at 1028; *see also In re Diet Drugs*, 282 F.3d 220, 239 (3d Cir. 2002) ("Our holding that PTO 1227 was necessary in aid of the District Court's jurisdiction for purposes of the Anti–Injunction Act necessarily implies it was authorized under the All Writs Act as well.").[7]

Despite the stricter standard, antisuit injunctions against state proceedings are common. One leading case is *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334–35 (5th Cir. 1981). There, an MDL court enjoined "substantially similar

---

[7] The converse is not true. Quite apart from the federalism interests, the text of the two provisions is different, with the All Writs Act allowing writs that are "necessary *or appropriate*," and the Anti–Injunction Act allowing only the subset that is truly "necessary."

19

state law claims in the South Carolina court" on the rationale that an injunction was "'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Id.* (quoting *Atlantic Coastline R.R. v. B'hood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)). The partial settlement reached in the federal MDL either did, or could have included all the South Carolina claims, and the "complicated antitrust action has required a great deal of the district court's time and necessitates its ability to maintain a flexible approach in resolving the various claims of the many parties." *Id.* There were no federalism problems because—despite its protests to the contrary—"the South Carolina court could not be offended by losing the opportunity to entertain a harassing lawsuit." *Id.* at 1335. There was no due process problem with the injunction because the parties enjoined "could protect their state law claims by asserting them as pendent claims in the federal forum." *Id.*

This Court found the *Corrugated Container* case "persuasive," similarly affirming an injunction against state court litigation. *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 881 (11th Cir. 1989). In applying the "in aid of its jurisdiction" exception of the Anti–Injunction Act, this Court held that "years of litigation and mountains of paperwork" meant the first court had the equivalent of a "*res* to be administered." *Id.* at 882. It need not countenance a conflicting order from a state

court regarding that same *res*, and so an antisuit injunction was "in aid of its jurisdiction." *See also Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993) ("a lengthy and complicated class action suit is the virtual equivalent of a *res* to be administered"). Upholding the injunction was all the more extraordinary in *Battle* since the Alabama Supreme Court had held that res judicata did not apply in the now-halted state proceeding. This Court explained that the antisuit injunction did not deny the litigants access to court, but merely required them to file in the federal court that issued the injunction. *Battle*, 877 F.2d at 883.

Much as in *Corrugated Container* and *Battle*, many antisuit injunctions are in the context of complex proceedings in which judgment has been entered on some claims, and others are being resolved (by settlement or litigation). As Wright & Miller explain, "[i]f the initial litigation has been unusual in its complexity or manner of proceeding, it may be appropriate to enjoin even the first instance of duplicating litigation." 18 Fed. Prac. & Proc. Juris. § 4405.1 (3d ed.).

These cases emphasize that antisuit injunctions are proper to protect the court's pending proceedings and issued orders. *See*, *e.g.*, *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985) (antisuit injunction warranted because the "proceeding [was] so far advanced that it was the virtual equivalent of a res over which the district judge required full control."); *In re Diet Drugs*, 282 F.3d 220, 235–36 & n.12 (3d Cir. 2002) (upholding

21

antisuit injunction in part because "[c]omplex cases in the later stages—where, for instance, settlement negotiations are underway—embody an enormous amount of time and expenditure of resources" and "where complex cases are sufficiently developed, mere exercise of parallel jurisdiction by the state court may present enough of a threat to the jurisdiction of the federal court to justify issuance of an injunction"); *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1252 (11th Cir. 2006) (vacating injunction because, unlike "*Weisch* and *Battle*," there was not "both complexity and potential for interference"); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 314 F.3d 99, 104–05 (3d Cir. 2002) ("district courts overseeing complex federal litigation are especially susceptible to disruption by related actions" and "permitting collateral attacks" would "undermine" the "Multidistrict Litigation Act" which is "an application of Congress's constitutional power"); *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 848 (6th Cir. 2009) (same).

## B. The Injunction Here Was in Aid of the MDL Court's Jurisdiction.

The MDL court below followed this tradition when it was threatened with a total breakdown of its congressionally conferred authority to resolve the CAEv2 suits. It had ruled upon a full suite of issues at summary judgment, *Daubert*, motions *in limine*, discovery matters, and so forth. Most of those orders had merged into the final bellwether judgments. All were at minimum law of the case for every plaintiff and defendant in the MDL.

