No. 22-12796-A

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

RICHARD VALLE,

*Plaintiff-Appellee,*

v.

3M COMPANY,

*Defendant-Appellant,*

AEARO TECHNOLOGIES LLC, et al.,

*Defendants.*

_____

On Appeal from the United States District
Court for the Northern District of Florida,
MDL No. 19-02885

_____

## REPLY BRIEF FOR APPELLANT

_____

PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendant-
Appellant 3M Company*

November 23, 2022

No. 22-12796-A, *Valle v. 3M Co.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1-2, counsel for Defendant-Appellant 3M Company hereby certifies that the Certificate in the opening brief, as supplemented by the Certificate in the response brief, is complete and correct, with the addition of the following:

- Hicks, George – counsel for Defendants/non-Appellants

- Steinberg, Matthew P. – counsel for Defendants/non-Appellants

- Zanello, Lindsay N. – counsel for Defendants/non-Appellants

Defendant-Appellant 3M Company states that it is a corporation whose shares are publicly traded (NYSE: **MMM**). 3M Company does not have a parent corporation and no publicly held corporation owns 10% or more of 3M's stock.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
*Counsel for Defendant-Appellant*
*3M Company*

November 23, 2022

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ......................................................... CIP-1 of 1

TABLE OF AUTHORITIES .......................................................................... ii

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................... 3

I.    The Bankruptcy Court Provides An Adequate Remedy At Law ................... 3

II.   The Injunction Invades The Bankruptcy Court's Exclusive Jurisdiction ...................................................................................... 9

III.  The Injunction Violates 3M's Constitutional Rights ................................... 14

IV.   The Injunction Violates The Automatic Stay ................................................ 18

V.    The Injunction Violates Federal Rules of Civil Procedure 52 and 65 ...................................................................................... 20

VI.   Equitable Considerations Do Not Support The Injunction ......................... 25

CONCLUSION ................................................................................................. 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

**Cases**

*Alabama v. U.S. Army Corps of Engineers*,
424 F.3d 1117 (11th Cir. 2005) ............................................................. 4, 5, 7, 8

*Battle v. Liberty Nat. Life Ins. Co.*,
877 F.2d 877 (11th Cir. 1989) .............................................................17

*BE & K Const. Co. v. N.L.R.B.*,
536 U.S. 516 (2002)...........................................................................14

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959)...........................................................................3

*Bonner v. City of Prichard*,
661 F.2d 1206 (11th Cir. 1981) ...........................................................21

*Borough of Duryea v. Guarnieri*,
564 U.S. 379 (2011)...........................................................................15

*Bravo v. United States*,
532 F.3d 1154 (11th Cir. 2008) ...........................................................5

*Ca. Div. of Lab. Standards Enforcement v. Dillingham Constr., N.A., Inc.*,
519 U.S. 316 (1997)...........................................................................23

*Clinton v. Goldsmith*,
526 U.S. 52 (1999)...........................................................................3

*Corp. Synergies Grp., LLC v. Andrews*,
775 F. App'x 54 (3d Cir. 2019) ...........................................................15

*Cromer v. Kraft Foods N. Am., Inc.*,
390 F.3d 812 (4th Cir. 2004)...............................................................14

*Devlin v. Scardelletti*,
536 U.S. 1 (2002)...........................................................................17

---

[*] Citations upon which Appellant primarily relies are marked with asterisks.

ii

*F.T.C. v. Trudeau*,
    579 F.3d 754 (7th Cir. 2009) ................................................................15

*Fla. Med. Ass'n, Inc. v. U. S. Dep't of Health, Ed. & Welfare*,
    601 F.2d 199 (5th Cir. 1979) ................................................................21

*Gilchrist v. Gen. Elec. Cap. Corp.*,
    262 F.3d 295 (4th Cir. 2001) ...............................................................20

*Harrelson v. United States*,
    613 F.2d 114 (5th Cir. 1980) ...................................................................4

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
    770 F.2d 328 (2d Cir. 1985) .................................................................12

*In re Managed Care Litig.*,
    236 F. Supp. 2d 1336 (S.D. Fla. 2002) ..................................................9

*In re March*,
    988 F.2d 498 (4th Cir. 1993) ...............................................................11

*In re Nat'l Century Fin. Enters., Inc.*,
    423 F.3d 567 (6th Cir. 2005) ...............................................................20

*In re Windstream Holdings, Inc.*,
    627 B.R. 32 (Bankr. S.D.N.Y. 2021) ...................................................18

*Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*,
    389 U.S. 64 (1967) ...............................................................................22

*Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    985 F.2d 1067 (11th Cir. 1993) ..............................................................6

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*,
    552 F.2d 601 (5th Cir. 1977) ............................................................7, 8

*Klay v. United Healthgroup, Inc.*,
    376 F.3d 1092 (11th Cir. 2004) ................................................. 3, 6, 21

*Liles v. Del Campo*,
    350 F.3d 742 (8th Cir. 2003) ..................................................................9

*Lozman v. City of Riviera Beach*,
    138 S.Ct. 1945 (2018) ........................................................................18

*Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*,
    140 B.R. 969 (N.D. Ill. 1992) ...........................................................11