In a few days, 3M threatened these judgments and orders by causing its subsidiaries to enter bankruptcy and filing a broadside attack on the MDL, all-but-announcing its intent to use settled judgments and orders as a starting point for negotiating claim values down, rather than a constellation of fixed points. This is precisely the scenario for antisuit injunctions: "the All-Writs Act … permits a district court to enjoin actions in state court where necessary to prevent relitigation of an existing federal judgment." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985) (citing cases). For the cases that had not yet progressed to judgment, "the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions" as well. *Id.* at 336 (citing cases).

The injunction surgically protects against relitigation of its orders: "For the avoidance of doubt, the scope of today's injunction prevents 3M from 'attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in' bankruptcy court." MDL.Dkt.3389 at 7 (quoting *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998). It applies only to 3M, not any debtors or the bankruptcy court itself. The MDL court was well-within its discretion to issue this injunction.

3M does not genuinely dispute the court's power under the All Writs Act. This point is worth underscoring. As 3M agrees, this Court reviews the MDL court

for abuse of discretion.  3M Br. at 18.  And it also agreed at the hearing that the MDL court held the *power* to issue the injunction: "Ms. Lauria, do you all think—is it that you don't believe I have the authority under the All Writs Act or you don't think I should exercise it?  What is your position?  MS. LAURIA: Your Honor, I don't think you should exercise it."  8/11/22 Tr. at 16:15–19.

## II.  3M's General Arguments Against Antisuit Injunctions Do not Demonstrate an Abuse of Discretion.

Despite conceding the MDL court's power to issue an antisuit injunction, 3M makes three blunderbuss arguments against the injunction here that have no basis in the case law and would eviscerate that power.  3M argues the bankruptcy court is an adequate remedy for any relitigation, but antisuit injunction precedents have never applied equitable principles that way.  Next, it argues antisuit injunctions can *only* be against the filing of a lawsuit *in toto*, but there is no authority supporting that claim, and much against it.  Last, it argues that the injunction impinges its constitutional right to participate in court, but no such right exists as applied to *relitigating* issues that have been decided by another tribunal.

### A. Antisuit Injunction Cases Uniformly Do Not Require a Movant to Demonstrate an Inability to Raise Res Judicata in the Second Court.

The well-established history of antisuit injunctions shows that courts do—and long have—granted antisuit injunctions even though parties could *always* instead relitigate in the second tribunal.  That universal fact has never been a reason to vacate

24

an injunction. *E.g.*, *Redac Project 6426, Inc. v. Allstate Ins. Co.*, 412 F.2d 1043, 1047 (2d Cir. 1969) ("res judicata or collateral estoppel" may be "available," but courts are "not required to remit [movants] to that protection alone"); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335–36 (2d Cir. 1985) (injunction is proper "notwithstanding" that "parties … could invoke res judicata"); *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983) (party could argue "collateral estoppel and res judicata" in the second court, but "[n]evertheless … district courts do have the power to reinforce the effects of these doctrines by issuing an injunction").

General points aside, this Court is bound by the old Fifth Circuit's *Kentucky Fried Chicken* case, which reversed a district court that applied the same logic 3M proffers. Relying on Second Circuit authority, that case held that an antisuit injunction was warranted, and that there was "no good reason to [make] KFC … prove its res judicata or estoppel claims in another court." 552 F.2d at 603. This ruling is irreconcilable with 3M's argument that Mr. Valle *must* argue res judicata or collateral estoppel in the bankruptcy court because it is an adequate forum. This precedent is the only relevant antisuit injunction case in which the second court was federal (rather than a state court, which would need to meet the higher Anti–Injunction Act standard).

3M's authorities to the contrary mostly have nothing to do with antisuit injunctions. Its principal argument is that All Writs Act injunctions are unavailable where there are "adequate remedies at law," 3M Br. at 18, but that quotation is general background from a case that merely held that "there is no underlying proceeding of which the District Court has jurisdiction and which it would be properly acting to protect by issuing the requested order." *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1268 (11th Cir. 2021). *Rohe* did not purport to disturb antisuit injunction cases. The quotations from Wright & Miller and *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011) are true enough: determining the "preclusive effect is usually the bailiwick of the *second* court." But the *Smith* case analyzes *only* the Anti–Injunction Act (not the All Writs Act), and never even suggests that litigating in the "*second* court" is an adequate remedy at law such that an injunction cannot issue. If that were *true*, the decision could have said so, and ended after a paragraph. Instead, it held that issue preclusion could not apply because the issue was different *and* that the state plaintiff was not bound because he was not a party. *Id.* at 302.