*NetChoice, LLC v. Att'y Gen., Fla.*,
    34 F.4th 1196 (11th Cir. 2022) ..........................................................26

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
    474 U.S. 34 (1985) ...............................................................................9

*Riccard v. Prudential Insurance Co.*,
    307 F.3d 1277 (11th Cir. 2002) ..........................................................17

*Rohe v. Wells Fargo Bank, N.A.*,
    988 F.3d 125 (11th Cir. 2021) ............................................ 3, 6, 9, 13

*Rosen v. Cascade Int'l, Inc.*,
    21 F.3d 1520 (11th Cir. 1994) ..............................................................3

*S.E.C. v. Brennan*,
    230 F.3d 65 (2d Cir. 2000) .................................................................20

*Scardelletti v. Debarr*,
    265 F.3d 195 (4th Cir. 2001) ....................................................... 17, 21

*Schmidt v. Lessard*,
    414 U.S. 473 (1974) ...........................................................................22

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011) ........................................................................3, 13

*Tennessee Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004) ...........................................................................12

*United States v. Int'l Brotherhood of Teamsters*,
    266 F.3d 45 (2d Cir. 2001) .................................................................14

*Universal Amusement Co. v. Vance*,
    587 F.2d 159 (5th Cir. 1978) ..............................................................14

*W. Water Mgmt., Inc. v. Brown*,
    40 F.3d 105 (5th Cir. 1994) ...................................................................15

*Weaver v. Fla. Power & Light Co.*,
    172 F.3d 771 (11th Cir. 1999) ...........................................................5, 6

*Wood v. Santa Barbara Chamber of Com., Inc.*,
    705 F.2d 1515 (9th Cir. 1983) ...................................................... 23, 24

**Statutes**

11 U.S.C. §1109 ..........................................................................................10

28 U.S.C. §1334 ..........................................................................................10

**Rule**

Fed. R. Civ. P.  65 ................................................................................. 21, 22

**Other Authorities**

Dkt.14, *Aearo Techs. LLC, et al v. Those Parties Listed on Appendix A to the
    Complaint, et al*, No. 22-2606 (7th Cir. Oct. 12, 2022) .....................13

Charles A. Wright & Arthur R. Miller, 11A *Fed. Prac. & Proc. Civ.* (3d ed.) ....4, 22

## INTRODUCTION

The MDL court's sweeping injunction, stayed in part by the MDL court itself and by this Court in full, should be vacated in full. In response to Aearo's bankruptcy filing, the MDL court injected itself into those ongoing bankruptcy proceedings by enjoining 3M both from "attempting to relitigate the same issues or related issues precluded by the principles of res judicata or collateral estoppel in bankruptcy court" and "from supporting, directly or indirectly, financially or otherwise, any collateral attack on this court's orders by any other parties in any other forum, including Aearo." MDL.Dkt.3389 at 7, 8. The MDL court itself stayed (but did not vacate) the latter half of that prohibition after acknowledging that it "may in fact interfere with Aearo's ability to act in the bankruptcy." MDL.Dkt.3407 at 2-3. And this Court then stayed the balance of the extraordinary injunction, despite the MDL court's stated view that doing so "would completely undermine the basis of the injunction," *id.* at 4. *See* 10/12/22 Order.

Tellingly, Valle's merits brief makes no mention of either the MDL court's partial confession of error or this Court's full stay. Nor does Valle make any serious effort to defend the MDL court's admitted interference with Debtors' ability to pursue their reorganization. Instead, Valle spends the bulk of his brief trying to portray the MDL court's unprecedented intrusion on the bankruptcy court's power to police its own proceedings as a run-of-the-mill "antisuit injunction," and goes

1

even further in arguing that the order is somehow exempted from the substantive and procedural requirements governing injunctive relief. That effort fails at every turn. First, there is nothing run-of-the-mill about the order here, even in the extraordinary realm of antisuit injunctions. The MDL court has prohibited 3M from "attempting to relitigate" not just the same issues, but "related issues," and even "supporting, directly or indirectly, financially or otherwise, any collateral attack on this court's orders by *any other parties in any other forum*." MDL.Dkt.3389 at 8 (emphasis added). And all of that in response to proceedings that were initiated by Debtors, not 3M, and that Valle himself agrees can legitimately go forward.

Equally important, "antisuit injunctions" are extraordinary because they work an extraordinary intrusion on another court's ability to control its own jurisdiction, not because they are immune from all the ordinary limits on injunctive relief. The intrusive nature of antisuit injunctions makes the rigorous application of the ordinary constraints all the more important to ensure that such injunctions remain a remedy of last resort, as this Court's cases require. As Valle's dangerous effort to free this order from bedrock rules of equity, constitutional law, and the federal rules implicitly concedes, the injunction here does not come close to satisfying the prerequisites for proper injunctive relief. It should be vacated in full.

## ARGUMENT

### I.    The Bankruptcy Court Provides An Adequate Remedy At Law.

As this Court has repeatedly recognized, "an injunction under the All Writs Act is an extraordinary remedy that 'invests a court with a power that is essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law.'" *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999)); *see also Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1264 (11th Cir. 2021). The All Writs Act thus embraces in full the bedrock rule that equity will not intercede where law provides an adequate remedy. *See, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959) ("[I]n the federal courts equity has always acted only when legal remedies were inadequate"). That rule is "axiomatic" and fundamental. *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994).