The *Weaver* and *Tolbert* cases, 3M Br. at 19, likewise fall short of the mark. The *Weaver v. Fla. Power & Light Co.*, case vacated an antisuit injunction against arbitrating an issue that had already been decided in court. 172 F.3d 771, 775 (11th

Cir. 1999).  But *Weaver* is "virtually indistinguishable" from a prior holding[8] of this Court that *granted* an antisuit injunction, and so "under [the Court's] prior panel rule [the Court is] not bound by *Weaver*."  *Klay*, 376 F.3d at 1101 n.12.  In the unpublished case *Tolbert v. Monsanto Co.*, 625 F. App'x 982 (11th Cir. 2015), the portion 3M quotes is in a footnote summarizing the district court's action.  *Id.* at 985 n.5.  A party apparently asked the district court to enjoin another action *before the same court* to protect its own jurisdiction—an obviously silly request.[9]

Even if 3M were right about the law, the bankruptcy court is far from "a perfect substitute" for the injunction.  3M Br. at 21.  Most obviously, there is "no good reason to put [Mr. Valle] to the harassment of an expensive, time-consuming procedure to prove [his] res judicata or estoppel claims in another court." *Kentucky Fried Chicken*, 552 F.2d at 603.  But beyond that, Judge Rodgers is "most familiar" with the relevant orders, and "is best able, therefore, to determined what claims would be precluded." *Id.*

---

[8] The Supreme Court's recent Federal Arbitration Act case law holding that arbitrators decide arbitrability largely abrogates both of these cases.  *E.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (arbitrator decides even if the argument is "wholly groundless").

[9] For completeness, *Tolbert* quotes dicta from *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1132 (11th Cir. 2005), but that case is no help to 3M.  For one thing, the injunction was "simply not an All Writs Act injunction," *id.*, and for another, it expressly distinguished the run-of-the-mill parallel litigation at issue from "exceptional circumstances" in which antisuit injunctions have issued, including "unique considerations" in complex cases, especially "Multidistrict Litigation." *Id.* at 1132 n.22.  Those considerations plainly apply here.

27

3M's discursion into law-of-the-case doctrine is no more successful. 3M Br. at 21. Even on case-specific rulings (unlike the broadly applicable orders at issue here), courts are highly reluctant to "re-visit the transferee court's pre-trial rulings," since that would "vitiate much of the purpose of consolidating litigation." *In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009) (quoting *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 n.5 (7th Cir. 1996)). The *Ford* case vacated a case-specific *forum non conveniens* ruling involving new and compelling evidence of fraud. No one expects 3M to attempt to relitigate one-off rulings like that. Instead, 3M will focus on high-stakes "summary judgment" rulings (on the government contractor defense, negligence *per se*, and other issues), "*Daubert* motions," and cross-cutting evidentiary rulings that it has repeatedly litigated. Bankr.Dkt.12 at 56.

With few exceptions, both collateral estoppel *and* law-of-the-case apply to these major ruling. Take the government contractor defense, for example. *Cf.* 3M Br. at 2 (highlighting that the "government-contractor defense limits the value of claims," in bankruptcy "despite the MDL court's rejection of the defense"). The applicability of that defense was briefed and decided for all plaintiffs and all defendants in the MDL at once—a fully fair process in which 3M had full warning that the issue mattered, and which produced no possible inconsistent rulings. Thirteen plaintiffs prevailed at various trials, producing judgments to which the

failure of that defense was necessary. There could hardly be a stronger case for collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

There is no precedent for revisiting major MDL rulings like these—but that is what 3M seeks to do. If, somehow, reconsideration were necessary, the proper course for 3M would be to file its motion *in the MDL* (or, post-remand, with the trial court). There is no good-faith reason for 3M to "dare[] to suggest" to the *bankruptcy court* "that a serious error was committed." 3M Br. at 21. The bellwether appeals are fully briefed, but with no injunction, 3M is free to invite the bankruptcy court to disagree with *this Court's decision* and outline a settlement plan in bankruptcy predicated on "the government-contractor defense limit[ing] the value of claims." 3M Br. at 2. That victory-by-venue-change would defeat the purpose of MDLs.