Here, the legal remedy that obviates any need for the MDL court's injunction is plain and simple: The bankruptcy court can apply the doctrine of *res judicata* and collateral estoppel principles, as informed by the specialized law of bankruptcy, to the proceedings before it. Even as a general matter, "[d]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court," *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011), and the distinct and specialized nature of bankruptcy proceedings only magnify the importance of that default rule.

3

This Court's precedent makes clear that the bankruptcy court's power to address *res judicata* arguments provides an adequate remedy here. First, "if a party will have opportunity to raise its claims in the concurrent federal proceeding sought to be enjoined, that concurrent proceeding is deemed to provide an adequate remedy at law." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1132 (11th Cir. 2005). Second, "res judicata and collateral estoppel are usually more than adequate to protect defendants against repetitious litigation." *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980); *see* Charles A. Wright & Arthur R. Miller, 11A *Fed. Prac. & Proc. Civ.* §2944 (3d ed.) ("if plaintiff can assert the claim as a defense in some other proceeding, the alternative remedy is adequate." (footnote omitted)). Particularly since any preclusion issues in the bankruptcy court will arise in the context of Debtors' reorganization efforts, there is simply no justification for the MDL court to superintend the bankruptcy proceedings to ensure the bankruptcy court gives what the MDL court deems to be adequate deference to its rulings.

Valle insists that All Writs Act injunctions are not constrained by the rule that equitable relief is available only when adequate legal remedies are not. But this Court's precedent begs to differ: "An injunction under the All Writs Act invokes the equitable power of the court; thus, as is similarly the case for traditional injunctions, *a court may not issue an injunction under the All Writs Act if adequate remedies at law are available*." *Alabama*, 424 F.3d at 1132 (emphasis added). Valle tries to

dismiss that clear language as dicta, Resp.Br.27 n.8, but he overlooks this Circuit's rule that "additional or alternative holdings are not dicta, but instead are as binding as solitary holdings," *Bravo v. United States*, 532 F.3d 1154, 1162 (11th Cir. 2008). In *Alabama*, Alabama and Florida tried to defend an injunction by contending that it was issued under the All Writs Act and thus did not have to meet "the requirements [for] a traditional injunction." 424 F.3d at 1131. This Court rejected that argument for two reasons, one being that an All Writs Act injunction "would simply have been inappropriate in this case" because "a court may not issue an injunction under the All Writs Act if adequate remedies at law are available." *Id.* at 1132. Accordingly, both binding precedent and bedrock principles of equity make clear that the no-adequate-remedy-at-law rule applies with full force to All Writs Act injunctions.

Putting those principles into practice, this Court has vacated an All Writs Act injunction precisely because the party seeking injunctive relief "has an adequate remedy at law [because] it can raise the issue[] of res judicata … in the arbitration proceeding and, if its arguments are valid, have the arbitration dismissed." *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999). *Weaver* also explained that if that case had involved efforts "to enjoin an action … in another court, the adequacy—indeed, the necessity—of the remedy at law would be clear." *Id.* at 774. Valle suggests that *Weaver* has no precedential force because it conflicted with *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067, 1068 (11th

5

Cir. 1993).  *See* Resp.Br.26-27.  But *Weaver* explained that *Kelly* never addressed whether "the requirement that the remedy at law be inadequate might prevent a district court from granting equitable relief," 172 F.3d at 775 n.10.  "Because the issue was not raised in *Kelly*," it could not have been decided by *Kelly*.  *See id.*  In all events, intervening Supreme Court precedent on arbitration law makes clear that "neither the *Kelly* nor *Weaver* courts had the power to enjoin arbitration on *res judicata* grounds because *res judicata* was for the arbitrator to decide in the first instance."  *Klay*, 376 F.3d at 1109.

Here, any issues of *res judicata* and how those principles intersect with any determination by the bankruptcy court of the aggregate value of claims against the Debtors' estates are for the bankruptcy court in the first instance.  While Valle casts aspersions on the bankruptcy court's competence to resolve those questions, *see* Resp.Br.38-39, he does not and cannot dispute that the bankruptcy court is fully empowered to do so.  As the bankruptcy court "is well-equipped to protect the proceeding's integrity," "the bankruptcy case is not a proceeding on which non-appellate use of the All Writs Act by the District Court could be predicated."  *Rohe*, 988 F.3d at 1268.

Valle is thus left insisting that the second court's ability to resolve preclusion issues cannot be an adequate legal remedy because that would defeat an "antisuit injunction" in every instance.  Resp.Br.24-25.  But that is simply not true.  All Writs

6

Act injunctions are "extraordinary" precisely because they are reserved for the situations where the ordinary legal remedy of leaving *res judicata* to the second court is inadequate, e.g., where the enjoined litigant has repeatedly violated clear court orders. But dispensing with this bedrock requirement of equity would make antisuit injunctions a frequent feature of federal-court litigation, rather than a remedy of last resort. If anything, courts should exercise even greater restraint when it comes antisuit injunctions, as threatening a party with sanctions-backed contempt orders just for unsuccessfully resisting a collateral-estoppel defense is an extreme measure that should be reserved for truly extreme circumstances. Valle's own cases thus unsurprisingly underscore that even ordinary antisuit injunctions should be reserved for situations involving "unique considerations" not present here. *Alabama*, 424 F.3d at 1132 n.22.