To make its concerns "not hypothetical," 3M ironically refers to "Minnesota state court," a venue in which the injunction plainly does not apply. "For the avoidance of doubt, the scope of today's injunction prevents 3M from 'attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in' **bankruptcy court**." MDL.Dkt.3389 at 7 (emphasis added). "If 3M defies this injunction by attempting to relitigate (or supporting relitigation of) these matters **in the bankruptcy court**, this Court retains jurisdiction to convene contempt proceedings to enforce compliance." *Id.* (emphasis added). Besides being in the wrong venue, from 3M's representation, it appears the

29

litigants (who have never been part of the MDL) are seeking a ruling on successor liability (which has unambiguously not yet been decided in the MDL, as the MDL court's recent order[10] makes plain).  As 3M well knows, the injunction applies only to *re*litigating matters in bankruptcy, not litigating issues for the first time in state court.  This difference matters, since the Anti–Injunction Act applies to state courts.

### B. Antisuit Injunctions Commonly Apply Only to Certain Facts or Issues.

The injunction at issue here does not bar all litigation in bankruptcy, but only relitigation.  With no citation to legal authority, 3M attacks this reasonable limitation by claiming that antisuit injunctions are "reserved for truly exceptional circumstances where there is no basis for *any* litigation in the second court."  3M Br. at 22; *see also id.* at 29 (contrasting this injunction with the "typical" one that "categorically forbids litigation").  There is no such limitation.  To the contrary, courts often enjoin relitigating specific issues or facts *only*, or impose a requirement of seeking the court's permission.  This Court explained that "a court may enjoin almost any **conduct** 'which, left unchecked, would have ... the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'" *Klay*,

---

[10] On October 27, the MDL court issued an order staying all litigation and committing to rule on a motion determining whether 3M is independently liable for all of its subsidiaries' sales (which it never before contested, but now does). MDL.Dkt.3568 at 2–3 ("The Court will rule on the matter promptly.").  That order stated the court's intention to "certify its decision for interlocutory appeal." *Id.* at 3.

376 F.3d at 1102 (quoting *ITT Comm. Devel. Corp. v. Barton,* 569 F.2d 1351, 1359 (5th Cir. 1978) (emphasis added).

The variety in the cases supports that broad language. *See, e.g.*, *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1347 (11th Cir. 2014) (a claim could proceed "at least in part" and so the court should enter "a more limited injunction"); *Feltner v. Title Search Co.*, 283 F.3d 838, 840–42 (7th Cir. 2002) (injunction against relitigation of only some issues); *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 441 F.2d 631, 637 (5th Cir. 1971) (the injunctions "no more than embody the principles of res judicata and collateral estoppel" allowing some issues); *Newby v. Enron Corp.*, 338 F.3d 467, 476 (5th Cir. 2003) ("The injunction … does not bar the state proceeding in its entirety…. Rather, it bars the Bullock plaintiffs only from seeking injunctions in the state case without first seeking leave of the federal court."); *In re Diet Drugs*, 282 F.3d 220, 238 (3d Cir. 2002) ("The District Court found it necessary to enjoin only the part of the action that directly—and by design—interfered with the federal action."); *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 150–51 (1988) ("insofar as the District Court enjoined the state courts from considering petitioner's claim under the substantive law of Texas, the injunction was permissible" but not on other issues).

3M simply ignores the wealth of case law allowing exactly what Judge Rodgers did here.

### C. No Right to Relitigate Lurks in the Constitution's Penumbras.

Despite 3M's stirring tributes to free speech and open courts, there is no right—constitutional or otherwise—to relitigate issues in one's preferred venue.

3M did not once mention free speech or the First Amendment in opposing the motion before the MDL court, and so forfeited that argument. *See* MDL.Dkt.3370; *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("The district court was not presented with and did not resolve [a First Amendment argument] …. Therefore, we will not consider this argument on appeal.") (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1222 n.8 (11th Cir. 2004)).