For instance, in *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 552 F.2d 601 (5th Cir. 1977), a district court in Florida had already found a losing party and its alter egos to be in contempt of court for violating a final judgment and "continuing to sell products bearing Kentucky Fried Chicken Corporation's trademarks and trade name" when the alter egos launched a new suit in Kentucky district court alleging much the same claims they had abandoned or lost on already in Florida. *Id.* at 602-03. When the Florida district court nonetheless denied Kentucky Fried Chicken's request for an antisuit injunction, the pre-split Fifth

7

Circuit reversed, relying in part on the contempt finding and on the other parties' concession that "[m]ost of the issues which were or could have been litigated in the first action are being raised again in the second action." *Id.* at 603.

Valle declares that case "irreconcilable" with this one, Resp.Br.25, but the differences are plain to see: There has been no contempt or alter-ego finding here (or any fact-finding at all, for that matter, *see infra* n.4), and there *is* a parallel bankruptcy proceeding that even the MDL court has conceded is beyond its reach. As a consequence, *Kentucky Fried Chicken* at least involved "a typical All Writs Act injunction that categorically forbids litigation in another forum," Opening.Br.29, and thus did not involve the distinct problems implicated by having one court superintending activities in another forum in an effort to preclude a party from "attempting to relitigate" even "related issues" or "supporting, directly or indirectly, financially or otherwise, any collateral attack on this Court's orders by any other parties in any other forum." MDL.Dkt.3389 at 8. That a readily distinguishable, 45-year-old decision is, by Valle's admission, the "only relevant antisuit injunction case in which the second court was federal," Resp.Br.25, just shows how unprecedented the MDL court's injunction is.[1]

---

[1] Valle suggests in a footnote that *Alabama* declared antisuit injunctions "especially" appropriate when "complex cases" or "Multidistrict Litigation" is involved. Resp.Br.27 n.8 (citing *Alabama*, 424 F.3d at 1132 n.22). But the cases *Alabama* cited looked nothing like this one. In one, the court issued an injunction to protect and preserve assets in a settlement fund. *See Liles v. Del Campo*, 350 F.3d

In short, as things currently stand, if 3M and Debtors raise an issue that, in the view of one of hundreds of thousands of plaintiffs, is insufficiently respectful of the MDL court's prior rulings, then 3M faces the unhappy prospect of defending that position not just before a bankruptcy court fully versed in all the relevant filings and bankruptcy principles, but also before an MDL court armed with contempt power. That dynamic is entirely untenable and unjustified.  Not only is the bankruptcy court's ability to police the filings before it an adequate legal remedy, but that reality underscores that the injunction will have bite only and precisely where the MDL court deems contemptuous a filing that the bankruptcy court views as fair game. Because the bankruptcy court is best situated to police the filings before it, the injunction is as unnecessary as it is unprecedented.

## II.      The Injunction Invades The Bankruptcy Court's Exclusive Jurisdiction.

Relief under the All Writs Act "is limited by the Act's supplemental character."  *Rohe*, 988 F.3d at 1264.  Accordingly, "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."  *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).  The "particular issue at hand" here is the extent to which the MDL court's

---

742, 746-47 (8th Cir. 2003).  In the other, the enjoined party had apparently "snookered" another judge into approving a settlement agreement with a subset of MDL plaintiffs without informing that court of pending proceedings before the MDL court.  *In re Managed Care Litig.*, 236 F. Supp. 2d 1336, 1338, 1342 (S.D. Fla. 2002)).

prior rulings will control in the bankruptcy court's administration of Debtors' Chapter 11 cases. Federal law provides a simple answer: The bankruptcy court decides. That is both because the bankruptcy court has "exclusive jurisdiction" over "all the property, wherever located, of the debtor," *see* 28 U.S.C. §1334(e), and because decisions about the extent to which the MDL court's prior rulings control will inevitably impact Debtors' property and reorganization.

Valle insists that invoking "[t]he bankruptcy court's exclusive jurisdiction over a *debtor's* property is a red herring, since the injunction runs against *3M*, who is neither a debtor nor property of a debtor." Resp.Br.36. That gets Valle nowhere. First, the injunction plainly impacts the Funding and Support Services Agreements between 3M and Debtors, which are Debtors' property. *See* Opening.Br.33-34. By forbidding 3M from "supporting, … financially or otherwise, a collateral attack on this Court's orders by … Aearo," the injunction puts 3M to the choice of breaching the agreements or risking contempt. *See* MDL.Dkt.3407 at 2-3. Indeed, the MDL court admitted as much when it stayed (but did not vacate) that portion of its own injunction after it belatedly recognized that it "may in fact interfere with Aearo's ability to act in the bankruptcy." *Id*. Moreover, 3M has its own statutory right to participate in those proceedings. *See* 11 U.S.C. §1109(b). The injunction thus invades the bankruptcy court's exclusive jurisdiction by interfering with 3M's duty

10

to fund and provide certain services to Debtors and infringing on 3M's right to participate in the bankruptcy proceedings of its subsidiaries.