3M did argue the Due Process Clause, but its position has no legal support. Indeed, a string of cases addressing antisuit injunctions have treated such arguments as essentially frivolous. A good example is the case *Scardelletti v. Debarr*, 265 F.3d 195 (4th Cir. 2001). The Maryland Court oversaw pension litigation, largely resolving it other than objections from Mr. Devlin, who also sued the plan in New York. *Id.* at 202. After denying intervention and the objections, the Maryland Court enjoined Mr. Devlin from further litigation related to the plan, though it "le[ft] Devlin the option of pursuing an action in the District of Maryland, and he is not precluded from litigating in any court any matter not connected with this litigation." *Id.* at 213, n.21. In light of those options, the Fourth Circuit "fail[ed] to see how the

district court has improperly impaired Devlin's access to the court system." *Id.* After the Supreme Court vacated the opinion on other grounds, the Fourth Circuit again ruled that his "constitutional claims are meritless." *Scardelletti v. Rinckwitz*, 68 F. App'x 472, 479 n.6 (4th Cir. 2003).

The rule from *Scardelletti* and other cases is that the availability of the venue issuing the antisuit injunction fully satisfies due process. *See Battle*, 877 F.2d at 883 (denying "due process challenge" because any suit "simply must be brought in the forum which has lived with this case for nearly two decades."); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 n.15 (11th Cir. 2002) ("The court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bent on re-litigating claims that were (or could have been) previously litigated … as long as the injunction does not completely foreclose a litigant from any access to the courts, which this one does not."). Here, 3M can relitigate anything it wishes by moving for reconsideration before the MDL court. That satisfies due process.

The authorities 3M relies upon involve genuine political expression such as abortion protests and labor pickets, or thoughtless wholesale exclusion of a *pro se* litigant from the court system. These cases are simply nothing like requiring a Fortune 500 company to avoid resurrecting long-ago resolved defenses to liability in its subsidiary's bankruptcy. As Judge Rodgers explained, there is no constitutional right to "ask another court to undo this Court's rulings that have been

entered over the last three-and-a-half years." 8/11/22 Tr. at 35:4–8. Litigants have no right to lodge claims in whatever venue they choose, using whatever arguments they wish. *See, e.g.*, Fed. R. Civ. P. 11; 28 U.S.C. § 1407 (pre-trial consolidation); 28 U.S.C. § 41 (assigning particular circuit courts to review final judgments from district courts within certain states); 28 U.S.C. § 1295 (conferring exclusive jurisdiction in the Federal Circuit for appeals of patents, government contracts, and other areas). The reasonable—no, necessary—restrictions imposed by the injunction below are no more burdensome than these statutory provisions.

## III. That the Enjoined Party Is Proceeding as a Non-Debtor in Bankruptcy Court Makes No Difference.

3M also presses a series of narrower arguments that antisuit injunctions against bankruptcy courts are especially disfavored, but there is no support for this theory. No aspect of the injunction below impinges the bankruptcy court's exclusive jurisdiction or violates the automatic stay.

### A. Bankruptcy Courts Are not Uniquely Immune from Antisuit Injunctions.

Bankruptcy courts are not protected by the Anti–Injunction Act, and generally sit below Article III district courts in the federal court hierarchy, but 3M nonetheless asserts a mysterious special immunity from antisuit injunctions. To be sure, there are few paradigmatic cases in which an antisuit injunction would be appropriate, but 3M's abuse of the bankruptcy process is virtually unprecedented—there are no other

cases in which a *non-debtor* puppeteer insists on re-litigating an MDL court's rulings in its puppets' bankruptcy while litigation in *both* venues proceeds. That 3M pioneered a new abuse of the federal court system is no reason to defang traditional remedies for analogous abuses.

That aside, 3M is wrong to assert claim the injunction is unprecedented. Judge Easterbrook, sitting by designation, found no obstacle in enjoining the application of a bankruptcy court's temporary restraining order and interpreting the automatic stay *de novo*. *See Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 140 B.R. 969, 971 (N.D. Ill. 1992).