Valle protests that bankruptcy courts are not wholly immune from All Writs Act injunctions. Resp.Br.34-36. But 3M had never suggested otherwise, and the very few (and readily distinguishable) cases that employ the All Writs Act in the bankruptcy context underscore the unprecedented and unjustified nature of this injunction. For example, *Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 140 B.R. 969 (N.D. Ill. 1992), was not an effort by a district court to interfere with bankruptcy-court proceedings, but essentially the converse. There, the *bankruptcy* court tried to enjoin a plaintiff from arguing in *district* court about the reach of the automatic stay, and the district court used the All Writs Act to block that order and preserve its ability to decide the scope of its own jurisdiction. *In re March*, 988 F.2d 498 (4th Cir. 1993), is even further afield. There, a junior lienholder, who lost in bankruptcy litigation in the Eastern District of Virginia, turned around and secured a TRO from a bankruptcy court in the Southern District of New York to keep the victorious senior lienholder from proceeding with a foreclosure sale. *Id.* at 499. At that point, the senior lienholder obtained an injunction from the Eastern District of Virginia to prevent further litigation in New York, which the Fourth Circuit affirmed. To state the obvious, that effort to prevent one bankruptcy court from second-guessing the result of bankruptcy proceedings in another federal district is a

11

far cry from a district court appointing itself the arbiter of what arguments can and cannot be made in an ongoing bankruptcy proceeding.

Valle is thus left suggesting that the MDL litigation is "so far advanced that it was the virtual equivalent of a res over which the district judge required full control." Resp.Br.37 (quoting *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985)). That argument only underscores the impropriety of the injunction. Unlike the MDL court, the bankruptcy court has *an actual res* over which it requires full control: Debtors' property. And unlike an MDL court, which exercises only limited jurisdiction over multi-district litigation (which is decidedly not a "*res*"), *see* Opening.Br.21, Congress gave the bankruptcy court absolute and exclusive control over that actual *res*. *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004) ("A bankruptcy court's *in rem* jurisdiction permits it to determine all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is one against the world." (quotation marks and brackets omitted)). The MDL court has no more authority to refuse to let go of its grip on the litigation than it would have to simply ignore the automatic stay as to Aearo.

Valle complains that the bankruptcy court's relative expertise has little relevance to the preclusion questions it may face. Resp.Br.38-39. But generally speaking, the court overseeing the second litigation is best positioned to understand

the relationship between that second litigation and the earlier litigation. That is precisely why "[d]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court." *Smith*, 564 U.S. at 307. And that principle has particular application to the bankruptcy process, which involves valuing claims against the estate, including litigation claims that were pending before different courts when the bankruptcy process was invoked. The bankruptcy court is ideally situated to police the line between fair valuation and impermissible collateral attack in that bankruptcy-specific process.

Finally, while Valle touts the bankruptcy court's denial of a motion for a preliminary injunction preventing suits against 3M, Resp.Br.38, the bankruptcy court merely denied the request for the preliminary injunction.[2] Nothing in that order "disavowed its adjudicatory authority," Resp.Br.39, over any and all things touching on the MDL, let alone its ability to resolve collateral-estoppel disputes. To the contrary, the bankruptcy court is perfectly capable of applying *res judicata* principles itself, and has not felt the need to outsource to the MDL court questions about what arguments would and would not be collateral attacks. *See Rohe*, 988 F.3d at 1267-

---

[2] On this question the bankruptcy court recognized that other courts had taken a different approach and hence certified its decision for direct review. *See* Opening.Br.15. On October 12, 2022, the Seventh Circuit granted Debtors' petition for direct review of the bankruptcy court's decision. *See* Dkt.14 at 2, *Aearo Techs. LLC, et al. v. Those Parties Listed on Appendix A to the Complaint, et al*, No. 22-2606 (7th Cir. Oct. 12, 2022).

68 (vacating All Writs Act injunction because "the bankruptcy court … is well-equipped to protect the proceeding's integrity").  The injunction is thus both an unprecedented and an unnecessary intrusion on the bankruptcy court's jurisdiction.

## III.    The Injunction Violates 3M's Constitutional Rights.

An All Writs Act injunction must be "consistent with constitutional guarantees of due process of law and access to the courts," *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004), and "[i]njunctions that abridge conduct protected by the first amendment are constitutionally impermissible," *Universal Amusement Co. v. Vance*, 587 F.2d 159, 168 (5th Cir. 1978).  Here, the injunction abridges 3M's rights to due process and to petition the bankruptcy court by prospectively putting 3M under the threat of contempt every time 3M or Debtors address the bankruptcy court.  *See* Opening.Br.31-32; *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 530 (2002) (explaining that "enjoining a lawsuit could be characterized as a prior restraint").  All Writs Act injunctions have been vacated on First Amendment grounds before.  *See, e.g.*, *United States v. Int'l Brotherhood of Teamsters*, 266 F.3d 45, 51 (2d Cir. 2001).  This one merits the same fate.