Continuing the sitting-by-designation trend, a panel of Justice Powell and Judges Luttig and Murnaghan on the Fourth Circuit affirmed an antisuit injunction by a district court against a bankruptcy court. *See In re March*, 988 F.2d 498, 499–500 (4th Cir. 1993). There (simplifying a bit), Farmers Bank held a senior lien, and a bankrupt New York company held a junior lien in the same property. *Id.* at 498. After a federal court in Virginia ruled that no automatic stay applied, the New York trustee procured a temporary restraining order and show-cause order in New York bankruptcy court against Farmers Bank. The Virginia district court issued an antisuit injunction against the New York bankruptcy court, and the foreclosure proceeded. *Id.* at 499. The Fourth Circuit affirmed, explaining that the Virginia district court had already decided that the stay did not affect the foreclosure, and so the All Writs

Act allowed it to enjoin the trustee from seeking a conflicting ruling in New York. *Id.* at 500. By appealing the Virginia court's order *and* seeking relief in the New York bankruptcy court, the trustee "sought to circumvent the proceedings in this jurisdiction" by "nothing more than an attempt to end run, at the last minute, the district court's judgment." *Id.*

3M's attempt here is precisely the same. It has appealed the MDL court's judgments to this Court, but simultaneously is seeking "to circumvent the proceedings in this jurisdiction." One venue is enough.

### B. The Bankruptcy Court Lacks Exclusive Jurisdiction over 3M.

The bankruptcy court's exclusive jurisdiction over a *debtor's* property is a red herring, since the injunction runs against *3M*, who is neither a debtor nor property of a debtor. The *Baldwin-United* case 3M cites confirms the key difference. There, the MDL court enjoined *the debtor* "from applying for … relief … against any defendant in any action" in the MDL, which extended not only to the automatic stay, but also to section 105 injunctions. *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 346 (2d Cir. 1985). The Second Circuit gently vacated this injunction, which, though within the court's jurisdiction, "unduly interferes with the proper administration of the reorganization." *Id.* at 348. The equivalent here would have been entering an antisuit injunction *as to the Aearo entities* that barred them from

36

seeking to enjoin *any MDL plaintiff*.  Mr. Valle did not even ask for that, since he sought to enjoin *non-debtor* 3M only.

By contrast, the Second Circuit upheld a startlingly broad antisuit injunction in a companion case from the same court.  *See In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 342 (2d Cir. 1985).  That injunction applied to anyone "having actual knowledge of this Order" and enjoined any "proceeding of any kind against any defendant (or against any of their respective related parties or affiliates)" that were, or would be in the MDL and based on similar facts at issue in the MDL.  *Id.*  The Second Circuit upheld this injunction because the MDL was so "advanced that it was the virtual equivalent of a *res* over which the district judge required full control."  *Id.* at 337.  "The rationale of *Baldwin-United* is thus that a district judge can legitimately assert comprehensive control over complex litigation."  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 907 F.2d 277, 281 (2d Cir. 1990); *see also Battle*, 877 F.2d at 881 (this Court citing *Baldwin-United* and adopting its reasoning); *Wesch*, 6 F.3d at 1470 (same, citing *Battle*).

In line with both *Baldwin-United* cases, the MDL court here carefully deferred to the bankruptcy court on bankruptcy matters but protected its own jurisdiction for its own orders.  Despite the MDL's coming to "a complete standstill," the MDL court soberly "decline[d] to exercise … jurisdiction to prohibit 3M from supporting"

an injunction under section 105.  MDL.Dkt.3389 at 5.  The bankruptcy court had bankruptcy-specific expertise as to the automatic stay, section 105, and a bad faith determination, but *not* to the "challenges to this Court's many legal and evidentiary rulings in the MDL," which is why the MDL court enjoined "3M from attacking this Court's prior orders."  MDL.Dkt.3389 at 7.

This dichotomy is sensible.  3M provides no explanation for why the bankruptcy court's specialization or expertise gives it any ability to know intimately "the thousands of issues decided in the MDL" in "hundreds of orders."  3M Br. at 29.  None is possible.  A "district court is in the best position to interpret its own orders."  *Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195, 1202 (11th Cir. 2009).  Clearly, Judge Rodgers is "most familiar" with the relevant orders, and "is best able, therefore, to determined what claims would be precluded."  *Kentucky Fried Chicken*, 552 F.2d at 603.  As Wright & Miller have explained, "complexity" can "support an injunction because the particularly tangled nature of the controversy will require the second court to invest great effort to become sufficiently familiar with the underlying dispute to make an intelligent preclusion ruling."  18 Fed. Prac. & Proc. Juris. § 4405.1 (3d ed.).  Unsurprisingly, the bankruptcy court has never shared 3M's exaggerated view of its expertise on the complex MDL orders—to the contrary, the court has not even read most of the MDL court's orders, and expressly noted it was neither "authorized nor inclined to address or review Judge Rodgers'

… rulings" or to "review or opine on the results of the bellwether trials or on the evidence or argument presented therein." Adv.Pro.Dkt.143 at 14–15.