Valle accuses 3M of forfeiting its First Amendment objections by not raising them below.  Resp.Br.32.  But 3M argued that even the more modest injunction requested by Valle contravened "constitutional *guarantees* of due process of law *and* access to courts."  MDL.Dkt.3370 at 1, 21.  And the "right of access to courts for

14

redress of wrongs is an aspect of the First Amendment right to petition the government," *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011). When the MDL court nonetheless issued an injunction even more sweeping than Valle requested, 3M reiterated its First Amendment argument in its stay request below. *See* MDL.Dkt.3395 at 8. While 3M's initial opposition sufficed to preserve a First Amendment objection, 3M can hardly be faulted for not identifying *ex ante* every constitutional flaw in an injunction that turned out to be far broader and vaguer than even what Valle sought.

Valle's misguided forfeiture argument thus succeeds only in highlighting yet another problem with the injunction. When a litigant is not given notice of the full scope of an injunction—and hence has no adequate chance to oppose it—that offends due process. Indeed, "notice to the defendant is imperative, particularly when the court is considering a stiffer injunction than the one currently in force or the one proposed in a party's motion." *F.T.C. v. Trudeau*, 579 F.3d 754, 778 (7th Cir. 2009); *see also, e.g.*, *W. Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 109 (5th Cir. 1994) (vacating amended injunction where party bound by it was not given notice of its scope); *Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 60-61 (3d Cir. 2019) (similar).

Valle next returns to his strawman, arguing that there is no constitutional right "to relitigate issues in one's preferred venue." Resp.Br.32. Once again, 3M has

never claimed otherwise. Rather, what it has explained consistently, *see, e.g.*, Stay.Reply.Br.5-6, is that the MDL court's sprawling and vague injunction reaches far beyond making arguments barred by *res judicata* and collateral estoppel (which itself is hardly something ordinarily deemed worthy of contempt). Valle largely ignores the injunction's sweeping language and its implications for 3M and Debtors in the bankruptcy proceedings, but 3M has no such luxury. By outlawing even indirect support for any party (expressly including, but not limited to, Debtors) mounting anything that a demonstrably hyper-attuned MDL court may deem a "collateral attack," the injunction unquestionably would chill 3M's ability to coordinate or even communicate with Debtors—or anyone else, for that matter—in the bankruptcy court and all other fora.

Valle himself implicitly acknowledges that the injunction has that practical effect, as the best he can offer in defense of its unprecedented constraint on supporting the arguments of others is his self-serving assurance that "funding Aearo as they *independently* plan their own strategy would not violate the injunction." Resp.Br.39 (emphasis added). That is a highly dubious interpretation of what the MDL court actually ordered, which perhaps explains why Valle in the very next breath invites this Court to "modify the language to remove this edge case" should it disagree. Resp.Br.40. But while such a modification would certainly be an improvement, it would not fix the constitutional problems with precluding a party

from "supporting" even "indirectly" arguments that other parties may choose to make "in any other fora"—especially when Valle himself continues to insist that "[t]here has never been any daylight between 3M and Aearo." Resp.Br.42.

All of that readily distinguishes this case from the truly extraordinary cases to which Valle tries to analogize. Resp.Br.32-33. For example, *Riccard v. Prudential Insurance Co.*, 307 F.3d 1277 (11th Cir. 2002), is a non-bankruptcy case where the enjoined party had a "near-obsession regarding his former employer" and engaged in "abusive and vexatious litigation" including "four lawsuits" plus multiple complaints in "non-judicial forums." *Id.* at 1282, 1295 & n.15, 1298. In *Battle v. Liberty National Life Insurance Co.*, 877 F.2d 877 (11th Cir. 1989), after a federal court entered a final judgment settling class-actions related to Alabama funeral homes, the plaintiffs attempted to bring class-action suits in state court to relitigate the same issues. *Id.* at 879-81. And *Scardelletti v. Debarr*, 265 F.3d 195 (4th Cir. 2001), *rev'd on other grounds sub nom. Devlin v. Scardelletti*, 536 U.S. 1 (2002), addressed one class member's late-breaking effort to challenge a class-wide settlement, *id.* at 198-202. Here, by contrast, there has never been any global settlement, 3M did not initiate the second proceeding, and 3M has not relitigated or even "attempt[ed]" to relitigate anything, let alone engaged in a pattern of "abusive and vexatious litigation" across multiple "non-judicial forums."

In short, it is simply disingenuous to argue that 3M is claiming a right "to lodge claims in whatever venue [it] choose[s], using whatever arguments [it] wish[es]." Resp.Br.34. 3M just wishes to be able to fully participate in the bankruptcy proceedings, and fulfill its contractual obligations to Debtors under the Funding and Support Services Agreements, without the looming threat of contempt any time it says anything negative about the MDL court's rulings or seeks to value claims differently than the MDL court prefers. There is nothing remotely extraordinary about that; to the contrary, those are rights at the Constitution's very core. *See, e.g.*, *Lozman v. City of Riviera Beach*, 138 S.Ct. 1945, 1954 (2018) (recognizing "the right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights.") (quotation marks omitted). The Constitution does not tolerate the kind of interference with the rights to free speech and petition that the MDL court's unprecedented injunction works. Neither should this Court.