Indeed, the Bankruptcy Court concluded that the motion for a preliminary injunction preventing suits against 3M was not even "related to" the bankruptcy. Adv.Pro.Dkt.143 at 36–37. So while 3M contends that the Bankruptcy Court has *exclusive* jurisdiction to hear its plea to relitigate the CAEv2 claims against it, the Bankruptcy Court has held it has *no* jurisdiction over those claims. Forcing Mr. Valle to relitigate issues against 3M in a court that has already disavowed its adjudicatory authority is an even less adequate legal remedy than the normal situation where a party flees "to another federal court" to press anew issues that should be barred "by the principles of res judicata and collateral estoppel." *Deshotel*, 142 F.3d at 879.

### C. The Injunction Is Consistent with the Automatic Stay.

3M's argument on the automatic stay appears to boil down to saying the injunction "chills 3M from continuing to fund Debtors' bankruptcy proceedings," but one strains to see how that could be true. 3M Br. at 28. The argument is that "any position Debtors take … would necessarily constitute 3M's 'supporting … financially'" that position. *Id.* at 33–34. This reading fanciful. 3M cannot, of course, induce Aearo to relitigate an order, but merely funding Aearo as they independently plan their own strategy would not violate the injunction. The

difference is plain and intuitive.  If the Court disagrees, it can, of course, modify the language to remove this edge case.  *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983) (court of appeals mildly rephrased an injunction "clearly to bar relitigation" by "modifying its language" to obviate "any possible confusion").

More exotically, 3M argues that "the injunction also violates the automatic stay insofar as it prevents 3M from fully participating in the bankruptcy."  3M Br. at 34.  This enigmatic argument is pure assertion, uncontaminated by any reference to a positive source of law.  The automatic stay applies to proceedings *against the debtor*.  11 U.S.C. § 362(a).  The automatic stay is not a cheerleader that negatives anything that would prevent a non-debtor from "fully participating" in the proceeding.  That the closest analogy 3M proffers is an injunction purporting to block the act of *filing* for bankruptcy speaks volumes.  3M Br. at 35.  The bankruptcy court already determined that the automatic stay does not apply to 3M.  3M cannot relitigate that defeat to this Court.

## IV.    The Injunction Is Otherwise Proper.

3M's arguments based on Rules 52 and 65 are sleight of hand, since those rules do not apply to antisuit injunctions.  The key question in *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) was whether the order was "in essence a preliminary injunction."  If so, its form as an All Writs Act

40

injunction was irrelevant—it would have to "be predicated upon a cause of action … regarding which a plaintiff must show a likelihood … of success on the merits" and so forth. *Klay*, 376 F.3d at 1097. By contrast, those "requirements … do not apply to … the All Writs Act" and "it is unclear how those traditional standards would even be applicable." *Id.* at 1101–02. Failure to "comply with … [Rule] 65 … is not a fatal defect" for antisuit injunctions. *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d at 338.

True, the injunction must be clear enough, and it is. The questions 3M protests as "unclear" are crystalline. It asks whether it can argue in bankruptcy that "the government-contractor defense limits the value of the claims." 3M Br. at 2. No, since that would constitute "relitigation of identical issues that the defendants litigated and lost," and is in "bankruptcy court." MDL.Dkt.3389 at 8. It asks whether "a 3M executive" could tell "investors that the MDL court's erroneous rulings have vastly overstated 3M's true liability?" 3M Br. at 2. Yes, since speaking to investors is not litigation and is not in the bankruptcy court.[11] The language is essentially indistinguishable from the relitigation injunction in *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1525–26 (9th Cir. 1983), which was upheld, and at least as clear as the injunction in *Baldwin-United*. An injunction

---

[11] That is not to say that such an assertion is free of legal risk. If 3M ultimately does pay a large amount, the investors may allege securities fraud.