## IV.   The Injunction Violates The Automatic Stay.

As 3M explained in its opening brief, Opening.Br.32-36, the injunction violates the automatic stay because it chills 3M in fulfilling its contractual duties to Debtors under the Funding and Support Services Agreements, which are bankruptcy estate property. *See In re Windstream Holdings, Inc.*, 627 B.R. 32, 43 (Bankr. S.D.N.Y. 2021). Valle declares that "one strains to see how that could be true" and labels "fanciful" the notion that positions Debtors take with 3M's financial support

would be understood as 3M "supporting … financially" those positions.  Resp.Br.39.

But even the MDL court begged to differ, as it partially stayed (albeit while declining

to modify) its injunction precisely because it recognized that placing 3M under threat

of contempt for supporting Debtors "may in fact interfere with Aearo's ability to act

in the bankruptcy court in light of the funding agreement between 3M and Aearo."

MDL.Dkt.3407 at 2-3.  Indeed, Valle himself asserts that 3M would stay on the right

side of the contempt line only if it limited itself to "funding Aearo as they

*independently* plan their own strategy."  Resp.Br.39 (emphasis added).  Even

assuming that were consistent with the plain terms of the injunction, he makes no

effort to explain how that would be consistent with the normal ability of a parent to

coordinate with its subsidiaries or how it would preserve the full value of the

Funding and Support Services Agreements.

Instead, he changes the subject, emphasizing that the bankruptcy court

determined "that the automatic stay does not apply to 3M" and argues that "3M

cannot relitigate that defeat to this Court."  Resp.Br.40.  But whether the automatic

stay applies to litigation against 3M is beside the point.[3]  The problem is that

restricting 3M's full participation *in the bankruptcy court* will "have an adverse

impact upon the property of [Debtors'] estate."  *In re Nat'l Century Fin. Enters.,*

---

[3] As noted above, the bankruptcy court certified its decision for direct review and
the Seventh Circuit has since granted Debtors' petition for direct review.

*Inc.*, 423 F.3d 567, 578 (6th Cir. 2005). Valle has yet to explain how muzzling 3M could possibly *not* have that "adverse impact," and it is far too late in the day to deny the risk that Debtors' words will be held against 3M. After all, it was the MDL court's willingness to hold Debtors' statements against 3M that provided the foundation for the injunction, Opening.Br.12, and Valle himself continues to insist that "[t]here has never been any daylight between 3M and Aearo," Resp.Br.42.

Congress designed the automatic stay "to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *S.E.C. v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000). Even more so than "uncoordinated proceedings," the injunction's direct interference in the bankruptcy court runs contrary to that design. Allowing any portion of the injunction to stand will "set[] courts in different districts against one another" and thus "completely frustrate the scheme of courts created by Congress." *Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295, 305 (4th Cir. 2001).

## V.    The Injunction Violates Federal Rules of Civil Procedure 52 and 65.

Valle cannot credibly claim that the MDL court complied with either Rule 52 or Rule 65. Instead, he argues that All Writs Act injunctions are as immune from the procedural requirements of the Federal Rules as they are (in his view) from bedrock rules of equity. He attributes this remarkable position to this Court's decision in

*Klay*. *See* Resp.Br.40-41. *Klay* held no such thing. To the contrary, the Court there chided the plaintiffs for making the same mistake Valle makes here—namely, conflating the traditional four-factor test governing injunctive relief with the procedural requirements of Rule 65. *See* 376 F.3d at 1097 & n.6 (faulting plaintiffs for referring to the "requirements for a traditional injunction" "as the 'Rule 65 factors,' despite the fact that Rule 65 does not mention them"). Wholly apart from the traditional four-factor test, Rule 65 commands: "Every order granting an injunction … must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). And underscoring that "every" means neither most nor nearly all, this Circuit's precedent says that "the All Writs Act does not free a district court from the restraints of Rule 65." *Fla. Med. Ass'n, Inc. v. U. S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979); *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981); *see also Scardelletti v. Debarr*, 265 F.3d 195, 211-12 (4th Cir. 2001) (relying on *Florida Medical Association* to conclude that "Rule 65 applies to All Writs Act injunctions"). In short, the All Writs Act is no excuse to sidestep

requirements the Federal Rules impose on "[e]very order granting an injunction." Fed. R. Civ. P. 65(d).[4]

The Supreme Court's decisions reinforce that conclusion. *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association*, 389 U.S. 64 (1967), for example, explains that "an equitable decree compelling obedience under the threat of contempt," "was therefore an 'order granting an injunction' within the meaning of Rule 65(d)." *Id.* at 75; *see* Wright & Miller, *supra* §2955 ("[T]he term 'injunction' in Rule 65(d) is not to be read narrowly but includes all equitable decrees compelling obedience under the threat of contempt."). The injunction here is undeniably "an equitable decree compelling obedience under the threat of contempt," so Rule 65 applies. And "the specificity provisions of Rule 65(d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Precisely because "an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* The injunction here gives 3M no such guidance. Determining, for instance, what constitutes a sufficiently "related" issue to trigger contempt is no mean feat "since, as many a curbstone philosopher

---

[4] Valle offers no authority other than *Klay* in support of his claim that All Writs Act injunctions need not comply with Rule 52 either, and *Klay* provides no more support for that proposition than for his effort to free the MDL court of Rule 65.

has observed, everything is related to everything else." *Ca. Div. of Lab. Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring). The precise contours of indirect support are equally elusive. In short, the injunction gives 3M precious little guidance on what conduct is now verboten. *See* Opening.Br.36-39.