41

is not unclear merely because "interpretation is necessary." *Scardelletti*, 68 F. App'x at 479. Relitigation injunctions are common and are not defeated by a litigants' suggestion that res judicata and collateral estoppel are complex doctrines. Most parties have no trouble refraining from relitigating settled matters.

As for 3M's ludicrous suggestion that only Aearo, and not 3M, plans to relitigate the MDL court's orders, that defies what its own CEO and shared law firm have said. There has never been any daylight between 3M and Aearo, and there is no reason to believe the bombastic attacks on the MDL court and plans to relitigate issues was a unilateral, unexpected step from Aearo.

3M's final argument is to lament the equities, but it has no one but itself to blame for the failure of its brazen gamesmanship. The only injury to 3M from the injunction is that it must follow the ordinary rules of litigation by taking up supposed errors by appeal or not at all. Any alleviation of its injury would come at the expense of the court system and tort victims. The district court found that the "injunction promotes the public interest by preserving the finality of the Court's orders and judgments in the MDL, conserving scarce judicial resources that have been exhaustively extended during the prior three and half years of litigation in the MDL." MDL.Dkt.3407 at 4.

3M's argument on the equities is wholly inconsistent with its unsteady promises to *bind itself to* the MDL court's rulings in bankruptcy:

> The premise that 3M will 'relitigate' legal and factual issues that have already been decided by this Court *is incorrect*.

MDL.Dkt.3370 at 25 (emphasis added).  This issue came up again at argument:

> THE COURT: The concern, though, is that your client is going to go into that process and ask the courts to do that, to disregard this Court's lawfully entered orders, whether you agree with them or not.
>
> MS. LAURIA: As we said in our papers, Your Honor, that is certainly not our intent.
>
> THE COURT: What's the problem with an injunction? *If it's not your intent, then what's the harm of an injunction?*
>
> MS. LAURIA: Well, the injunction, as Mr. Keller said, is an extraordinary remedy in this case. So if there's no basis of harm, there's no basis
>
> THE COURT: A lot is extraordinary in this case.
>
> MS. LAURIA: That's a fair point, Your Honor.

8/11/22 Tr. at 33 (emphasis added).  3M never answered the district court's question of what harm 3M would suffer in being compelled to do what it intends to do already.  The MDL court did not believe 3M's protestations, and Valle does not now.  But if 3M told the truth, the injunction causes it no harm at all.  The district court based its denial of a stay in part on this logic: "3M's broad assertion fails to reference a single action 3M or Aearo is prohibited from taking based on the Court's injunction.  3M offers no explanation of how 3M (a nondebtor) is prohibited by the injunction from 'participating' in the bankruptcy proceedings, and there is certainly no showing of imminent harm …." MDL.Dkt.3407 at 4.  If 3M now abandons its master plan and

declines to relitigate anything, it suffers no injury.  If not, it should explain why it should be permitted to relitigate settled matters.  There is no justification.

* * *

3M has already appealed the MDL court's rulings to this Court.  That is the review Congress provided by empowering the Judicial Panel on Multidistrict Litigation to centralize proceedings before an MDL court.  3M's bruises at trial do not justify taking a third opportunity to litigate the same issues.  The MDL court's tailored antisuit injunction does nothing more than ensure that abuse cannot happen.

## CONCLUSION

The district court's injunction should be affirmed.

Dated: November 2, 2022

Noah Heinz
KELLER POSTMAN LLC
1100 Vermont Ave.
NW Fl. 12
Washington, DC 20005

Respectfully submitted,

*/s/ Ashley Keller*
Ashley Keller
KELLER POSTMAN LLC
2800 Ponce De Leon Blvd., Suite 1100
Coral Gables, FL 33134
ack@kellerpostman.com
(312) 741-5222

44

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 10,706 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a) because it has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: November 2, 2022

*/s/ Ashley Keller*
Ashley Keller
*Counsel for Plaintiff-Appellee Valle*

**CERTIFICATE OF SERVICE**

On November 2, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system.  All participants in this case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/ Ashley Keller*
Ashley Keller
*Counsel for Plaintiff-Appellee Valle*