Valle insists that the injunction is "clear enough." Resp.Br.41.[5] But that claim is belied by the principal authority he invokes. While he maintains that the injunction "is essentially indistinguishable from the" injunction that "was upheld" in *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515 (9th Cir. 1983), Resp.Br.41, even a cursory reading of *Wood* thoroughly refutes that claim. For one thing, the injunction there said not a word about "supporting" the arguments of *others*, let alone about supporting them "directly or indirectly, financially or otherwise." Moreover, while the injunction did forbid "attempting to relitigate," it specifically identified what qualified as such an attempt. 705 F.2d at 1523 n.6. And even that proved insufficient for the Ninth Circuit, which found it necessary to "modify[]" the district court's "more far-reaching language" so that the ultimate injunction prohibited only the clearly defined acts of "commencing or filing, in any

---

[5] Valle does not even try to explain how the district court complied with the fact-finding requirement of Rule 52. That omission is conspicuous but unsurprising; the MDL court's order contains only conclusory statements, not findings of fact. *See* Stay.Reply.Br.7; Opening.Br.37-38.

Federal Court, any future action, complaint or cause of action seeking adjudication of the factual and legal issues adjudicated and dismissed with prejudice in" the original litigation. *Id.* at 1523 n.7.

Indeed, the MDL court's injunction is so vague and sweeping that it has even been invoked by litigants to try to preclude 3M from raising defenses in state court. Valle's only response is to summarily declare that "the injunction applies only to *re*litigating matters in bankruptcy." Resp.Br.30. But while he twice quotes portions of the injunction that refer to the bankruptcy court to support his claim that "the injunction plainly does not apply" to Minnesota state court, Resp.Br.29, he simply ignores the portion that forbids 3M from supporting "any collateral attack … *in any other forum*," MDL.Dkt.3389 at 8, which not surprisingly is the language the Minnesota plaintiffs actually invoked, Supp.Br. Ex. A at 18. Unfortunately for Valle, "any," like "every," is a term of breadth that cannot be read to exclude Minnesota courts or All Writs Act injunctions and cannot simply be ignored.

It is little surprise, then, that Valle ultimately invites this Court to rewrite the injunction. *See* Resp.Br.40. But as the MDL court itself implicitly acknowledged, *see* MDL.Dkt.3407 at 3, whittling the injunction down to what the mine-run antisuit injunction prohibits—namely, initiating new litigation to collaterally attack a final judgment—would be inapposite here and defeat what the court set out to accomplish. Even the MDL court recognized that it could not simply shut down the Debtors'

bankruptcy proceedings under the All Writs Act or anything else. But its vague injunction against 3M supporting the efforts of others or casting aspersions on the MDL court's ruling is no more lawful. The reality is that there is no lawful way to clearly and concisely accomplish what the MDL court envisions.

## VI.    Equitable Considerations Do Not Support The Injunction.

With respect to general equitable considerations, Valle's principal contention is that if 3M just does not relitigate any settled issues, "the injunction causes it no harm at all." Resp.Br.43. That argument ignores both the impact of the injunction on Debtors, which even the MDL court itself acknowledged, and the very real prospect that the MDL court could perceive arguments that the bankruptcy court views as perfectly fair as contemptuous collateral attacks on its rulings. The MDL court has proven itself hyper-attuned to criticism of its rulings both in the proceedings culminating in this injunction and in other orders. *See, e.g.*, MDL.Dkt.3386 at 7-8 (accusing 3M of "naked duplicity" and stating that it was "deeply concerned" over 3M's "sudden" actions); MDL.Dkt.3571. 3M and Debtors both believe that erroneous rulings by the MDL court have inflated the value of claims against the Debtors. There is simply no way for Debtors to effectively prosecute their Chapter 11 cases or 3M to meaningfully participate in such proceedings without risking being haled before the MDL court. And Valle cannot deny that the deprivation of constitutional rights, especially First Amendment rights,

"constitutes an irreparable injury." *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1231 (11th Cir. 2022).

To say that 3M has nothing to fear if its arguments are faithful to *res judicata* principles overstates the clarity of those principles and ignores that the injunction's practical effect is greatest where the bankruptcy court and MDL court disagree on the propriety of a filing or argument before the bankruptcy court. It is precisely those circumstances where the threat to bankruptcy court's exclusive jurisdiction, the rights of 3M and Debtors, and the public interest is greatest. And the harm is not limited to those circumstances, as underscored by the injunction's extension to filings in any other forum.

*        *        *

This unprecedented and unnecessary injunction suffers from a host of infirmities, so much so that the MDL court felt compelled to half-stay it pending appeal. As briefing has now made clear, the whole is even worse than the sum of its parts. This Court was therefore eminently correct to stay the entire injunction pending appeal, and it should now finish the job and vacate the injunction in full.

## CONCLUSION

This Court should reverse the order below and vacate the injunction.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendant-Appellant 3M Company*

November 23, 2022

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 6,409 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

November 23, 2022

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement